**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES DEFERIO,**

                       **Plaintiff,**

       **v.**                                 **Civil Action No.: 5:16-CV-0361**
                                                      **(LEK/TWD)**

**CITY OF SYRACUSE; FRANK FOWLER,**
In his official capacity as Chief of Police for
the City of Syracuse Police Department, **JOSEPH**
**SWEENY**, individually and in his official
Capacity as Captain for the City of Syracuse
Police Department, and **JAMEY LOCASTRO**,
individually and in his official capacity as Sergeant
for the City of Syracuse Police Department,

                       **Defendants.**
_____


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

ROBERT STAMEY, ESQ.
Corporation Counsel
Attorney for Defendant
300 City Hall
Syracuse, New York 13202
(315) 448-8400

By: John A. Sickinger, Esq.
    Assistant Corporation Counsel

    Todd M. Long, Esq.
    Assistant Corporation Counsel

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. iii

**PRELIMINARY STATEMENT** ............................................................................1

**ARGUMENT** ..............................................................................................................1

    I.   **HEIGHTENED PRELIMINARY INJUNCTION STANDARD FOR PLAINTIFF.** ................................................................................................1

    II.  **PLAINTIFF HAS NOT ADEQUATELY ASSERTED THAT HE WILL SUFFER IMMINENT AND REAL IRREPARABLE HARM.** ........................5

    III. **PLAINTIFF CANNOT SHOW THAT HE HAS A LIKELIHOOD OF SUCCESS ON THE MERITS.** ............................................................13

        A.     **Time, Place or Manner Regulations.** ........................................13

              *i.*     *Content Neutrality*............................................................14

              *ii.*    *Narrowly Tailored to Serve a Significant Government Interest* ....15

              *iii.*   *Permits alternative channels for expression*.................................17

    IV. **BALANCE OF EQUITIES DISFAVORS AND OPPOSES A PRELIMINARY INJUNCTION.** ....................................................................18

    V.  **PUBLIC INTEREST DISFAVORS AND OPPOSES A PRELIMINARY INJUNCTION.** ................................................................................................19

    VI. **IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, DEFENDANTS RAISE THE DEFENSE OF LACHES.** .......19

**CONCLUSION** .......................................................................................................23

# TABLE OF AUTHORITIES

**Cases:**

*Able v. United States,* 44 F.3d 128 (2d Cir.1995) ...........................................................3

*Amandola v. Town of Babylon,* 251 F.3d 339 (2d Cir.2001) ..............................................6

*Beal v. Stern,* 184 F.3d 117 (2d Cir.1999) .........................................................................2

*Bray v. City of New York,* 346 F Supp 2d 480 (SDNY 2004)...................................8, 9, 11, 20, 21

*Bronx Household of Faith v Bd. of Educ. of City of New York's,*

331 F3d 342, 349 (2d Cir 2003)...........................................................................................6

*Cantwell v. State of Connecticut*, 310 U.S. 296 (1940) .....................................................17

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ..............................................................6

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984)............................14, 16

*Costello v City of Burlington*, 632 F3d 41 (2d Cir. 2011) .............................................15

*Cox v. State of New Hampshire*, 312 U.S. 569 (1941)............................................15, 16

*Deegan v. City of Ithaca*, 444 F.3d 135 (2d Cir.2006) ............................................13, 15

*Doe v. N.Y. Univ.,* 666 F.2d 761 (2d Cir.1981), *superseded on other grounds by Zervos v.*

*Verizon New York, Inc.*, 252 F3d 163, 171 (2d Cir 2001) ..............................................2

*Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ...........................6

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009).........................5, 6

*Feiner v. New York*, 340 U.S. 315 (1951).......................................................14, 17, 19

*Gen. Mills, Inc. v. Chobani, LLC*, 2016 WL 356039 (NDNY 2016) *reconsideration denied*, 2016

WL 1639903 (NDNY 2016) ...............................................................................................1

*Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640 (1981)...............13, 14, 15, 16, 17

*Int'l Action Ctr. v. City of New York*, 587 F.3d 521 (2d Cir.2009)..................................7

*Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104 (2d Cir.2000) .........................20

*Keepers, Inc. v. City of Milford*, 807 F3d 24 (2d Cir 2015)....................................................7, 9, 11

*Latino Officers Ass'n v. Safir*, 170 F.3d 167 (2d Cir.1999)...............................................6, 7, 8, 9

*Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir.2006)..................................................17

*Mazurek v. Armstrong,* 520 U.S. 968, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)...........................1

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir.2003) ..............................20

*Monserrate v. N.Y. State Senate*, 599 F.3d 148 (2d Cir.2010).......................................................2

*Munaf v. Geren*, 553 U.S. 674, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008)...........................................1

*Nat'l Council of Arab Americans v. City of New York*, 331 F. Supp. 2d 258, 265

(S.D.N.Y. 2004) .................................................................................................................19, 20, 22

*Natl. Audubon Soc., Inc. v. U.S. Fish and Wildlife Serv.*, 55 F Supp 3d 316 (EDNY 2014).......3, 4

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F3d 638 (2d Cir 2015) *cert dismissed sub*

*nom. Allergan PLC v. New York ex. rel. Schneiderman*, 136 S Ct 581, 193 L Ed 2d 421 (2d Cir.

2015) ..............................................................................................................................................2, 4

*Oneida Nation of New York v. Cuomo*, 645 F.3d 154 (2d Cir.2011)................................................2

*Perez v. Danbury Hosp.*, 347 F.3d 419 (2d Cir.2003) ...................................................................20

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed.

1381 (1945)......................................................................................................................................20

*Red Earth LLC v. U.S.*, 657 F.3d 138 (2d. Cir. 2011) ...........................................................3, 4, 5

*Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986) ................................................................14

*Risenhoover v. Bayer Corp. Group Health Plan*, 83 F Supp 2d 408 (SDNY 2000) .......................2

*Robins Island Pres. Fund, Inc. v. Southold Dev. Corp.*, 959 F.2d 409 (2d Cir.1992)..................20

*Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1999) ..............................................................5, 9

*Sussman v. Crawford*, 488 F3d 136 (2d Cir 2007) ...................................................................1, 22

*Tolbert v. Koenigsmann*, 2015 WL 7871344 (NDNY 2015).........................................................5

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27 (2d Cir.1995)....................................2

*Tri–Star Pictures, Inc. v. Leisure Time Prods.*, B.V., 17 F.3d 38 (2d Cir.1994)..........................19

*Tunick v. Safir*, 209 F.3d 67 (2d Cir.2000) ..................................................................................6

*United States v Grace*, 461 US 171 (1983)..................................................................................13

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ..........................................13, 14, 15, 17, 18

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) .........1

**Rules & Secondary Sources:**

Black's Law Dictionary (10th ed. 2014).....................................................................9 (FN1), 11

City of Syracuse Revised General Ordinances, Article 10, Section 16-35......................................8

Fed.R.Civ.P. Rule 65 ....................................................................................................................1

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Civil Procedure 65, this memorandum of law is submitted on behalf of Defendants, City of Syracuse, Frank Fowler, in his official capacity as Chief of Police for the City of Syracuse Police Department, Joseph Sweeny, individually and in his official capacity as Captain for the City of Syracuse Police Department, and Jamey Locastro, individually and in his official capacity as Sergeant for the City of Syracuse Police Department (collectively "Defendants"), in support of its Opposition to Plaintiff's motion for a preliminary injunction seeking to enjoin Defendants from demarcating a border to a licit public assembly, the proposed June 2016 Pride Festival at the Inner Harbor, where, within such borders, restrictions could be limited in the time, place, or manner of protected speech.

## ARGUMENT

## I.    HEIGHTENED PRELIMINARY INJUNCTION STANDARD FOR PLAINTIFF.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008)); *see also*, *Gen. Mills, Inc. v. Chobani, LLC*, 2016 WL 356039, at *4 (NDNY 2016) *reconsideration denied*, 2016 WL 1639903 (NDNY 2016).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing,* carries the burden of persuasion." *Sussman v. Crawford*, 488 F3d 136, 139-40 (2d Cir 2007) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)) (emphasis in original).

It is enshrined in Second Circuit law that "[a] party seeking a preliminary injunction must ordinarily establish (1) 'irreparable harm'; (2) 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for

litigation, plus a balance of the hardships tipping decidedly in favor of the moving party'; and (3) 'that a preliminary injunction is in the public interest.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F3d 638, 650 (2d Cir 2015) *cert dismissed sub nom. Allergan PLC v. New York ex. rel. Schneiderman*, 136 S Ct 581, 193 L Ed 2d 421 (2d Cir. 2015) (quoting, *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir.2011) (internal quotation marks omitted)).

However, the Second Circuit Court of Appeals has held that there is a *heightened* standard placed upon the moving party seeking a preliminary injunction when either: "(i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *Actavis PLC*, 787 F3d at 650 (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 33–34 (2d Cir.1995)). "When either condition is met, the movant must show a 'clear' or 'substantial' likelihood of success on the merits, *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir.1999), and make a 'strong showing' of irreparable harm, *Doe v. N.Y. Univ.,* 666 F.2d 761, 773 (2d Cir.1981), *superseded on other grounds by Zervos v. Verizon New York, Inc.*, 252 F3d 163, 171 (2d Cir 2001), in addition to showing that the preliminary injunction is in the public interest." *See id.*; *see also*, *e.g.*, *Risenhoover v. Bayer Corp. Group Health Plan*, 83 F Supp 2d 408, 410 (SDNY 2000).

Furthermore, when a party seeks to enjoin "'governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' that same party cannot rely on the 'fair ground for litigation' alternative even if that party seeks to vindicate a sovereign or public interest." *Oneida Nation of New York v. Cuomo*, 645 F3d 154, 164 (2d Cir 2011) (citing *Monserrate v. N.Y. State Senate*, 599 F3d 148, 154 (2d Cir.2010)). Thus, as the Court is aware,

2

if a preliminary injunction "will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, it should be granted only if the moving party meets the more rigorous likelihood of success standard." *Red Earth LLC v. U.S*., 657 F.3d 138, 143 (2d. Cir. 2011) (citations omitted).  This extends to policies, as "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly."  *Natl. Audubon Soc., Inc. v. U.S. Fish and Wildlife Serv.*, 55 F Supp 3d 316, 349-50 (EDNY 2014) (quoting *Otoe–Missouria Tribe,* 769 F.3d 105 (2d Cir 2014) (quotations and citation omitted)); *see e.g.*, *Able v. United States,* 44 F.3d 128, 131 (2d Cir.1995) ("[t]his exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly").

Here, substantially all the relief that Plaintiff seeks would ostensibly be granted in a successful preliminary injunction, and, therefore, it should not be granted because, as noted below, Plaintiff cannot meet even a minimal standard of clearly showing "irreparable harm." Plaintiff, in his "Prayer for Relief" in his Complaint, asks the Court for: **(i)** declaratory relief (i.e., (a) adjudging Plaintiff's Constitutional rights violated on June 21, 2014 and June 20, 2015; (b) declaring the alleged "buffer zone" unconstitutional; and (c) declaring alleged "heckler's veto" unconstitutional); **(ii)** injunctive relief (i.e., (a) preliminary and permanent injunction against the same alleged "buffer zone"; and (b) enjoining the alleged "heckler's veto"); and **(iii)** nominal damages and attorney's fees.  *See* Doc. No. 1, "Prayer for Relief," pp. 18 – 20.

In Plaintiff's Motion for Preliminary Injunction and its associated Memorandum of Law, Plaintiff asks the Court to enjoin the City from: (a) enforcing an alleged "buffer zone" (*see* Doc.

No. 6-1, p. 1); and (b) enjoining the City from enforcing such a zone because it "Operates as Unconstitutional Viewpoint-Based Heckler's Veto" (*see* Doc. No. 6-15, p. 16).

Here, although the declaratory relief sought is its own remedy effecting past actions and future policy, the injunctive relief sought in Plaintiff's Complaint serves the same and/or similar ends: to hold that such actions alleged or presumed to have been taken violate the rights of Plaintiff.  Namely, that the alleged causes to Plaintiff's requested remedies for declaratory and injunctive relief are the same alleged "buffer zone" that operates as a "heckler's veto."

Here, furthermore, if a preliminary injunction is granted by this Court, it "cannot be undone even if the defendant prevails at a trial on the merits."  *Actavis PLC*, 787 F3d at 650 (internal quotations omitted).  If in fact the permit application submitted by CNY Pride, Inc. is reviewed and approved in such a way to create a border to the public assembly that includes part of a sidewalk or street—and the festival is in fact held at the Inner Harbor on June 18, 2016— then enjoining such permitted action—which would be limited in time, place, and manner— cannot be undone (assuming, of course, that any prospective trial on the merits would be held after the date of June 18, 2016).  *See* Attorney Declaration of Todd M. Long, ¶ 11.  Therefore, the Court should review Plaintiff's application for a preliminary injunction by a heightened standard, which, among other things, would require a "strong showing" of irreparable harm. *Doe,* 666 F.2d at 773.

Here, also, Plaintiff should be required to meet a "the more rigorous likelihood of success standard" (*Red Earth LLC*, 657 F.3d at 143) because such "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly" (*Natl. Audubon Soc., Inc.*, 55 F Supp 3d at 349-50) (internal quotations omitted).  Here, the directive

from the Syracuse Police Department (*see* Long Decl., Ex. A) is derived from the City of

Syracuse's Public Assembly ordinance, which states, in part, that:

> (a) *Purpose*. It is the purpose of this section to give sufficient time, prior to the
> described events involving a large concentration of persons upon the city streets,
> to permit city departments and others affected thereby to discharge their duties in
> providing: (1) Protection for said persons; (2) Protection for the traveling public;
> and (3) Continuity and coordination of emergency services to the community.. . . .
> (f) All persons attending the event shall obey the lawful commands of police
> officers and shall at all times conduct themselves in a lawful manner.

City of Syracuse Revised General Ordinances, Article 10, Section 16-35 (emphasis in original).

Thus, the policy of demarcating boundaries in the public right-of-way, which Plaintiff alleges are

an illegal "buffer zone" and "heckler's veto" would have been and may be—if enacted at this

year's CNY Pride, Inc.'s Public Assembly—policies derived from legislation.   Thus, any

demarcation of areas in the public right-of-way that are part of the permitted area of a Public

Assembly permit (*see* Long Decl., Ex. A), which would be licitly granted, can only be enjoined

at the request of Plaintiff under a "rigorous likelihood of success standard."  *Red Earth LLC*, 657

F.3d at 143 Therefore, such standard should apply here.  For this same reason, Plaintiff cannot

argue that there is a "fair ground for litigation" and must rely on a "likelihood of success on the

merits" under a more rigorous likelihood of success standard.  *Id.*

     For the reasons mentioned above, Plaintiff's motion for a preliminary injunction should be

denied.

## II.   PLAINTIFF HAS NOT ADEQUATELY ASSERTED THAT HE WILL SUFFER IMMINENT AND REAL IRREPARABLE HARM.

     "A showing of irreparable harm is 'the single most important prerequisite for the issuance

of a preliminary injunction.'" *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118

(2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)).  "Speculative,

remote or future injury is not the province of injunctive relief." *Tolbert v. Koenigsmann*, 2015

WL 7871344, at *2 (NDNY 2015) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)).  Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id*. (quoting *Faiveley*, 559 F.3d at 118).

Plaintiff selectively cites *Bronx Household of Faith v Bd. of Educ. of City of New York's* quotation from *Elrod v. Burns*, wherein it is stated that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," 331 F3d 342, 349 (2d Cir 2003) (quoting *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).  Yet, the same Court ruling goes on to offer that the Second Circuit has "not consistently presumed irreparable harm in cases involving allegations of the abridgement of First Amendment rights." *Id*. (citing *Amandola v. Town of Babylon,* 251 F.3d 339, 343 (2d Cir.2001) (per curiam)). The Court in *Amandola v. Town of Babylon* did not address the matter of this inconsistency, but noted the apparent tension by stating that "that this Court [Second Circuit Court of Appeals] has not spoken with a single voice on the issue of whether irreparable harm may be presumed with respect to complaints alleging the abridgement of First Amendment rights." *Amandola*, 251 F3d at 343, (*cf*., e.g., *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir.2000) (presuming irreparable harm) with, *e.g.*, *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir.1999) (requiring a showing of irreparable harm).

*Bronx Household of Faith* goes on to note the alternative tension that Plaintiff ignores, in that "when a complaint alleges First Amendment injuries, irreparable harm must still be shown— rather than simply presumed—by establishing an actual chilling effect." *Bronx Household of Faith*, 331 F3d at 349.  "[I]n instances where a plaintiff alleges injury from a rule or regulation

that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of free speech rights." *Id*. at 350.

Seriatim recitation of the words "chill" and "effect" is not sufficient, as the Second Circuit has recently ruled that "'purely conjectural' assertions of a potential 'chill' are insufficient," and where a plaintiff offers no "'objective evidence to substantiate [its] claim that the challenged regulation has deterred [it] from engaging in protected activity,'" the harm is not presumed to be irreparable. *Keepers, Inc. v. City of Milford*, 807 F3d 24, 43 (2d Cir 2015) (internal citations omitted); *Int'l Action Ctr. v. City of New York*, 587 F.3d 521, 529 (2d Cir.2009); *see also Latino Officers Ass'n v. Safir*, 170 F.3d 167, 170 (2d Cir.1999) ("Allegations of a subjective chill of First Amendment rights are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." (internal quotation marks and alteration omitted).

In *Latino Officers Ass'n v. Safir*, 170 F3d 167 (2d Cir 1999), the plaintiff, Latino Police Officers' Association (hereinafter "LOA") brought an action against the New York City Police Department (hereinafter "NYPD") alleging that it has violated their First Amendment free speech rights by enforcing a procedure that allegedly restricted those officers' public statements regarding police department matters. The LOA sought a preliminary injunction in the matter, as a member of the LOA, Anthony Miranda (hereinafter "Mr. Miranda") "unsuccessfully sought the NYPD Legal Bureau's permission to accept an invitation to appear before the City Council Committee on Civil Service and Labor. As a consequence, he did not speak before the Committee." *Latino Officers Ass'n*, 170 F3d at 169. Mr. Miranda was denied to speak by the NYPD Legal Bureau on a second occasion, and the LOA thus alleged that Mr. Miranda and other

members were resultingly "severely curtailed their public speaking over the ensuing months."
*Id*. There, the threat to LOA members in speaking publicly without the NYPD Legal Bureau's
authorization was "even if vague—of professional discipline." *Id*. at 171. There, a stipulation
was reached where the LOA:

> "no longer need seek permission to speak before an audience; they only must
> notify the NYPD that they intend to speak, and provide a summary of their
> comments after-the-fact. Although we acknowledge that, as a theoretical matter,
> this may make some officers more reluctant to speak than they would be if they
> did not have to bring their speech to the Department's attention."

*Id*. However, the court found "this kind of conjectural chill is not sufficient to establish real and
imminent irreparable harm." *Id*. Therefore, the Second Circuit Court of Appeals vacated the
District Courts grant of a preliminary injunction against the NYPD. *Id.* at 173.

In *Bray v. City of New York*, 346 F Supp 2d 480 (SDNY 2004), the plaintiff-association
of bicyclists moved for preliminary injunction to prevent the defendant-city from seizing
bicycles of plaintiff's participants who were not charged with a crime or violation of law. There
the plaintiffs claimed "to be fearful of participating in the October 29th bike ride because of the
threat that the police will confiscate their bicycles as they did at the last Critical Mass event."
*Bray*, 346 F Supp 2d at 488. "Importantly, despite their trepidation, Plaintiffs nevertheless
intend to participate in the October 29th bike ride." *Id*. The Court there found that the plaintiffs
failed to demonstrate "that the chilling effect on their First Amendment rights is *tangible* enough
to constitute irreparable harm," noting from *Latino Officers Ass'n* that "First Amendment chill
that is conjectural is insufficient to establish the threat of irreparable injury." *Id*. (emphasis
supplied) (citing *Latino Officers Ass'n,* 170 F.3d at 171). Noting that there the plaintiffs
intended to attend the event, the Court went onto further establish that the plaintiffs' offering of
"insufficient evidence that the alleged harm will curtail their expressive activity," did not meet
the level of alleged "irreparable injury." *Id*.

Here, it is first worth noting that the necessary element in moving for a preliminary injunction that the Court has stated is "the single most important prerequisite for the issuance of a preliminary injunction," *Rodriguez*, 175 F.3d at 234, was treated secondarily in Plaintiff's memorandum of law; given no more than two (2) paragraphs comprising more than half of a page in a twenty-three (23) page memorandum of law. *See* Doc. No. 6-15, pp. 21 – 22.

Here, Plaintiff has not properly pleaded or argued his required "strong showing" of irreparable harm, because under prevailing case law "when a complaint alleges First Amendment injuries, irreparable harm must still be shown—rather than simply presumed—by establishing an actual chilling effect." Plaintiff, like in *Latino Officers Ass'n* and *Bray*, only offers conjecture[1], and then fails to offer objective evidence to substantiate his claim that the challenged regulation has deterred him from actually engaging in protected activity. *See Keepers, Inc.*, 807 F3d at 43.

Here, Plaintiff's allegations of "irreparable harm" are based in similarly "vague" allegations of disciplinary action, such as a possible arrest, like in *Latino Officers Ass'n*. As noted in Plaintiff's own Complaint, the officers with whom Plaintiff interacted in the 2014 CNY Pride Festival only hypothetically offered that arrest could be an option if Plaintiff was in violation of the governing ordinances:

> 51. Sgt. Locastro added that he was giving Deferio a lawful order to move across the street for him to be in compliance with the permit and if Deferio failed to do so he *could be* subject to arrest.. . .

> 53. Wanting to confirm the consequences for not moving across the street, Deferio inquired as to whether he would be arrested if he refused to leave, and Sgt. Locastro replied that he "*could be* subject to arrest." . . .

---

[1] Black's Law Dictionary defines "conjecture" as "[a] guess; supposition; surmise." CONJECTURE, Black's Law Dictionary (10th ed. 2014).

> 54. Desiring more clarification, Deferio asked Sgt. Locastro to elaborate on what he meant when said Deferio "could be subject to arrest." Sgt. Locastro replied: "If you want definitive answers, then, yes, *if you refuse to move across the street*, you will be arrested."

Doc. No. 1, ¶¶ 51, 53, and 54 (emphasis supplied).  Plaintiff responded by crossing the street, but continuing to freely exercise his free speech rights.  *See* id. ¶ 62.

The next year at the 2015 CNY Pride Festival, Captain Sweeny only vaguely asserted hypothetical conclusions to violating governing ordinances pertaining to the public assembly:

> 76. Deferio asked Captain Sweeny what the consequences would be if he refused to move across the street and Captain Sweeny replied that Deferio *could be* arrested.. . .

Doc. No. 1, ¶ 76.  Here, Plaintiff admits that none of the officers told him that he was facing an imminent threat of arrest, and that the harm was in fact real at the time Plaintiff was at the CNY Pride Festival in both 2014 and 2015.  Being that Plaintiff was never arrested, nor had ever faced a previous imminent and real threat of arrest, it is mere conjecture that attendance at any 2016 CNY Pride Festival would result in a real and imminent threat of arrest.  Nowhere in Plaintiff's Complaint does there reside any factual basis to assert, other than mere speculation, that at any 2016 CNY Pride Festival would Plaintiff be subject to an imminent and real arrest, and thus Plaintiff fails to bridge the gap between a prospective real and imminent threat of arrest in 2016 and that the challenged regulation has deterred him from engaging in protected activity.

In fact, if the past is any indication of the future, despite the hypothetical responses by Sgt. Locastro at the 2014 CNY Pride Event, Plaintiff returned to the same location for the 2015 CNY Pride Event.  The necessary causal mechanism of creating the "chilling effect" did not result in Plaintiff leaving the festival area in 2015 as well, as he merely crossed the street and continued to exercise his free speech rights after Cpt. Sweeny merely informed Plaintiff that he *could be* arrested.  *See* id., ¶ 62 and 76.

Other than Plaintiff's vague assertion that "The next Pride Festival will occur on June 18, 2016. But the fear of arrest keeps Deferio from engaging in his constitutionally-protected expression on the public sidewalk near the Pride Festival," (*see* Doc. No. 1, ¶ 97) nowhere in his Complaint does Plaintiff assert that he will not engage in exercising his free speech rights on the sidewalks along the Inner Harbor at any 2016 CNY Pride Festival "but-for" a preliminary injunction enjoining the City for creating boundaries in the public right-of-way. In these ways, the present matter is not dissimilar from *Bray*, where, despite their fear, bikers intended to participate in the proscribed activity. Although Plaintiff does not express his intention to altogether forgo going to the Inner Harbor for the 2016 CNY Pride Festival, like in *Bray* Plaintiff has proffered insufficient evidence that the alleged harm will curtail his expressive activity. *See Bray*, 346 F Supp 2d at 488. Therefore, Plaintiff has not met his burden to prove that his fear of arrest is presumed as an "irreparable harm." *See Keepers, Inc.*, 807 F3d at 43.

Plaintiff makes bald assertions that the fear of arrest is "chilling," which is purely conjectural. The very supposition that an arrest may occur is the very definition of conjecture, as there is no confirmation yet that the 2016 CNY Pride Festival permit application will be approved and that there will be a demarcated border approved in the public right away. *See* CONJECTURE, Black's Law Dictionary (10th ed. 2014). Furthermore, and importantly, there is no proof whatsoever, in the form of admissible evidence above the level of sheer speculation that any Syracuse Police Officers will arrest Plaintiff. In fact, imminence implies a temporal immediacy that would eliminate a future speculated scenario unless there was any evidence that Plaintiff will really be arrested on the date of June 18, 2016 on a sidewalk that may (or may not) be permitted for CNY Pride Inc.'s use on the same date.

11

Thus, here, Plaintiff's assertion that the effect of such alleged threats of arrest are "chilling" do not even meet the Court's minimal standard (let alone the "strong showing" required, presently), as Plaintiff states once:

> 96. Deferio desires to convey his religious views on the public sidewalk bordering the Pride Festival, but Syracuse's policy banning him from being present within 40 feet of an entrance to the Pride Festival based on the whim of CNY Pride *chills and deters* him from speaking there due to fear of arrest.

Doc. No. 1, ¶ 96 (emphasis supplied). And that, as a result, "the fear of arrest keeps Deferio from engaging in his constitutionally-protected expression on the public sidewalk near the Pride Festival." *Id*. at ¶ 97. This leads to the conclusory statement that the "impact of chilling and deterring Deferio from exercising his constitutional rights on a public sidewalk constitutes irreparable harm to him." *Id*. at ¶ 98. This, like *Latino Officers Ass'n*, does not establish real and irreparable harm. As the permit has not even been approved, there is no imminent threat that there will be an area of the public assembly that includes a 40 foot demarcation of the public right-of-way. *See* Long Decl., 11. Furthermore, even if an alleged "buffer zone" is approved by the City, Plaintiff is assured, by Syracuse Police Department directive, that any boundary disputes will result in a measured demarcation that will not provide any possibly unconstitutional vagueness as to where Plaintiff expressions may be limited. *See* Id., Ex. A. Therefore, any threat of arrest is not imminent or real, and, therefore, cannot be an irreparable harm.

Here, even assuming, *arguendo*, that an alleged "buffer zone" is approved for the 2016 CNY Pride Festival, Plaintiff is not restricted from expressing his opinion on the adjacent sidewalks. He will do so under no threat of arrest, so long as he acts in accordance to the City's ordinances. *See* Long Decl., Ex. A.

For the reasons mentioned above, Plaintiff's motion for a preliminary injunction should be denied.

12

III.  **PLAINTIFF CANNOT SHOW THAT HE HAS A LIKELIHOOD OF SUCCESS ON THE MERITS.**

Plaintiff, either under the common or "rigorous likelihood of success standard," cannot prove the essential element of a "likelihood of success on the merits," in any claim made upon free speech and the First Amendment, as alleged in Plaintiff's Complaint.

A.  **Time, Place or Manner Regulations.**

City Defendants do not dispute that oral and written dissemination of Plaintiff's religious views is entitled to Constitutional protection under the First Amendment.  *See Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981).  City Defendants also acknowledge that "'public places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'"  *See United States v Grace*, 461 US 171, 177 (1983).  However, in public forums, such as the sidewalk in this case, the government may permissibly restrict expressive conduct through the enforcement of reasonable time, place, and manner regulations.  *See id.*  The United States Supreme Court has articulated a three-part test to determine whether such regulations interfere with rights guaranteed by the First Amendment.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  The regulations will withstand constitutional scrutiny so long as they are "(1) content neutral, in that they target some quality other than substantive expression; (2) narrowly tailored to serve a significant governmental interest; and (3) permit alternative channels for expression."  *Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir.2006) (citing *Ward*, 491 U.S. at 791).

       *i.  Content Neutrality*

In determining whether a time, place or manner regulation is content neutral, the Supreme Court has held that the government's purpose—that is, whether the government has adopted a regulation "because of [a] disagreement with the message it conveys—should be the principal inquiry.  *See Ward*, 491 U.S. at 791; *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 295 (1984).  A regulation that "serves purposes unrelated to the content of expression" may be deemed content-neutral, "even if it has an incidental effect on some speakers or messages but not others."  *See Ward*, 491 U.S. at 791; *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47-48 (1986).  When the government has a justification for the regulation "without reference to the content" of such regulated speech, then the regulation will be considered content-neutral.  *See Ward*, 491 U.S. at 791 (quoting *Cmty. for Creative Non-Violence*, 468 U.S. at 293).

This case is similar to *Heffron v. International Society for Krishna Consciousness*, where the Supreme Court held that a rule requiring a license to distribute or sell written materials or to solicit funds within the confines of the grounds of the Minnesota State Fair was a permissible regulation on the place and manner of communicating a group's religious views.  *See* 452 U.S. at 640.  In this case, the proposed request for permit by the CNY Pride Festival organizers "applies evenhandedly" to anyone who wishes to distribute written materials, proselytize, or otherwise engage in expressive conduct.  *See Heffron*, 452 U.S. at 649.  As detailed below, City Defendants' principal justification for the guideline in question is to ensure that individuals may safely express their views without disturbing the peace or inciting violence against themselves or others.  This justification has nothing to do with content, but rather with protecting Plaintiff and others from physical harm and maintaining peace and order in the community.  *See Feiner v.*

*New York*, 340 U.S. 315, 320 (1951).  Accordingly, Plaintiff's motion for preliminary injunction should be dismissed because he is not likely to succeed on the merits of his case.

*ii. Narrowly Tailored to Serve a Significant Government Interest*

Secondly, a time, place or manner regulation must be narrowly tailored to serve a significant governmental interest.  *See Deegan*, 444 F.3d at 142.  A regulation is considered to be narrowly tailored so long as it "promotes a substantial government interest that would be achieved less effectively absent the regulation."  *See Ward*, 491 U.S. at 799; *Costello v City of Burlington*, 632 F3d 41, 45 (2d Cir. 2011).  The time, place, or manner regulation also may not, however, "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward,* 491 U.S. at 799.

It is well-settled law that a municipality's interest in protecting the public health, safety and welfare of individuals using a public forum is a valid governmental objective.  *See Cox v. State of New Hampshire*, 312 U.S. 569, 574 (1941) (holding that the "authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend"); *Costello*, 632 F3d at 45 (holding that a city noise control ordinance, the stated purpose of which was to "preserve the public health, safety, and welfare of its residents," was narrowly tailored and did not burden substantially more speech than necessary in achieving its stated purpose).  The Supreme Court held in *Heffron* that the "demands of safety" were even more pressing in the context of a state fair, because of the expected "large crowds" and congestion that would result. *See* 452 U.S. at 651.  As mentioned previously, the court in *Heffron* held that the State's interest in confining distribution, selling, and fund solicitation activities to fixed locations was sufficient to satisfy the requirement that a place or manner regulation must service a substantial state

interest, namely, "the State's interest in avoiding congestion and maintaining the orderly movement of fair patrons on the fairgrounds." *See id.* at 654.

City Defendants' "interest in protecting the 'safety and convenience'" of individuals using the public forum in question is a similarly important and valid governmental objective in the present case. *See Heffron*, 452 U.S. at 650 (quoting *Cox*, 312 U.S. at 574). Like the state fair in *Heffron*, the CNY Pride Festival will bring a large number of visitors into a limited amount of space at the Inner Harbor. By regulating where Plaintiff may stand to conduct his expressive activities, City Defendants' are ensuring that the sidewalk immediately outside the entrance to the CNY Pride Festival will remain uncongested and allow for the safe and efficient passage of myriad CNY Pride Festival attendees, much like the fairgrounds in *Heffron*.

Furthermore, given the fact that Plaintiff's presence and expressions of his beliefs at the CNY Pride Festival in the past have resulted in violence being committed against him, City Defendants have a substantial interest in protecting the safety and well-being of both Plaintiff and those attending the CNY Pride Festival. *See* Doc. No. 1, ¶ 73. This interest has nothing to do with the content of Plaintiff's expressions, but rather with the substantial government purpose of protecting Plaintiff and CNY Pride Festival attendees from physical harm. Allowing Plaintiff to stand in the same area where he has admittedly suffered physical harm in the past and may possibly suffer harm again in the future "would be totally inimical to these purposes." *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 296 (1984).

Plaintiff's argument that City Defendants' proposed regulations amount to an unconstitutional "heckler's veto" is also unconvincing. *See* Doc. No. 6-16 at 17. While the Supreme Court has held that the "ordinary murmurings and objections of a hostile audience cannot be allowed to silence a speaker," speech that creates the danger of an "immediate threat to

public safety, peace, or order" may be limited by government regulation.  *See Feiner v. New York*, 340 U.S. 315, 320 (1951) (quoting *Cantwell v. State of Connecticut*, 310 U.S. 296, 308 (1940)).  In the present case, Plaintiff's presence, and the content of his speech and/or signage (*see* Doc. No. 1, ¶ 18), has in fact incited CNY Pride Festival attendees to inflict violence upon Plaintiff's person, thus suggesting that it has the potential to do so again.  Plaintiff admits in his own Complaint that such violence was incited by his presence at sidewalk near the Pride Festival's entrance:

> 72. Once again, Deferio did not wish to enter the Pride Festival area. He just wanted to communicate his viewpoints from the sidewalk near the Pride Festival's entrance where people were traversing and mingling.

> 73. Before Deferio began to speak, a Pride Festival *private security guard* came up to him, and was *physically aggressive with him*, forcing Deferio into the street. Deferio returned to the sidewalk, and was able to have peaceful conversations with others. Also, *a bystander struck Deferio* without provocation.. . .

Doc. No. 1, ¶ 72 – 73 (emphasis supplied).  Again, City Defendants' have a substantial interest in preventing the outbreak of violence and of maintaining peace and order in its streets.  *See Feiner*, 340 U.S. at 320.  For the reasons mentioned above, Plaintiff's motion for a preliminary injunction should be denied.

### iii.  Permits alternative channels for expression

The final requirement of a valid time, place or manner regulation is that it leaves open ample alternative channels of communication.  *See Ward*, 491 U.S. at 802.  The Supreme Court has held that the "First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."  *Heffron* 452 U.S. at 647. Furthermore, the alternative channels resulting from the time, place or manner regulation need not be a "perfect substitute for those channels denied to plaintiffs by the regulation."  *See Mastrovincenzo v. City of New York*, 435 F.3d 78, 101 (2d Cir.2006).  Even if the government's

regulations "may reduce to some degree the potential audience" for protected speech, a regulation will be held valid if there is no showing that alternative remaining avenues of communication are inadequate.  *See Ward*, 491 U.S. at 802-03.

Plaintiff argues that the proposed place and manner regulation "completely prohibits [Plaintiff] from conducting any form of expressive activity."  Doc. No. 6-15 at 16.  On the contrary, like the regulation in *Ward*, City Defendants' proposed regulation does not attempt to ban any particular manner or type of expression.  *See* 491 U.S. at 802.  Plaintiff may still conduct expressive activities well within earshot and line of sight of CNY Pride Festival attendees, and is not foreclosed from handing out leaflets, proselytizing or communicating one-on-one with passersby.  There is nothing preventing Plaintiff from standing or walking on sidewalks adjacent to the boundaries of the CNY Pride Festival.  The fact that CNY Pride Festival attendees "tend to walk on the CNY Pride Festival side of the street," that is, that City Defendants' boundary line may "reduce to some degree the potential audience" for Plaintiff's speech, is not sufficient to show that this alternative channel is inadequate.  *See Ward*, 491 U.S. at 802.

For the reasons mentioned above, Plaintiff's motion for a preliminary injunction should be denied.

## IV.   BALANCE OF EQUITIES DISFAVORS AND OPPOSES A PRELIMINARY INJUNCTION.

As illustrated above, issuing a preliminary injunction will not cause Plaintiff irreparable harm, despite Plaintiff's conjectural assertions that there is a chilling effect placed upon him because of previous interactions with officers.  Furthermore, Plaintiff will not be prohibited from the free exercise of his opinion outside of a proposed alleged "buffer zone."  Because what Plaintiff characterizes as a "buffer zone" is merely the demarcation of the boundary of the public assembly that includes part of the public right-of-way, Plaintiff will still be at the limits of the

CNY Pride Festival itself and will be able to, so long as done in accordance with the City's ordinances, distribute leaflets, display his signage, use a sound amplification device, and carry on communications with festival attendees who are interested in engaging with him. *See* Long Decl., Ex. A.

The City, however, will suffer injury in that it exposes itself and the general public to the danger and liability associated with the "immediate threat to public safety, peace, or order" demonstrated from the 2015 CNY Pride Festival incident involving Plaintiff. *See* Doc. No. 1, ¶ 73. For the reasons mentioned above, Plaintiff's motion for a preliminary injunction should be denied.

## V.   PUBLIC INTEREST DISFAVORS AND OPPOSES A PRELIMINARY INJUNCTION.

Although the protection of the freedom to exercise First Amendment rights is of great importance to the public, the municipalities have a concomitant right and responsibility to limitedly regulate speech that could create, under such circumstances as here, the danger of an "immediate threat to public safety, peace, or order." *Feiner*, 340 U.S. at 320. As evidenced by Plaintiff's own admission in his Complaint, the City would invoke this right in a *limited* manner by the presence of any specific demarcation of the CNY Pride Festival permit in the public right-of-way. As noted above, however, Plaintiff will still be able to communicate his message in direct proximity, and adjacent, to the CNY Pride Festival. *See* Long Decl., Ex. A. For the reasons mentioned above, Plaintiff's motion for a preliminary injunction should be denied.

## VI.   IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, DEFENDANTS RAISE THE DEFENSE OF LACHES.

Laches "bars injunctive relief where [a] plaintiff unreasonably delays in commencing [an] action." *Nat'l Council of Arab Americans v. City of New York*, 331 F. Supp. 2d 258, 265 (S.D.N.Y. 2004) (quoting *Tri–Star Pictures, Inc. v. Leisure Time Prods.*, B.V., 17 F.3d 38, 44

(2d Cir.1994)). "The doctrine reflects the principle that 'he who comes into equity must come with clean hands.'" *Nat'l Council of Arab Americans*, 331 F. Supp. 2d at 265 (quoting *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir.2000) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)).

"Where a defendant raises a potentially meritorious laches defense, it is appropriate to consider that issue in the preliminary injunction context." *Id*. (citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 132 (2d Cir.2003)). "Grounds for laches exist when a plaintiff unreasonably and inexcusably delays in seeking an injunction, and the defendant is prejudiced by that delay." *Id*. (citing *Perez v. Danbury Hosp.*, 347 F.3d 419, 426 (2d Cir.2003)); *see also Robins Island Pres. Fund, Inc. v. Southold Dev. Corp.*, 959 F.2d 409, 423 (2d Cir.1992).

In *Bray v. City of New York*, *see above*, the defendant-city sought to bring its own a preliminary injunction, enjoining unpermitted bicyclist-plaintiffs from parading in their "Critical Mass" event. *Bray*, 346 F Supp 2d 480. There, it was noted that at the time the defendant sought to enjoin the Critical Mass event, the defendant had "been aware of the Critical Mass bike rides 'for a number of years,'" with only two days to respond for plaintiffs to respond. *Id*. at 491 (internal quotation omitted).

In *Nat'l Council of Arab Americans v. City of New York*, 331 F. Supp. 2d 258 (S.D.N.Y. 2004), the plaintiffs argued that the defendant-city violated plaintiff's First Amendment rights in denying their permit for a demonstration in a public park. Plaintiffs made this claim as early as June 25, 2004. After defendant tried to cooperate with plaintiffs, and needed additional information, plaintiffs "delayed until August 13, 2004—one and a half months after the Parks Department's final ruling and a mere 15 days before the proposed demonstration—to come to

this Court for relief." *Nat'l Council of Arab Americans*, 331 F. Supp. 2d at 265.  The Court noted that "to a significant degree, the emergency created by this preliminary injunction application is of Plaintiffs' making. *Id*.  The Court, therefore, denied plaintiffs' preliminary injunction. *Id*. at 273.

Here, Plaintiff has known since June 21, 2014 that he took Constitutional issue with the City's policies and enforcement of permitted boundaries at the CNY Pride Festival.  *See* Doc. No. 1, ¶ 38.  Then, on June 20, 2015, Plaintiff had, allegedly, a similar interaction with Cpt. Sweeny as he did with Sgt. Locastro the year prior—i.e., allegedly proscribing Plaintiff's Constitutional free speech rights in the public right-of-way.  *See* id. at ¶ 71 – 92.  Specific to the present matter, at the 2015 event Plaintiff took issue with the alleged 40 foot "buffer zone" around the entrance to the festival.  *See* id., ¶¶ 82, 84 – 87, 89, 90, and 92.  Plaintiff also admits in his Complaint knowledge that the next CNY Pride Festival is scheduled for June 18, 2016. *See* id. at ¶ 97.

Here, first, despite taking issue with the alleged limitations placed on Plaintiff's speech as early as June 21, 2014, which he pleads in his Complaint filed on March 31, 2016, he did not move for a preliminary injunction until April 5, 2016 (serving the City on April 6, 2016).  *See* id., ¶ 38; *see also* Doc. No. 16.  This is a difference of one (1) year, nine (9) months, and fifteen (15) days from the date of the first alleged injury and the time of filing his motion for a preliminary injunction, and at the same time of filing only two (2) months and thirteen (13) days from the proposed date of the festival.  By the time the Court renders a decision, which at the earliest would be May 20, 2016, there would only be twenty-nine (29) days from the time of the injunction order to the date of the festival, prejudicing the City and its permit approval process. Thus, like in *Bray*, Plaintiff has been aware of the CNY Pride Festival and the alleged polices

and regulations of the City "for a number of years," and has failed until April 5, 2016 to seek injunctive relief.  *See Bray*, 346 F Supp 2d at 491.

Even assuming, *arguendo*, that Plaintiff's Counsel's letter to the City regarding Plaintiff's grievances is considered as some sort of notice to the City of any alleged violation (*see* Doc. No. 1, ¶¶ 63 – 70), it stands to reason that it is not tantamount to the "an extraordinary and drastic remedy" of a motion for a preliminary injunction.  *See Sussman*, 488 F3d at 139-40.

Here, further assuming, *arguendo*, that Plaintiff's true knowledge of the City's policies and regulations regarding public assemblies and the CNY Pride Festival was on June 20, 2015 when the City sought to allegedly enforce an allegedly illegal "buffer zone," there would still have been a prejudicial delay of nine (9) months and sixteen (16) days from the 2015 festival to the time of filing his motion for a preliminary injunction.  This time period between knowledge of the 2016 festival and the motion for the preliminary injunction is greater than *Nat'l Council of Arab Americans* (less than two months).  331 F. Supp. 2d 258.  This failure to seek injunctive relief within two (2) months and thirteen (13) days, and effectively placing any final decision regarding the enjoining of any prospective permit for the CNY Pride Festival until twenty-nine (29) days of the proposed event prejudices the City.

Plaintiff cannot argue that he was not aware of the CNY Pride Festival being in June 2016 until the time of his Complaint, or the filing of the motion for a preliminary injunction, as he asserts in his Complaint that the "Central New York Pride, Inc. ("CNY Pride") sponsors an annual Pride Week in Syracuse, New York, which takes place for one week in June each year."  Doc. No. 1, ¶ 23.

Finally, here, the City has been, and will be prejudiced by any delay.  As noted above, if a final decision regarding the preliminary injunction is made at the earliest possible date of May

20, 2016, that only gives the City twenty-nine (29) days to prepare for the CNY Pride Festival and organize any possible alternatives with the applicant.

For the reasons mentioned above, Plaintiff's motion for a preliminary injunction should be denied.

## **CONCLUSION**

For the reasons set forth above Defendants respectfully request this Court deny Plaintiff's Motion for a Preliminary Injunction, in its entirety, with prejudice, and grant such other and further relief the Court deems just and proper.

Date:   May 3, 2016                                    _____s/ John A. Sickinger___
Syracuse, New York                             John A. Sickinger, Esq.
                                                              Assistant Corporation Counsel
                                                              *Attorney for Defendants*
                                                              Federal Bar Roll No. 513595
                                                              jsickinger@syrgov.net

                                                              _____s/ Todd M. Long_____
                                                              Todd M. Long, Esq.
                                                              Assistant Corporation Counsel
                                                              *Attorney for Defendants*
                                                              Federal Bar Roll No. 519301
                                                              tlong@syrgov.net