UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION
-------------------------------------------x
JAMES DEFERIO,

                                    Plaintiff,

vs.          CIVIL ACTION NO.: 5:16-CV-0361 (LEK-TWD)

CITY OF SYRACUSE; FRANK FOWLER,
in his official capacity as Chief of
Police for City of Syracuse Police
Department, JOSEPH SWEENY, individually
and in his official capacity as Captain
for the City of Syracuse Police Department
and JAMEY LOCASTRO, individually and in
his official capacity as Sergeant for the
City of Syracuse Police Department,

                                    Defendants.

-------------------------------------------x

        Deposition of BARRIE GEWANTER, held on May 2, 2017,

commencing at 2:27 p.m., at Precision Reporters, P.C.,

One Lincoln Center, Suite 750, Syracuse, New York,

before Erica Bedford, Court Reporter  and Notary Public

in and for the State of New York.

                    A P P E A R A N C E S

For Plaintiff:        CENTER FOR RELIGIOUS EXPRESSION
                      699 Oakleaf Office Lane
                      Suite 107
                      Memphis, Tennessee 38117
                        BY:  MARK A. MANGINI, ESQ.

For Defendants:       OFFICE OF THE CORPORATION COUNSEL
                      City of Syracuse
                      233 East Washington Street
                      City Hall Room 300
                      Syracuse, New York 13202
                        BY:  TODD M. LONG, ESQ.
                             AMANDA R. HARRINGTON, ESQ.

1          I N D E X   O F   T E S T I M O N Y

2    EXAMINATION OF BARRIE GEWANTER                Pages

3       By Mr. Mangini:                         5 –  61

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           I N D E X   O F   E X H I B I T S

2                                           Page          Page
                                        Marked        Identified
3

4    Exhibit No. 1                        15            15
     (E-mail dated 6/16/14)
5

6    Exhibit No. 2                        21            21
     (Parade/Public Assembly Permit for
7    2013)

8    Exhibit No. 3                        27            27
     (E-mail to Sam White)
9    Exhibit No. 4                        34            34
     (Parade/Public Assembly Permit
10   application for 2015)

11   Exhibit No. 5                        38            38
     (Parade/Public Assembly Permit
12   application requesting use of
     driveway into Inner Harbor Park for
13   20 feet on either side, etc.)

14   Exhibit No. 6                        40            40
     (Parade/Public Assembly Permit
15   Application, with a reference to 40
     feet)
16

17   Exhibit No. 7                        42            42
     (List of communications from the
18   police department and permist office
     in relation to approval of permits
19   request)

20   Exhibit No. 8                        52            52
     (Notes produced by Barrie Gewanter
21   from 5/20/16)

22   Exhibit No. 9                        56            57
     (Parade/Public Assembly permit
23   application dated 4/18/16)

24   Exhibit No. 10                       59            59
     (Public Assembly Plan Review Comments
25   to Application)

1                    <u>FEDERAL STIPULATIONS</u>

2

3          IT IS HEREBY STIPULATED AND AGREED by and

4    between the attorneys for the respective parties that

5    the presence of the Referee be waived;

6          IT IS FURTHER STIPULATED AND AGREED that the

7    witness shall read and sign the minutes of the

8    transcript within 60 days upon receipt, and that the

9    filing of the transcript be waived;

10          IT IS FURTHER STIPULATED AND AGREED that all

11   objections, except as to form, are reserved until the

12   time of trial;

13          IT IS FURTHER STIPULATED AND AGREED that this

14   Deposition may be utilized for all purposes as provided

15   by the Federal Rules of Civil Procedure;

16          AND FURTHER STIPULATED AND AGREED that all

17   rights provided to all parties by the Federal Rules of

18   Civil Procedure shall not be deemed waived at the

19   appropriate sections of the Federal Rules of Civil

20   Procedure shall be controlling with respect thereto.

21

22

23

24

25

1          B A R R I E   G E W A N T E R, called as

2    a witness and being duly sworn, testifies as follows:

3              EXAMINATION BY MR. MANGINI:

4          Q    Okay.  Ms. Gewanter, my name is -- like I

5    said before, my name is Tony Mangini, I'm an attorney

6    for the Center for Religious Expression and I'm

7    representing Mr. Jim Deferio in his case against the

8    City.

9              So for the record, would you please state

10   your name?

11         A    First name B-A-R-R-I-E, Barrie.  Last

12   name G-E-W-A-N-T-E-R, Gewanter.

13         Q    Got it.

14         A    You said you were with the Center for --

15         Q    Religious Expression.

16         A    Thank you.

17         Q    Okay.  So if you would, just tell me

18   about yourself.  What do you do?

19         A    I'm a human rights and civil rights

20   advocate.

21         Q    Okay.  And how long have you been a civil

22   rights advocate?

23         A    Back to the mid 1980s.

24         Q    Okay.  And where do you -- where do you

25   presently work?

1          A      Currently I work for Onondaga County.

2          Q      Okay.  Okay.  Where have you worked in

3     the past?

4          A      How far back do you want me to go?

5          Q      Let's -- let's just go to the 1980s, you

6     mentioned.

7          A      Okay.  My previous job was with the New

8     York Civil Liberties Union.  I've also worked for the

9     Syracuse University football team, Syracuse University,

10    University of Missouri at St. Louis, Maryville

11    University, Syracuse University, a number of different

12    other community colleges, the International Institute in

13    St. Louis, and that's bringing us back into the '80s.

14         Q      Okay.  Okay.  So what did you do as part

15    of the New York Civil Liberties Union?

16         A      I was Executive Director of the Central

17    New York Chapter.

18         Q      Okay.  And what did you -- what did you

19    -- what did that position entail?

20         A      Many, many different responsibilities.

21    It was a multifaceted position.

22         Q      Okay.  Could you give some examples,

23    please?

24         A      Sure.  When people called the office with

25    a complaint or a question, I would respond.  I

1    interacted with the New York City office.  I assisted

2    organizations that had civil liberties questions or

3    concerns.  I spoke to the media and in the public about

4    matters of civil and human rights concerns and civil

5    liberties.  I gave educational presentations.  I work

6    with other community groups.  That is sort of a rough

7    outline.

8              Q    Okay.  What other kind of community

9    groups have you worked with?

10             A    Almost too many to name.  I can give you

11   a couple of examples.

12             Q    Sure.

13             A    The Syracuse Peace Council, Pax Christi

14   in Utica, Pax Christi in Elmira, CNY Pride, Disabled In

15   Action, a number of nonprofit human services agencies.

16   I've worked with unions and other entities in the labor

17   movement.  The CNY Workers' Center and many, many other

18   organizations.

19             Q    Got it.  Got it.  Okay.  So what's your

20   relationship with CNY Pride been like?

21             A    I participate in the Pride event.  I have

22   also assisted them with parade setup, with police

23   liaison activities, assisted them in helping them figure

24   out how to fill out permit requests.

25             Q    Okay.

1          A     I -- when we set up for the parade, I

2    chalk on the sidewalk or the street where each group is

3    going to set up, and I work with the parade coordinator

4    to get everybody in line.  Also, when I was with the

5    NYCLU and now that I'm with the County, I also set up a

6    booth at the festival and do the normal outreach and

7    interaction things you do in an outreach display booth.

8    And I also participate in the parade, usually driving.

9          Q     Okay.  Got it.  Do you have an official

10   position within CNY Pride?

11         A     I do not.

12         Q     Okay.

13         A     I have never been a member of their

14   board.  I have never paid dues.  I may have made a

15   donation once or twice and bought a t-shirt.

16         Q     Okay.  So could you give us a little more

17   detail on how you assist with the parade permit process?

18         A     It depends on the year.

19         Q     Okay.

20         A     So I can tell you that sometimes people

21   that want to do some kind of public parade or public

22   assembly are not familiar with the documents that the

23   City requires by way of seeking a permit.  And they're

24   also not aware of whether or not they need a permit for

25   certain types of demonstrations.

1      Q    Okay.

2      A    So I would clue them in on what forms

3 they need.

4      Q    Okay.

5      A    And what -- what is being requested on

6 the different lines.

7      Q    Got it.  Got it.  Okay.  And so how long

8 have you been involved with CNY Pride in that -- in that

9 capacity?

10      A    Hard to put a particular year on it.  I

11 don't remember precisely when I started.  It was before

12 2013, probably not before 2008, but I'm not sure

13 precisely.

14      Q    Okay.  So what's the -- could you tell me

15 a little bit about the CNY Pride festival?

16      A    Sure.  It's an annual gathering to

17 celebrate the members and diversity of the LGBTQ

18 community in this region, and particularly in the

19 Syracuse area.  There are vendors with hot dogs and ice

20 cream and drinks.  There's a stage with performances.

21 There are various organizations with booths that are

22 providing information, some vendors that sell things.

23      Q    Okay.

24      A    And there's also a family area.

25      Q    Gotcha.  Okay.  So what's the purpose of

1   the festival?

2           A    I think I said that.  To celebrate the

3   LGBTQ community in all its diversity.

4           Q    Okay.  Got it.  Got it.  Okay.  So who

5   attends these festivals?

6           A    Anybody that wishes to.

7           Q    Okay.

8           A    It is open to the public.

9           Q    Okay.  And where is it held?

10          A    It's been at different places over the

11  years.

12          Q    Okay.  Where has it been held, I guess --

13  well, could you identify those locations, please?

14          A    I can.  Most currently and for the past

15  couple of years it's been held in the Inner Harbor Park

16  in Syracuse.  In past years -- and I don't remember

17  precisely when -- it was held in the Everson Plaza.

18          Q    Okay.

19          A    Before that, it may have been held in

20  another downtown plaza, not Clinton Plaza but nearby.

21          Q    Got it.  Got it.  Okay.  So what does CNY

22  Pride have to do in order to hold a festival?

23          A    Anything that any other group that would

24  put together a festival.

25          Q    And what would that entail?

1          A    Communicating with vendors, communicating

2     to get permits, communicating to arrange for power, to

3     arrange for whatever clearances are needed, to

4     communicate with performers, to get publicity out.

5          Q    Okay.

6          A    Those normal things that go into putting

7     on an event that is an outdoor event.

8          Q    Got it.  Okay.  So do you have an idea of

9     how the City's permit process works for festivals?

10         A    I had -- I have an idea, yes.

11         Q    Okay.  Could you describe what your

12    understanding of that process is?

13         A    Well, the process has changed over time.

14         Q    Okay.

15         A    But there are forms that you need to fill

16    out, which then go into the permits office, and that's

17    the current situation.  And then the permits office

18    checks with other departments within the City and seeks

19    approval for the request or conditions, and then that's

20    communicated back to the requester.

21         Q    Got it.  Okay.  And how long has that

22    been the process?

23         A    I can't tell you precisely.  It used to

24    be that you filled out a parade or assembly request

25    directly to the police department.  And a number of

1  years ago -- and I don't remember precisely when --

2  those functions became centralized through the permits

3  office.

4          Q    Gotcha.  Do you have a ballpark estimate?

5          A    Not really.

6          Q    Okay.  Okay.  And what was the permit --

7  sorry.  You did say that.  Okay.

8              So have you personally been involved in

9  the process of getting CNY Pride a permit for the CNY

10  Pride festival?

11          A    I have assisted them in figuring out what

12  to put on the permit, and I had participated in a couple

13  of pre-event meetings with the police.

14          Q    Okay.  So let's -- let's get the first of

15  those first.  What -- how -- in what way do you assist

16  with the requests that CNY Pride wants to put on their

17  permits?

18          A    One of the things about filling out the

19  forms is to be as precise in your language as possible.

20  And a lot of laypeople don't understand how to be

21  precise in the language, so I sometimes will help them

22  with that precision in their language as far as starting

23  point of a parade, ending point of a parade, times for

24  gathering versus times for starting.  That kind of

25  thing.

1          Q    Okay.  The second thing you mentioned
2    there was the conversations with the City.  Could you
3    elaborate on that?  What kind of conversations have you
4    had with the City?
5                    MR. LONG:  Object to form.
6                    MS. HARRINGTON:  Object to form.
7                    THE WITNESS:  Okay.  So when there's
8              an objection --
9                    MS. HARRINGTON:  You can still --
10                   THE WITNESS:  -- I answer but the
11             objection goes on the record?
12                   MS. HARRINGTON:  Yes.
13                   MR. LONG:  Correct.
14         A    Specifically in reference to CNY Pride
15   and the parade or the festival, the conversations have
16   been about where they're going to set up one year as
17   opposed to another year, what they would like to see
18   from the police, what the police would like to see from
19   them.  A lot of what I've done is help them arrange a
20   meeting date and then make sure that the communication
21   happened two-way because the primary communication is
22   between the police and Pride.
23              EXAMINATION BY MR. MANGINI:
24         Q    Gotcha.  Okay.  So what kind of things
25   has CNY Pride requested from the police?

1       A    They have requested a parade route, which

2   has changed from some years to other years.  They have

3   requested that police ensure that they are able to --

4   their participants are able to gather and express their

5   messages without interference within a boundary area.

6       Q    Okay.  What do you mean by interference

7   within a boundary area?

8       A    There was a period where the lineup for

9   the parade was in front of city hall.  And there were

10  some protesters that would come in and among the people

11  that were gathering to get ready for the parade and yell

12  and scream at them and say things that were considered

13  very inappropriate by some of the members there.

14      Q    Okay.

15      A    And this caused distress.  The police did

16  not want to have any flashpoints of confrontation that

17  could escalate.  Neither did the people from Pride.  So

18  the police asked Pride to either put like caution tape

19  or police tape or barricades around a defined area where

20  they were going to gather so that the police had a clear

21  sense of where the permitted area was for the lineup for

22  Pride versus where the public areas were.  And I helped

23  facilitate that discussion.

24      Q    Okay.  Do you remember approximately when

25  that discussion was?

1    A    Not precisely.  It was definitely before

2    2013.  I don't remember precisely when those discussions

3    started.  It was somewhere between 2006 and 2010, but

4    I'm not sure precisely.

5    Q    Okay.  So how does CNY Pride and the City

6    collaborate regarding the festival and the permits?

7         MR. LONG:  Object to form.

8    A    Through conversations and e-mails.

9         MR. MANGINI:  Okay.  Okay.  So what

10        -- let's start with this.  We can label

11        this Exhibit 1.

12        THE WITNESS:  Is this something you

13        want me to examine?

14        MR. MANGINI:  Yes, yes, please.  And

15        just so you know, so far most of the --

16        most of these exhibits are going to be

17        ones we've already encountered.

18        MR. LONG:  So that's already Exhibit

19        1 from the previous deposition?

20        MR. MANGINI:  I believe so, yeah.

21        MS. HARRINGTON:  If it's already

22        been -- well, never mind.

23        THE WITNESS:  So I'm looking at an

24        e-mail from Chris Shepherd to Sam White,

25        Patrick Naylor and Mary Beth Roach dated

GEWANTER - MANGINI

1          June 16th, 2014?

2                    MR. MANGINI:  Yes.

3                    THE WITNESS:  Okay.

4          (A discussion was held off the record.)

5          (Whereupon Exhibit No. 1 was marked for

6          identification, 5/2/17, EAB)

7          EXAMINATION BY MR. MANGINI:

8     Q    Do you recognize this document?

9     A    I do not.

10    Q    Okay.

11    A    And I don't see me as a CC on this.

12    Q    Gotcha.  Okay.  Okay.  Do you have --

13 sorry.  Scratch that.

14          Were you participating with CNY Pride at

15 this point in 2014 helping them set up the festival and

16 get permits and that kind of thing?

17    A    Well, I didn't help them set up the

18 festival and I don't have a precise recollection of what

19 I did in 2014.  And I'm not in possession of any

20 documents that would refresh my memory.

21    Q    Gotcha.  Okay.  Okay.  Let me just --

22 let's go ahead and go down to this last paragraph here.

23    A    Uh-huh.

24    Q    Where it mentions -- actually, just read

25 that and let me know when you're done.

1          A    Okay.

2          Q    So do you know what Mr. Shepherd is

3    referring to here when he says, "protesters intruding on

4    the parade route as happened in 2012"?

5          A    I -- I don't want to comment on what

6    Chris intended.  I don't know what his motivation was

7    for those words.

8          Q    Got it.  Okay.  Okay.  But beyond his

9    motivation, do you know what incident or incidents he

10   was referring?

11         A    I have no idea what specific incident

12   he's talking about in 2012.  I will say that there was a

13   general concern about protesters that were critical of

14   the celebration of LGBT -- LGBTQ lives that was the

15   focus of the festival.  There was a concern about them

16   actually coming on top of the parade route and getting

17   very close to the people that were traveling on the

18   parade route as part of the parade.

19         Q    Okay.  Okay so what was that concern

20   based on?

21         A    Past experience of protesters that were

22   critical of the message of the Pride celebration getting

23   right on top of individuals that were in the

24   celebration, especially in regards to parents with

25   children.

1      Q    Okay.  And when you say the parade route,

2    are you referring to the street?  Are you referring to

3    the sidewalk?  What are you referring to?

4      A    The parade route is on the street.

5      Q    Okay.

6      A    The parade route does not permit the

7    sidewalk for the purposes of the parade.

8      Q    Got it.  Okay.  If I could direct your

9    attention to this paragraph here, where it says, "This

10   should leave unchanged our request for use of the

11   sidewalks."  Do you know what request that is referring

12   to?

13     A    It's hard to tell because this doesn't

14   tell what time, whether this is at the end of the

15   parade, at the beginning of the festival, so it's really

16   hard to tell without a time reference.

17     Q    Gotcha.  Okay.  Would you have an idea of

18   which one he's referring to if it -- if it were either

19   before or after?

20     A    Well, he refers to the use of the

21   sidewalks at the end of the route surrounding the

22   immediate perimeter of the entrance to Inner Harbor

23   Park, and I'm just quoting his words there.  So what I'm

24   assuming is that he's talking about the sidewalks

25   adjacent to the driveway into the Inner Harbor Park

1    parking lot where the festival takes place.

2         Q    Okay.  And so what is he requesting about

3    that area?

4         A    I can only look at the words that he has

5    written.  I -- I can't do anything other than -- than

6    read the words that he's written.

7              He says our request -- I request -- and

8    this is his terminology, "I request use of sidewalks."

9         Q    Gotcha.

10        A    So I don't know what he meant by use of

11   sidewalks since I can't read his mind back in 2014.

12        Q    Okay.  Okay.  But you didn't happen to

13   have any independent knowledge about what that was

14   about?

15        A    It probably referred to the idea of

16   having people that were entering the festival through

17   that driveway and via the sidewalks adjacent to it, be

18   able to pass freely without having somebody yelling and

19   screaming directly on top of them.

20        Q    Okay.  Okay.  So do you know the

21   identities of any of the protesters he's referring to in

22   this last paragraph again?

23        A    I can't -- no.  Actually, if you're

24   talking about 2012, I don't have a precise idea of who

25   he's referring to.

1          Q     Okay.  What about other years?

2          A     The only protesters that I am aware of

3    that have protested in the past, besides Mr. Deferio,

4    are a group from a conservative Catholic church in the

5    area who protested on the perimeter near city hall.  But

6    beyond that, I'm not sure of anybody's precise identity.

7          Q     Okay.  So what is your -- scratch that.

8                Do you have any prior history with

9    Mr. Deferio?

10         A     Direct history, no.  He's been present at

11   protests I've been at.  And I've observed his protest

12   and the protests of others and the interaction from

13   afar, but that's it.

14         Q     Okay.  And what --

15         A     I think he's yelled at me a couple of

16   times.

17         Q     Okay.  Okay.  And do you recall what he

18   yelled?

19         A     Not precisely, but it was not

20   complimentary and I just chose not to engage.

21         Q     Okay.  So I guess if you could, could you

22   kind of explain what -- what kind of events in the past

23   you have observed Mr. Deferio at?

24         A     I can't really recall anything other than

25   LGBT events when I've seen him.  I think I may have seen

1    him on a street corner downtown near the old location

2    for the bus transfers, which was actually right

3    downstairs at the corner of I think Jeff -- not

4    Jefferson -- Fayette and Salina, but other than that, I

5    don't have any precise recollection.

6         Q    Okay.  Do you recall when was the -- how

7    long have you been familiar with him?

8         A    I wouldn't say I'm familiar with him at

9    all.

10        Q    Okay.  When is the first time you can

11   recall seeing him?

12        A    I don't have a precise recollection.  I

13   really don't.

14        Q    Okay.  Do you have a ballpark estimate?

15        A    At some point during some Pride or other

16   LGBT event, but I can't give you a precise year.  I

17   really don't know.

18        Q    Okay.  Can you recall whether it would be

19   closer to 5 years or 15 years?

20        A    Somewhere in the middle but not closer to

21   one or the other because I don't have a precise

22   recollection.

23        Q    Okay.  That's fair.  That's fair.  Okay.

24   So what actually -- strike that.

25                    MR. MANGINI:  Okay.  So I'm going to

1          show you another exhibit.  Let's label

2          this one Gewanter 2, please.

3          (A discussion was held off the record.)

4          (Whereupon Exhibit No. 2 was marked for

5          identification, 5/2/17, EAB)

6      A    Can I refresh my memory on this document?

7      EXAMINATION BY MR. MANGINI:

8      Q    Yeah, uh-huh.

9      A    Okay.  What year was he requesting this?

10 Okay.  2013.  Okay.

11     Q    Okay.  So first off, do you recognize

12 this document?

13     A    That precise document, no.  The form,

14 yes.  It's a standard form.

15     Q    Got it.  And do you happen to know what

16 the significance of this is?

17     A    I have no idea.

18     Q    Okay.

19     A    I assume it's a document number, but I

20 don't know whose document number.

21     Q    Gotcha.  Okay.  So were you involved at

22 all in the requesting of this permit or advising CNY

23 Pride about the permit request?

24     A    I don't have a precise recollection in

25 2013, and I don't have any documents to reflect that

1    recollection, they're not in my possession.  But I do

2    not remember this particular language on this particular

3    form.

4              Q    Okay.  Okay.  So you don't recognize that

5    language at all?

6              A    No, not that language.

7              Q    Got it.  Got it.  Okay.  Okay.  Do you

8    happen to know what Mr. Shepherd was requesting when he

9    made this request?

10             A    I can't read his mind so no, I'm not sure

11   what the meaning of his words were when he wrote them.

12             Q    Got it.  Okay.  Okay.  So what would be

13   your understanding of what the effect of this permit

14   request is?

15                  MR. LONG:  I'm going to object to

16                  the form.

17             A    Given that I don't see any approvals, it

18   would have no effect at all except to request a permit.

19             Q    Okay.  And if it were granted, what would

20   its effect be?

21                  MR. LONG:  Objection.

22             A    That would depend on the stipulations --

23   I'm sorry.

24                  MR. LONG:  I apologize.  I object to

25                  form.

1                MS. HARRINGTON:  You're just stating

2          our objection.

3                MR. LONG:  I was just stating an

4          objection.  I didn't mean to interrupt.

5                THE WITNESS:  I didn't want to step

6          on you.

7                MR. LONG:  I apologize.

8       A     That would depend on the stipulations

9   that may have been issued by the City, if any, when the

10  permits were approved.

11              EXAMINATION BY MR. MANGINI:

12      Q     Gotcha.

13      A     So I can't tell you the outcome without

14  that information.

15      Q     Okay.  Do you know what form those

16  stipulations would be in?

17              MS. HARRINGTON:  Object to form.

18      A     Honestly, that differed from year to

19  year, and that was part of what they wanted to

20  standardize when they centralized the permits.  I think

21  they wanted to make sure the communication was

22  standardized in relation to any kind of permit that was

23  sought by the City.

24              So I -- I don't know precisely in 2013

25  whether that would have come in an e-mail, an addendum,

1    and I have no way of recalling that at this time.

2           Q    Gotcha.  Okay.  Right here where it

3    mentions --

4           A    Kirkpatrick?

5           Q    Yes.  Sidewalks bordering Kirkpatrick

6    Street at Inner Harbor Park for security.  Do you know

7    what Mr. Shepherd is referring to when he is asking for

8    that for security?

9           A    No idea.

10          Q    Okay.  Okay.

11          A    I do have not recognize that language.  I

12   do not recall any conversation with Mr. Shepherd about

13   this language on this form.

14          Q    Got it.  Okay.  All right then.  Okay.

15   Are you aware of -- kind of moving ahead.

16          A    Sure.

17          Q    Are you aware of any incident regarding

18   Mr. Deferio during the 2014 pride festival?

19               MS. HARRINGTON:  Object to the form.

20          A    I don't recall what happened in a

21   particular year versus another year so you would need to

22   be more specific about the type of -- did you say

23   incident?  Was that the word you used?

24          Q    Sure.  Yeah.

25          A    I mean, honestly, I have been at so many

1  Pride gatherings that they -- the years kind of run

2  together.

3          Q    Gotcha.  Okay.  Let's see.  Do you recall

4  seeing Mr. Deferio in 2014 at the Pride festival?

5          A    Specifically in 2014, no.  At successive

6  years at our Pride festival, yes.

7          Q    Okay.  Okay.  Do you recall hearing from

8  CNY Pride or anyone at CNY Pride about Mr. Deferio and

9  his activities during the 2014 Pride festival?

10         A    I don't have a specific recollection of

11 2014 discrete from 2012 or 2016 or 2015.

12         Q    Okay.

13         A    So I don't know specifically what you're

14 looking for.

15         Q    Okay.  Do you -- what is your general

16 notion about Mr. Deferio at Pride festivals?

17         A    About -- notion about what?

18         Q    About --

19         A    His dress?  His --

20         Q    About his conduct at those festivals and

21 -- yeah, let's just start with that.

22         A    He stands as close as he possibly can to

23 the people coming in and out.  He usually has a large

24 banner.  He's usually loudly telling people his opinion

25 about LGBT people, usually drawing from his

1    interpretation of bible scripture.

2           Q    Okay.  Okay.  Okay.  So after the 2014

3    festival leading up to the 2015 festival, did you have

4    any kind of correspondence with the City of Syracuse

5    regarding the 2014 festival?

6                  MS. HARRINGTON:  Object to form.

7           A    I have no specific recollection of when I

8    may have communicated and when I didn't in the period

9    specified, and I am not in possession of any documents

10   that would refresh my recollection.

11          Q    Okay.  Do you happen to recall -- sorry.

12   Scratch that.

13                  I guess just to clarify:  Do you recall

14   having any correspondences during that time?

15                  MS. HARRINGTON:  Object to form.

16          A    Specifically, I don't recall any specific

17   correspondence from three years ago.  My work life is

18   very busy, very complicated, and to pick out one set of

19   communications from three years ago would be absolutely

20   impossible without documents that would allow me to

21   refresh my recollection, which are not in my possession.

22          Q    Gotcha.  Okay.  Okay.  Actually, what we

23   might do he is we might move on to the next exhibit and

24   then maybe we can -- maybe we can come back.

25          A    Okay.

1          MR. MANGINI:  And you can label this

2       one Gewanter 3.

3          MS. HARRINGTON:  And this is the

4       same as Shepherd 3?

5          MR. MANGINI:  I believe so.

6       (Whereupon Exhibit No. 3 was marked for

7       identification, 5/2/17, EAB)

8      A    If you don't mind, I'll just take a

9   minute to read it?

10              EXAMINATION BY MR. MANGINI:

11     Q    Yeah, yeah.

12     A    Thank you.  Okay.  It's from me.  Okay.

13   I have reviewed it.

14     Q    So do you recognize this?

15     A    It is familiar, but only because I have

16   refreshed -- refreshed my memory by reading something is

17   that I actually wrote myself.

18     Q    Gotcha.  Okay.  So what's this -- what's

19   this e-mail about?

20     A    It is an e-mail to Sam White in the

21   permits office and Special Events Officer Kluge prior to

22   a meeting to discuss working together prior to Pride.

23   And it references draft -- drafts of the permit requests

24   related to the flag raising, the parade and the

25   festival.

1      Q    Gotcha.  Okay.  So could you kind of

2    identify who you were sending this to?

3      A    I think I already did.

4      Q    Sorry.  I guess -- I guess my question

5    is:  Could you identify who they are and what they do

6    and I guess why they're receiving this?

7      A    All right.  As I said previously, Officer

8    Kluge is with the special events section of the Syracuse

9    Police.  Sam White was at that time with the permits

10   office.  It is also CC'd to Officer Kluge's command

11   officer, Lieutenant Holtman; to Joe Doyle, and it says

12   corporation counsel; and it was also sent to Chris

13   Shepherd and Bruce Carter from CNY Pride.  They were on

14   the board at the time.

15     Q    Got it.

16     A    I'm sorry.  It also adds in the CC line,

17   although not in the text of the e-mail, Joseph Sweeny,

18   who is captain in the Syracuse Police.

19     Q    Got it.  Okay.  So why was Mr. Doyle CC'd

20   on this?

21              MS. HARRINGTON:  Object to form.

22              MR. LONG:  Object to form.

23     A    He is in the corporation counsel's

24   office.

25     Q    Okay.  And why did you decide to CC him

1   on it?

2                   MR. LONG:  Object to form.

3           A    Because I knew that the police are guided

4   by the corporation counsel when it comes to First

5   Amendment related activities, and bringing him in the

6   loop seemed to be prudent.

7           Q    Okay.  Had you had any prior

8   communication with him?

9                   MS. HARRINGTON:  Object to form.

10                  MR. LONG:  Object to form.

11          A    About what?

12          Q    About the CNY Pride festival.

13          A    I may have.

14          Q    Okay.  Do you have any specific

15  recollections of any of those communications?

16                  MR. LONG:  Object to form.

17                  MS. HARRINGTON:  Object to form.

18          A    Not really.

19          Q    Okay.  Okay.  So, I guess, what's the --

20  what's the context behind this e-mail?

21          A    Can you specify what you mean by context?

22          Q    Right.  I guess what prompted you to send

23  this e-mail in the first place?

24          A    Pride was coming up and we wanted to

25  discuss the permit requests.

1      Q    Okay.  And what particularly did you --
2 did you want to discuss about the permit requests?
3      A    Submitting them, police concerns, Pride
4 concerns, the process of having the permits issued.
5      Q    Okay.  What kind of concerns did Pride
6 have?
7      A    Back in 2015, I can only refer to what's
8 in this e-mail because I don't have access to any notes
9 or documents to reflect to refresh my recollection.  So
10 based on the language in here, it says that -- and I'm
11 reading right from the e-mail, "Police command officers
12 deployed for this detail have indicated that the
13 language in the permits are crucial for their ability to
14 deal fairly and effectively with situations created when
15 counter protesters show up..."
16           So that would have been a concern.  Sound
17 amplification was a concern, being able to use sound
18 amplification.  It also mentions in the text under
19 Request 2 exclusive use of sound amplification.  Based
20 on the text of this, it indicates that Pride was asking
21 for a portion of the sidewalks on either side of the
22 driveway into the festival to be part -- an explicit
23 part of the permit.
24           It says, also, this should reduce the
25 kind of friction and confrontation that has occurred at

1   that location in the past.  So I assume that that was a

2   concern.  I also wrote any such counter protesters

3   should still have adequate proximity to its intended

4   audience, and that reflects my concern about balancing

5   the interests because part of my concern -- and

6   something that I explain to Pride -- was that they have

7   interests but also there's First Amendment interests of

8   any protesters and they have to be balanced.

9           Q    Okay.  And how did you believe that

10  balance would be struck?

11               MS. HARRINGTON:  Object to form.

12          A    Well, that depended on the police and

13  what they were willing to do and what the City was

14  willing to do.

15          Q    Okay.

16          A    But it was my opinion that proximity to

17  the audience did not necessarily equate to being right

18  on top of them.

19          Q    Okay.  Okay.  And so just to clarify,

20  when you refer to 15 to 20 feet here, that's what you're

21  referring to?

22          A    Not necessarily.

23          Q    Okay.

24          A    This was a subject for discussion.  What

25  were the police and the City interested in doing based

1    on this request?  That was a ballpark figure for
2    discussion.
3           Q    Okay.  Okay.  Going back a little bit to
4    the third paragraph, the last sentence in that one that
5    says, "We want to make sure that the permit language
6    provides these officers with what they need to protect
7    and serve everyone that day."
8           A    Uh-huh.
9           Q    What did you mean by that?
10          A    That the officers had permit language
11   that gave them clear instructions on how to ensure that
12   the permit applicant was able to do what they had to do
13   on that day and what they were permitted to do, and that
14   anybody else present that wasn't part of the event could
15   also do what they intended to need do on that day within
16   the balance of the First Amendment.
17          Q    Got it.
18          A    And I'll point out that when I said
19   "serve everyone that day," I really meant everyone,
20   including counter protesters.
21          Q    Okay.
22          A    Because it was my opinion that the police
23   have to protect the First Amendment rights of everybody,
24   not just one over the other.
25          Q    Right.  Got it.  Okay.  Backing up a

1    little bit more to the second paragraph, where it says,

2    "We all agreed to this meeting..."

3            A    Uh-huh.

4            Q    Where -- when did that agreement take

5    place or what was -- what was the context of that?

6                    MR. LONG:  Object to form.

7            A    I have no idea because this was in 2015

8    and I don't have any documents that will allow me to

9    refresh -- reflect my recollection.  What I can say to

10   you is that in the process of seeking the permits, I

11   always encourage Pride to have a pre-meeting -- and this

12   was in June, a pre-event meeting with the police to

13   facilitate and encourage two-way communication.

14                    So without anything more specific, this

15   appears to me to be my attempt at facilitating that

16   communication.

17           Q    Got it.  Okay.  And so I guess a little

18   bit backing up to that first paragraph where it says we

19   have an appointment for a meeting at Monday at 10 a.m.

20           A    Uh-huh.

21           Q    Do you recall whether that meeting took

22   place?

23           A    I have no reason to believe it did not.

24           Q    Okay.  Okay.  Do you have any

25   recollections of -- were you present at that meeting?

1      A    I it took place, I was -- I was most

2   probably present.  I don't have any specific documents

3   to reflect my recollection to give you a definite that I

4   was there because those documents are not in my

5   possession.

6      Q    Okay.  Okay.  Okay.  So I guess I take it

7   that would also mean that you don't remember what was

8   discussed there at --

9      A    Precisely on 2 -- 2015 as opposed to 2014

10  or 2016, not necessarily.

11              MR. MANGINI:  Okay.  Okay.  Okay.

12              We can mark this one as Exhibit -- are we

13              up to 4?  Got it.

14              MS. HARRINGTON:  Can you hand me a

15              copy of that exhibit?

16              MR. MANGINI:  Yeah.

17              MS. HARRINGTON:  What was it marked

18              as before?

19              MR. MANGINI:  I believe 4.

20              (Whereupon Exhibit No. 4 was marked for

21              identification, 5/2/17, EAB)

22      A    If you give me a chance to just take a

23  look.

24      Q    Uh-huh.

25      A    So this is 2015.

1          (A discussion was held off the record.)

2               THE WITNESS:  I just indicated to

3          Mr. Mangini I've got until 4:30.

4               MS. HARRINGTON:  Okay.

5               THE WITNESS:  Hopefully we don't

6          leave -- leave Officer Kluge that long.

7               MR. MANGINI:  Yeah.

8          EXAMINATION BY MR. MANGINI:

9          Q    Okay.  So do you recognize this document,

10    Exhibit 4?

11         A    It is familiar.

12         Q    Okay.  How are -- how are you familiar

13    with it?

14         A    It looks like my handwriting.

15         Q    Okay.  Okay.  Would it make sense for you

16    to have filled this out on Mr. Shepherd's behalf?

17         A    It's likely that I filled it out with

18    Mr. Shepherd.

19         Q    Okay.

20         A    But not on his behalf, but with him.

21         Q    Okay.  Okay.  All right.

22         A    And let me clarify, with Mr. Shepherd or

23    another representative of CNY Pride.

24         Q    Gotcha.  Gotcha.  So what exactly is this

25    particular document?

1        A    This document is the standard SPD,

2  Syracuse Police Department, Parade and Public Assembly

3  Application.  In this case, this is from 2015.  It

4  doesn't look like it was approved so it's just the

5  permit request for the parade, the lineup for the

6  parade, and also for the assembly -- it's not clear that

7  whether this is for the festival or just the assembly at

8  the -- it looks like it is for the setup for the parade.

9        Q    Okay.  Okay.  All right.  So, actually,

10  do you see this right down here where it has an e-mail

11  there?

12        A    Uh-huh.

13        Q    Is that your e-mail?

14        A    It was.

15        Q    Got it.

16        A    At the time.

17        Q    Right.  So why would Mr. Shepherd request

18  that communications be sent to you?

19        A    Because they were looking to me for

20  assistance on First Amendment matters, and although the

21  permit wasn't being issued to me, it was being issued to

22  CNY Pride, this was simply a request to keep me in the

23  loop.

24        Q    Got it.  Got it.  Okay.

25        A    You know, if there were stipulations or

1    if there were conditions, I would just like to know.

2         Q    Okay.  Yeah.  That makes sense.  So what

3    is specifically being requested here regarding -- here

4    and here regarding exclusive use (indicating)?

5         A    What it says is, "We request exclusive

6    use of sound amplification along parade route, on

7    Kirkpatrick and on Van Rensselaer at end of parade

8    period and at dispersal point."

9              And then further, under public assembly,

10   it says "Sound system:  Yes," and we request exclusive

11   use of sound amplification within and adjacent to

12   permitted area during specific time.

13        Q    Okay.  So what --

14        A    Sorry.  Specified time.

15        Q    Okay.  Yeah.  So what exactly was meant

16   there by "exclusive use"?

17             MS. HARRINGTON:  Object to form.

18        A    The City has a sound ordinance which says

19   you can't use -- and I'm quoting this more of a

20   layperson's understanding of the law.  That the law or

21   the ordinance says that you cannot use sound

22   amplification in the city without a permit.  And my

23   understanding of that was that it was kind of first come

24   first served.

25             So this was a request to be -- to get the

1   approval for sound amplification and to be the first one

2   to get that.

3          Q     Got it.  Okay.

4          A     And let me add for that specific --

5   limited to that specific time and place.

6          Q     Got it.

7          A     But not beyond that.

8          Q     Right.  Right.  Okay.  Okay.  So I guess

9   where did the term "exclusive use" originate?

10                      MR. LONG:  Object to form.

11         A     When I was with the NYCLU I worked under

12  the supervision of experienced First Amendment lawyers

13  who shared with me the names and the gist of certain

14  significant First Amendment cases that went before the

15  Supreme Court.  I in turn read those cases myself to

16  familiarize and have further discussions with those

17  First Amendment lawyers.

18                      And one of the cases that was of

19  particular interest was a case in which a group that I

20  think is called the Hibernians in Boston got a Supreme

21  Court decision that basically said that the people that

22  request the permit have the right to control the message

23  during that time of the permit and the space indicated

24  on the permit, the location.

25                      So that was the idea that I suggested to

1    Pride to use, that since that's what the Supreme Court

2    suggested -- what the Supreme Court ruled that they

3    would also have the right to request the ability to

4    control the message for a defined limited period of

5    time, for a defined limited location during that period

6    of time.

7              Q    Got it.

8                   MR. MANGINI:  Okay.  Let's move on

9                   to this one, which can be Exhibit 5 I

10                  guess is where -- we're up to 5.

11                  THE WITNESS:  And I'd like a sec to

12                  just review the document.

13                  MR. MANGINI:  Sure.

14                  (Whereupon Exhibit No. 5 was marked for

15                  identification, 5/2/17, EAB)

16             A    Okay.  I've reviewed the document.

17                  EXAMINATION BY MR. MANGINI:

18             Q    Okay.  So do you recognize this document?

19             A    It is familiar to me.

20             Q    Okay.  All right.  And what is it?

21             A    It looks like it is a Syracuse Police

22   Department standard Parade/Public Assembly Permit,

23   specifically submitted for CNY Pride by CNY Pride

24   requesting the use of the driveway into the Inner Harbor

25   Park -- and here I'm reading directly from the document

1    -- on Kirkpatrick and adjacent sidewalks for 20 feet to

2    either side of the driveway on north side of

3    Kirkpatrick.

4              It also requests exclusive use of sound

5    amplification on that portion of the sidewalks and then

6    the sidewalk directly across the street to the south on

7    Kirkpatrick during specified hours.

8              It also requests exclusive use of this

9    location for access to festival site during festival for

10   setup time and for First Amendment activities related to

11   festival participants.  And that's reading directly off

12   of the form.

13        Q    Got it.  Okay.  So with regard to this

14   asterisk down here --

15        A    Uh-huh.

16        Q    Actually, the first thing I need to ask

17   you:  Did you collaborate with Chris Shepherd on this?

18        A    Yes.

19        Q    Okay.  Okay.  With regard to that

20   asterisk down there, where it says, we request exclusive

21   use of this location for access to festival site during

22   festival for setup time and for First Amendment

23   activities related to festival participants -- or

24   festival and participants, what's -- what is meant by

25   First Amendment activities related to festival and

1    participants?

2              MS. HARRINGTON:  Object to form.

3        A    I've described the festival as a

4    celebration of the diversity of LGBTQ community so it

5    would be messaging, speaking, gathering, associating,

6    related to that intent of the festival.

7              MR. MANGINI:  Okay.  Okay.  All

8              right.  I have another document.  Label

9              this one Exhibit 6.

10             MS. HARRINGTON:  Is this the former

11             Exhibit 6?

12             MR. MANGINI:  Yes.

13             (Whereupon Exhibit No. 6 was marked for

14             identification, 5/2/17, EAB)

15       A    I'd like a sec to familiarize myself with

16   this.

17             To me it looks like the same document.

18             EXAMINATION BY MR. MANGINI:

19       Q    Okay.  Now, one question I'd like to ask.

20       A    Uh-huh.

21       Q    Regarding these two, on Exhibit 5, here

22   it mentions 20 feet --

23       A    Oh.  I'm sorry.  Yes.

24       Q    -- and then on Exhibit 6 it mentions 40

25   feet?

1          A    Uh-huh.

2          Q    Do you know why there's that difference?

3          A    I don't have a specific recollection of

4    why the difference.

5          Q    Okay.  Do you know if you or someone at

6    CNY Pride changed that?

7          A    It certainly was changed.  I don't know

8    at what time and I don't know for what reason.

9          Q    Okay.  Do you recall personally having

10   any conversation that would have prompted you to suggest

11   that change?

12         A    No recollection of any specific

13   conversation, and I have no documents in my possession

14   to refresh my recollection from 2015.

15         Q    Got it.  Okay.

16         A    I mean, there may have been a

17   conversation but I have no precise recollection.

18         Q    Got it.  Okay.  Real quick, if I could I

19   guess go back a little bit.  Why the difference between

20   -- what's the difference really between Exhibits 4 and

21   5; as in, why are they separate?

22              MS. HARRINGTON:  Object to form.

23         A    Exhibit 4 is a parade application.

24   Exhibit 5 does not have a parade application.  Exhibit 4

25   does have a public assembly application but it does not

1  request anything relating specifically to the driveway

2  and adjacent sidewalks.  However, Exhibit 5 does.

3              MR. MANGINI:  Okay.  Okay.  Okay.

4              I've got another exhibit.  We'll mark

5              this one as 7.

6              (Whereupon Exhibit No. 7 was marked for

7              identification, 5/2/17, EAB)

8      A    Hold on.  Just one sec.

9      Q    Yeah.

10             MS. HARRINGTON:  Barrie, if you'd

11             like, we can have him make copies of

12             these exhibits for your record as well.

13             THE WITNESS:  That would be great.

14             Thank you.  I'm just, you know, trying to

15             remember what it was that I looked at.

16             MS. HARRINGTON:  Yes, of course.

17             THE WITNESS:  Let me see.  Okay.  So

18             let me take a look at this document to

19             refresh any recollection I have.

20             MS. HARRINGTON:  It's also 3:30.

21             THE WITNESS:  Thank you.  Let me

22             turn on my phone and renew my parking.

23             Thank you.  I have to turn it back on.

24     A    Okay.  I've taken a look at the document.

25             EXAMINATION BY MR. MANGINI:

1        Q    Okay.  Do you recognize what that is?

2        A    I can only look at the black and white

3   and recognize what's on it.  And it looks like it is a

4   list of communications from the police department and

5   from the permits office in relation to an approval of

6   the permits request.

7        Q    Okay.  Do you recall having seen this

8   document before?

9        A    I don't have a specific recollection of

10  the document, but the content indicates that it is from

11  2015, and I would imagine I got a copy of it at some

12  point.

13       Q    Okay.

14       A    Sorry.  I'm just --

15       Q    Yeah.  Go ahead.

16       A    -- looking down at my phone so I can

17  renew my parking, and I -- just hold on.

18             MR. MANGINI:  Let's go off the

19             record.

20             MS. HARRINGTON:  Yeah.  We can go

21             off the record for a minute.

22             THE WITNESS:  Thank you.

23             (A discussion was held off the record.)

24             EXAMINATION BY MR. MANGINI:

25       Q    Okay.  If you could, could you read those

1    comments for me?

2          A    There are no comments where it says

3    police department special events approved Paul Kluge.

4    In the second line, it says central permit office

5    conditionally approved Sam White.  And then, "Applicant

6    is granted exclusive control to the entry area into the

7    Inner Harbor festival area as well as the 40 feet on

8    either side of the northern portion of Kirkpatrick

9    Street for the limited purpose of allowing exclusive use

10   of sound amplification and access to the festival."

11         Q    Okay.  So what's your understanding of

12   what that means?

13              MR. LONG:  Object to form.

14         A    I can only go by what's written there.

15   It says "exclusive use of sound amplification."  To me,

16   that would mean that only Pride could use sound

17   amplification of mechanical means at that point and that

18   only people connected with the event could access the

19   festival at that point.

20         Q    Okay.  Okay.

21         A    But that's what it says on the document.

22   I don't want to read too much into what it says beyond

23   what it says.

24         Q    Gotcha.  Okay.

25         A    And it would honestly be up to the police

1    to interpret what that said at the event at that time.

2            Q    Okay.  Okay.  Actually, could you

3    elaborate on that regarding it would be up to the police

4    to interpret at the festival; what do you mean by that?

5                 MS. HARRINGTON:  Object to form.

6            A    In any given situation police have to

7    look at the facts, the context, the interests of the

8    parties involved, the permits that may or may not have

9    been issued, and in the balance figure what their action

10   is.  So this would communicate to the police the

11   parameters for the people to whom the permit had been

12   issued and the participants in the event that was

13   permitted.

14           Q    Got it.  Okay.  So at the 2015 Pride

15   festival, do you recall seeing Mr. Deferio?

16           A    I don't have a specific recollection of

17   one year versus another year because they all run

18   together.  But in the past couple of years, which would

19   likely include 2015, I believe he's been there.

20           Q    Okay.

21           A    And I believe I remember seeing him

22   there; although, I don't know precisely that was in

23   2015.

24           Q    Okay.  Based on what you do remember,

25   what do you remember him doing at the festival?

1          MS. HARRINGTON:  Object to form.

2     A    I don't remember what he did specifically

3 one year to the next.

4     Q    Right.

5     A    Usually he would try to station himself

6 on a particular corner adjacent to the driveway, stand

7 with a banner and say things or yell things to people

8 that were coming by on the sidewalk or approaching the

9 festival or leaving the festival.

10     Q    Okay.  And so he was on the sidewalk at

11 that point?

12     A    I don't know where he was in 2015 --

13     Q    Gotcha.

14     A    -- precisely.

15     Q    Okay.

16     A    I can tell you where he desired to be,

17 but I don't remember where he specifically was in that

18 year.

19     Q    Okay.  Okay.  And so generally where does

20 he desire to be, to your recollection?

21     A    If you're standing in the driveway to the

22 Inner Harbor looking out at Kirkpatrick Street, he wants

23 to be on the -- he seems to desire to be on the sidewalk

24 right adjacent to the driveway to the left.

25     Q    Okay.  Okay.  Do you recall him having

1    any interaction with police that year?

2         A    He may have.  I didn't witness it so I

3    don't know.  I assume they talked to him, but I don't

4    have any specific knowledge of that.

5         Q    Gotcha.  Do you recall having been

6    informed by anyone at CNY Pride that there was an

7    incident including Mr. Deferio at the Pride festival?

8         A    In one specific year as opposed to

9    another, no.

10        Q    Okay.  How about in general?

11        A    There was one report of an incident in

12   which there were words exchanged between some of the

13   people attending Pride and Mr. Deferio, and at some

14   point there was some physical contact and I never got a

15   clear idea of what it was.

16        Q    Okay.  Okay.  So do you have a

17   recollection of -- either a personal recollection of or

18   a description of Mr. Deferio being asked by police

19   officers to go to the sidewalks across the street?

20             MS. HARRINGTON:  Object to form.

21             MR. LONG:  Object to form.

22        A    I don't have a precise recollection of

23   that in a particular year.  I do know that one year

24   perhaps, maybe more than one year, I don't remember, the

25   police did ask him to go across the street where he

1    could still have proximity to the audience but not be at

2    that precise location.

3            Q    Okay.  And do you recall what the basis

4    for that was?

5            A    I can't read the minds of the police

6    going back several years at that particular time at that

7    particular location and event, so I don't know.

8            Q    Gotcha.  Okay.  Okay.  All right.  Okay.

9    So after the 2015 festival leading up to the 2016

10   festival, do you recall having -- do you recall you or

11   anyone from CNY Pride having conversations with the City

12   regarding the Pride festival?

13                   MS. HARRINGTON:  Object to form.

14                   MR. LONG:  Object to form.

15           A    Yes.

16           Q    Okay.  And what conversations were those?

17                   MS. HARRINGTON:  Object to form.

18           A    I remember that I got a contact from Sam

19   White about the decision of the judge in the case.  I

20   also remember helping CNY Pride to arrange a pre-event

21   meeting with the permits office and there were police

22   officers there.  Also, very shortly before Pride, when

23   the Orlando massacre happened, I got request from CNY

24   Pride and other LGBTQ groups to set up a meeting with

25   the police to discuss concerns about security during

1    Pride events, and I did set that meeting up.

2         Q    Okay.  Were you present at those

3    meetings?

4         A    Yes.

5         Q    Okay.  Do you recall what was said at

6    those meetings?

7                   MS. HARRINGTON:  Object to form.

8         A    I don't recall what was said, but I do

9    have some documents that might refresh some of my

10   recollection.

11        Q    Okay.  Do you have those documents with

12   you?

13        A    Uh-huh.

14        Q    Okay.

15        A    So I have notes from a meeting on 5/20.

16   I have me -- notes from what looks like a phone

17   conversation with Sam White on 6/13.  And I have notes

18   from a meeting on 6/14.  And I copies of these.

19        Q    Okay.  Okay.

20        A    Because the subpoena said produce certain

21   documents.

22        Q    Yes.  Okay.  Then -- then, yeah, we'll --

23   we'd definitely like these documents or copies of those

24   documents.

25                   (Witness handing documents.)

1          Q    Got it.  Thank you.

2          A    Let me just give to the other attorneys

3     in the room as well.

4                    MS. HARRINGTON:  Thank you.

5                    THE WITNESS:  I figured two copies

6               would be appropriate.

7                    MS. HARRINGTON:  Thank you very

8               much.

9          A    I will point out on these documents that

10    there is a redaction on the one that is 6/13/16 because

11    on half of the page there are some notes that I took

12    that have absolutely nothing whatsoever to do with Pride

13    but have to do with a particular prosecution and so I

14    have cut that off.

15         Q    Okay.  All right.

16         A    It wasn't responsive to the subpoena.

17         Q    Got it.  Got it.  Okay.  So if you could

18    briefly review these, I'm going to take a look at them

19    too.

20         A    Uh-huh.  I reviewed them prior to coming

21    to this deposition.

22         Q    Gotcha.

23                   THE WITNESS:  If the lawyers in the

24              room could let me know when we get to 4

25              o'clock, I would appreciate it.

1          MS. HARRINGTON:  Yes.

2          MR. LONG:  Absolutely.

3          THE WITNESS:  I have to be at ML

4     King School at 4:30.

5          MR. LONG:  Sure thing.

6          THE WITNESS:  If at all possible.

7          MS. HARRINGTON:  Yes.  You have 15

8     more minutes.

9          THE WITNESS:  Thank you.  Yeah,

10    that's fine.

11    <u>EXAMINATION BY MR. MANGINI:</u>

12         Q    Okay.  So I guess just starting out,

13    could you kind of summarize, based on checking out or

14    refreshing your memory with these documents, what was

15    discussed at these -- these I guess three meetings?

16         A    There's not three meetings.

17         Q    Okay.

18         A    To the best of my recollection, the notes

19    from 6/13 may have been a phone call with Sam White.

20         Q    Got it.

21         A    So two meetings and perhaps a phone call.

22         Q    Okay.  Okay.  So could you summarize

23    each, please?

24         A    My notes only 5/20/16 seem to be an

25    outline of what was discussed at a meeting between

1    representatives of Pride, the permits office and the

2    police department.

3                 The notes that I have dated 6/13/16 seem

4    to be information provided by Sam and a discussion about

5    the judge's decision to issue a preliminary injunction

6    in Mr. Deferio's case.

7                 And then the document notes dated 6/14

8    seem to be notes of a conversation with the police and

9    members and -- of Pride and other leaders in the LGBT

10   community about security concerns at Pride events after

11   the Orlando massacre.

12        Q    Got it.

13                 MR. MANGINI:  All right.  So

14                 starting with the 5/20 conversation and

15                 notes.  On the second page, we have --

16                 actually, we should probably make this an

17                 exhibit; right?

18                 MS. HARRINGTON:  If you're going to

19                 question her about it, I would prefer --

20                 MR. MANGINI:  Yeah, yeah, yeah.

21                 Let's go ahead and make this one an

22                 exhibit.  This would be 8.

23                 (Whereupon Exhibit No. 8 was marked for

24                 identification, 5/2/17, SMG)

25                 MR. MANGINI:  All right.

1          MS. HARRINGTON:  And for purposes of

2             the record, Exhibit 8 are notes produced

3             by the witness, Barrie Gewanter, from May

4             20th, 2016.

5          MR. MANGINI:  Yes.

6          EXAMINATION BY MR. MANGINI:

7          Q    Okay.  So on the second page here, under

8  what appears to be Point 4, it mentions ongoing lawsuit

9  against City by right wing nut prelim injunction.  Is

10  that referring to Mr. Deferio?

11          A    It is.

12          Q    Okay.  It says only initial stages of

13  lawsuit.  Outcome soon.  May affect 40 foot.  So what's

14  that -- what's that referring to?

15          A    Probably refers to the conditions in the

16  -- in the approved permit that you gave me as Exhibit 7

17  that's dated 6/14/2016.

18          Q    Okay.  And then I see you have notes here

19  to the side of that that says, I guess, so permit app

20  separate.  What's that referring to?

21          A    Based on refreshing my memory from this,

22  I think that it was a request by Sam White in the

23  permits office to separate our request for the 40 feet

24  on the sidewalk on Kirkpatrick in a separate document so

25  that if the outcome of the lawsuit invalidated that

1    request that that could -- the other requests could be

2    approved and stand on their own.

3            Q    Got it.  Got it.  Okay.  All right.  For

4    now I think we're just going to keep moving on, so I

5    think that has some good information.

6            A    Certainly.

7            Q    All right.  Other than the things you

8    have that you've provided notes on, do you recall any

9    other communications with the City?

10           A    Uh-huh.

11                MR. LONG:  Object to form.

12           A    You'd have to specify communications that

13   you mean.  The subpoena, which I'm reading from now,

14   said any and all correspondence in your possession

15   between the City of Syracuse officials and yourself

16   and/or CNY Pride regarding the CNY festival, and it

17   specifies 2013, '14, '15, '16.

18                And the only things I have in my

19   possession was from 2016 and I did find some e-mails

20   that might be considered responsive to that, but I may

21   have been in touch with the City about other matters at

22   other times which I can't produce because they're not in

23   my possession.

24           Q    Gotcha.

25           A    So I have -- this is my copy.  So these

1  are e-mails that I'm producing in response to the

2  subpoena.

3        Q    Okay.

4              THE WITNESS:  Copy for both sides.

5              MR. LONG:  Thank you.

6        A    And I also had in my possession which are

7  responsive to the subpoena, I found documents that were

8  applications for the permit and I also found

9  applications for permits that had big crosshatching on

10  it.

11        Q    Okay.

12        A    So I will provide both.

13        Q    Excellent.  Thank you very much.

14              MR. LONG:  Thank you so much.

15        A    Sure.  I also have in my possession but I

16  don't have a copy -- oh, no, I've already provided that.

17  I also have a copy of the memorandum decision and order,

18  which I believe is the preliminary injunction, and an

19  article from the paper, but they didn't seem to be

20  responsive.

21        Q    Okay.

22        A    You already have the preliminary

23  injunction order.

24        Q    Right.  Right.  Okay.  So, actually, now

25  that you've provided me this, have you -- have you

1    provided me everything you've brought today other than

2    --

3            A    Yes, sir.

4            Q    -- your copies?  Got it.  Okay.  Okay.

5    All right.  Okay.  So in 2016 were you still involved

6    with Pride as they -- as they made their applications?

7            A    I assisted them.  I'm not a member of the

8    board or Pride and I don't pay any membership dues, but

9    I did assist them and I did have a booth and did

10   participate in the parade.

11                MR. MANGINI:  Okay.  Okay.  All

12                right.  Then I'd like to give you another

13                document.  I guess we can label this one

14                9, and in the previous ones that we gave

15                you it would be 7 -- or 8, rather.

16                MS. HARRINGTON:  Well -- okay.

17                MR. LONG:  Do we have an 8?

18                MS. HARRINGTON:  No.

19                MR. LONG:  We went as far as 7.

20                MR. MANGINI:  Oh, that's.  I'm

21                sorry.  Oh, yes.

22                MS. HARRINGTON:  What is it that

23                you're having her mark?

24                MR. MANGINI:  Sorry.  I put it in

25                there to give to you all and I forgot.

1              (Whereupon Exhibit No. 9 was marked for

2              identification, 5/2/17, EAB)

3        A    Okay.

4              EXAMINATION BY MR. MANGINI:

5        Q    Okay.  So do you recognize this document?

6        A    It looks familiar, but I don't have a

7   copy in my possession.

8        Q    Gotcha.  Okay.

9        A    Not of this exact document.

10       Q    Right.  Okay.  So who is Jayme Martin?

11       A    He was the president of CNY Pride in

12  2016.

13       Q    Okay.  And were you involved in helping

14  him with this request?

15       A    Yes.

16       Q    Okay.

17       A    I likely was.  It looks like I was.

18       Q    Gotcha.  Okay.  So I guess not to belabor

19  the point:

20              Between this and I guess the request,

21  which is Exhibit 5 --

22       A    Uh-huh.

23       Q    -- are those -- actually, sorry.  I guess

24  Exhibit 6 would be the more appropriate one.

25       A    Uh-huh.

1          Q     Are there any substantial -- are there

2     any differences between those two requests?

3          A     Exhibit 6 is date of application 6/16/15.

4     The applicant is Chris Shepherd.  In Exhibit 9, the date

5     of application is 4/18/16.  The applicant is James

6     Martin.  I'm looking for other differences.  The contact

7     information for CNY Pride is different.  The date of

8     assembly is different.  The expected number of

9     participants, expected maximum and minimum numbers, are

10    different.  Well, the maximum number is different, not

11    the minimum.

12          What is written on names of speakers is

13    different between the two years.  The 2015 document

14    requests a copy of communications be sent to me at my

15    NYCLU contact information.  2016 document does not.  On

16    page 2 of the document the name of applicant and the

17    contact information are different.

18          Q     Okay.  So I guess is the location of

19    assembly, is the language that's written in there, is

20    that substantially the same?

21          A     Which language do you refer to, sir?

22          Q     Yes.  I'm referring to the language

23    written here at location of assembly and the language

24    here at location of assembly (indicating).

25          A     It looks very similar to me.

1        Q    Okay.  So I guess would they essentially

2   -- is it your understanding that they're asking for the

3   same thing?

4        A    The language is very similar, so it seems

5   like it's asking -- it's a similar request.

6        Q    Okay.  Then second, with regard to the --

7   I guess this writing here and that writing there

8   (indicating).

9        A    Uh-huh.

10        Q    Are those the same as well?

11        A    There's more specificity in the 2015 as

12   far as exactly whether it's the south or the north side

13   of Kirkpatrick Street.

14        Q    Okay.  But other than that, they appear

15   to be --

16        A    The language is very similar.

17        Q    Okay.  And the same question with regard

18   to the designation there in the one on the bottom corner

19   of number 9?

20        A    The last couple of phrases is slightly

21   different, but it's essentially the same meaning.

22        Q    Okay.  Okay.

23        A    However, I will point out that there is

24   no indication of approval on this so it just seems to be

25   -- the 2016 document and the 2015 document just seem to

1    be a permit request.

2         Q    Right.  Right.  Okay.  And the last

3    document I'm going to give you.

4         A    Okay.

5              MR. MANGINI:  This one is going to

6              be 10.

7              MS. HARRINGTON:  Has that been

8              previously marked?

9              MR. LONG:  Yeah.

10             MR. MANGINI:  Sorry.

11             MR. LONG:  That's okay.  Thank you.

12             (Whereupon Exhibit No. 10 was marked for

13             identification, 5/2/17, EAB)

14        A    Let me take a sec to examine the

15   document.  I've looked at it.

16             <u>EXAMINATION BY MR. MANGINI:</u>

17        Q    Okay.  And so have you seen this document

18   before?

19        A    I don't remember seeing this precise

20   document.

21        Q    Okay.

22        A    Hold on.  No, I don't remember seeing

23   this precise document.

24        Q    Okay.  What's your understanding of --

25   or, actually, with regard to the comments there, what's

1    your understanding of what that -- what that means?

2          A    What it says is, "Per Sam White.  Per

3    court decision."

4          Q    Okay.  And what's your understanding of

5    what that essentially means?

6                MS. HARRINGTON:  Object to form.

7                MR. LONG:  Object to form.

8          A    I can't read Sam's mind.  I can tell you

9    that when I spoke to him on 6/13 he did indicate that

10   there -- the -- any kind of a buffer zone was prohibited

11   in the judge's order and that is also indicated in the

12   subsequent news reporting on Syracuse.com.

13         Q    Gotcha.  Okay.  Okay.  So is your

14   understanding of what I guess Exhibit 9 is requesting is

15   a -- is a buffer zone?

16               MR. LONG:  Object to form.

17         A    I think that what it's requesting is

18   exclusive use of sound amplification and exclusive use

19   of a location.  That's what it's requesting.

20         Q    Okay.  Okay.  All right.

21         A    The buffer zone was never in my language.

22         Q    Okay.  Where did you hear that language?

23               MR. LONG:  Object to form.

24         A    It's here in a Syracuse Post Standard

25   article.

1      Q    Okay.

2      A    Entitled "Judge Nixes Buffer Zone Keeping

3  Antigay Protester Away from CNY Pride Fest."

4      Q    Right.  Okay.

5           MR. LONG:  It's 4 o'clock.  I

6           apologize.  The ringing was that.

7           THE WITNESS:  That's fine.  I just

8           have to be at ML King at 4:30.  Thank

9           you.

10          MR. LONG:  You're welcome.

11          <u>EXAMINATION BY MR. MANGINI:</u>

12     Q    I'm almost done.  I guess my only other

13  question is:  Do you recall seeing Mr. Deferio at the --

14  well, actually, I guess, two more questions.

15          First off, do you remember seeing

16  Mr. Deferio at the 2016 CNY Pride festival?

17     A    I don't have a specific recollection of

18  being there, but I believe he was there.

19     Q    Okay.  Do you remember any incidents

20  occurring regard -- with him?

21          MS. HARRINGTON:  Object to form.

22     A    In 2016 I didn't witness any incidents.

23  I don't recall being told about any incidents.

24     Q    Okay.  Then -- okay.  Also, with regard

25  to 2017, have -- has CNY Pride submitted a permit

1    application for 2017?

2              A     I do not know.

3              Q     Okay.  Do you know if they plan to?

4              A     I assume so.  If they want to hold the

5    event, they have to.

6                        MR. MANGINI:  Gotcha.  Okay.  Okay.

7              That's all the questions I have.

8                        THE WITNESS:  Okay.

9                        MS. HARRINGTON:  No questions from

10             us.

11                       MR. LONG:  No questions.

12                       MS. HARRINGTON:  Thank you very

13             much.

14             (Whereupon the deposition concluded at

15             4:01 p.m.)

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3

4              I, MARY E. BURNHAM, Court Reporter, and

5    Notary Public in and for the State of New York, DO

6    HEREBY CERTIFY that I attended the foregoing

7    proceedings, took stenographic notes of the same, that

8    the foregoing is a true and correct copy of same and the

9    whole.

10

11

12

13

14

15

16

17

18                              _____

19                              ERICA BEDFORD
                                Court Reporter
20

21

22

23   Dated:  May 18, 2017

24

25

SIGNATURE PAGE OF BARRIE GEWANTER

Page        Line              Should be Changed to Read

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

       I, BARRIE GEWANTER, hereby certify that I have read
the transcript of my testimony taken under oath and that
the transcript is a true and complete record of my
testimony, and that the answers on the record as given
by me are true and correct.

                              _____
                              BARRIE GEWANTER

       Sworn to before me
       this_____ day of _____, 2017

       _____

       Notary Public

**MR. LONG: [33]**   13/4
13/12 15/6 15/17 23/14
23/20 23/23 24/2 24/6
29/21 30/1 30/9 30/15
34/5 39/9 46/12 49/20
50/13 53/1 53/4 56/10
57/4 57/13 58/16 58/18
62/8 62/10 63/6 63/15
63/22 64/4 64/9 65/10
**MR. MANGINI: [27]**   15/8
15/13 15/19 16/1 21/24
27/25 28/4 35/10 35/15
35/18 36/6 40/7 40/12
42/6 42/11 44/2 45/17
54/12 54/19 54/24 55/4
58/10 58/19 58/23 62/4
62/9 65/5
**MS. HARRINGTON: [45]**
13/5 13/18 13/11 15/20
23/25 24/16 25/18 27/5
27/14 28/2 29/20 30/8
30/16 32/10 35/13 35/16
36/3 38/16 42/1 42/9
43/21 44/9 44/15 44/19
45/19 47/4 47/25 49/19
50/12 50/16 51/6 52/3
54/25 58/15 58/17 58/21
62/6 63/5 64/20 65/8
65/11
**THE WITNESS: [21]**   13/6
13/9 15/11 15/22 16/2
24/4 36/1 36/4 40/10
44/12 44/16 44/20 45/21
52/4 52/22 53/2 53/5 53/8
57/3 64/6 65/7

**'**

**'14 [1]**   56/17
**'15 [1]**   56/17
**'16 [1]**   56/17
**'80s [1]**   6/13

**–**

-----------------------
------------------x [2]
1/2 1/12

**0**

**0361 [1]**   1/5

**1**

**10 [4]**   3/23 34/19 62/6
62/12
**107 [1]**   1/20
**13 [3]**   51/17 53/19 63/9
**13202 [1]**   1/24
**14 [2]**   51/18 54/7
**15 [6]**   3/4 3/4 21/19
32/20 53/7 60/3
**16 [4]**   52/10 53/24 54/3
60/5
**16th [1]**   16/1
**17 [10]**   16/6 22/5 28/7
35/21 40/15 42/14 44/7
54/24 59/2 62/13
**18 [1]**   66/23
**1980s [2]**   5/23 6/5

**2**

**20 [5]**   32/20 41/1 42/22
51/15 54/14
**2006 [1]**   15/3
**2008 [1]**   9/12

**2010 [1]**   15/3
**2012 [4]**   17/4 17/12 19/24
26/11
**2013 [6]**   9/12 15/2 22/10
22/25 24/24 56/17
**2014 [12]**   16/1 16/15
16/19 19/11 25/18 26/4
26/5 26/9 26/11 27/2 27/5
35/9
**2015 [18]**   3/10 26/11 27/3
31/7 34/7 35/9 35/25 37/3
43/14 45/11 47/14 47/19
47/23 48/12 50/9 60/13
61/11 61/25
**2016 [12]**   26/11 35/10
50/9 55/4 55/17 56/19
58/5 59/12 60/15 61/25
64/16 64/22
**2017 [5]**   1/13 64/25 65/1
66/23 67/23
**20th [1]**   55/4
**21 [2]**   3/5 3/5
**233 [1]**   1/23
**27 [2]**   3/7 3/7
**2:27 [1]**   1/14

**3**

**300 [1]**   1/23
**34 [2]**   3/9 3/9
**38 [2]**   3/11 3/11
**38117 [1]**   1/20
**3:30 [1]**   44/20

**4**

**4/18/16 [1]**   60/5
**40 [6]**   3/14 3/14 42/24
46/7 55/13 55/23
**42 [2]**   3/16 3/16
**4:01 p.m [1]**   65/15
**4:30 [3]**   36/3 53/4 64/8

**5**

**5/2/17 [10]**   16/6 22/5
28/7 35/21 40/15 42/14
44/7 54/24 59/2 62/13
**5/20 [2]**   51/15 54/14
**5/20/16 [1]**   53/24
**52 [2]**   3/19 3/19
**56 [1]**   3/21
**57 [1]**   3/21
**59 [2]**   3/23 3/23
**5:16-CV-0361 [1]**   1/5

**6**

**6/13 [3]**   51/17 53/19 63/9
**6/13/16 [2]**   52/10 54/3
**6/14 [2]**   51/18 54/7
**6/14/2016 [1]**   55/17
**6/16/15 [1]**   60/3
**60 [1]**   4/8
**699 [1]**   1/19

**7**

**750 [1]**   1/15

**A**

**a.m [1]**   34/19
**ability [2]**   31/13 40/3
**able [5]**   14/3 14/4 19/18
31/17 33/12
**about [37]**   5/18 7/3 9/15
12/18 13/16 17/12 17/13
17/15 18/24 19/2 19/13
19/14 19/24 20/1 22/23
25/12 25/22 26/8 26/16
26/17 26/17 26/18 26/20

26/25 28/19 30/11 30/12
31/2 32/4 49/10 50/19
50/25 54/4 54/10 54/19
56/21 64/23
**absolutely [3]**   27/19
52/12 53/2
**access [5]**   31/8 41/9
41/21 46/10 46/18
**across [3]**   41/6 49/19
49/25
**action [3]**   1/5 7/15 47/9
**activities [6]**   7/23 26/9
30/5 41/10 41/23 41/25
**actually [15]**   16/24 17/16
19/23 21/2 21/24 27/22
28/17 37/9 41/16 47/2
54/16 57/24 59/23 62/25
64/14
**add [1]**   39/4
**addendum [1]**   24/25
**adds [1]**   29/16
**adequate [1]**   32/3
**adjacent [7]**   18/25 19/17
38/11 41/1 44/2 48/6
48/24
**advising [1]**   22/22
**advocate [2]**   5/20 5/22
**afar [1]**   20/13
**affect [1]**   55/13
**after [4]**   18/19 27/2 50/9
54/10
**again [1]**   19/22
**against [2]**   5/7 55/9
**agencies [1]**   7/15
**ago [3]**   12/1 27/17 27/19
**agreed [6]**   4/3 4/6 4/10
4/13 4/16 34/2
**agreement [1]**   34/4
**ahead [4]**   16/22 25/15
45/15 54/21
**all [30]**   4/10 4/14 4/16
4/17 10/3 21/9 22/22 23/5
23/18 25/14 29/7 34/2
36/21 37/9 40/20 42/7
47/17 50/8 52/15 53/6
54/13 54/25 56/3 56/7
56/14 58/5 58/11 58/25
63/20 65/7
**allow [2]**   27/20 34/8
**allowing [1]**   46/9
**almost [2]**   7/10 64/12
**along [1]**   38/6
**already [6]**   15/17 15/18
15/21 29/3 57/16 57/22
**also [29]**   6/8 7/22 8/4
8/5 8/8 8/24 9/24 29/10
29/12 29/16 31/18 31/24
32/2 32/7 33/15 35/7 37/6
40/3 41/4 41/8 44/20
50/20 50/22 57/6 57/8
57/15 57/17 63/11 64/24
**although [3]**   29/17 37/20
47/22
**always [1]**   34/11
**am [2]**   20/2 27/9
**AMANDA [1]**   1/25
**Amendment [11]**   30/5 32/7
33/16 33/23 37/20 39/12
39/14 39/17 41/10 41/22
41/25
**among [1]**   14/10
**amplification [12]**   31/17
31/18 31/19 38/6 38/11
38/22 39/1 41/5 46/10
46/15 46/17 63/18
**and/or [1]**   56/16

# A

**annual [1]**   9/16
**another [10]**   10/20 13/17 22/1 25/21 36/23 42/8 44/4 47/17 49/9 58/12
**answer [1]**   13/10
**answers [1]**   67/19
**Antigay [1]**   64/3
**any [41]**   10/23 14/16 16/19 19/13 19/21 20/8 21/5 22/25 23/17 24/9 24/22 25/12 25/17 27/4 27/9 27/14 27/16 30/7 30/14 30/15 31/8 32/2 32/8 34/8 34/24 35/2 43/10 43/12 44/19 47/6 49/1 49/4 56/8 56/14 58/8 60/1 60/2 63/10 64/19 64/22 64/23
**anybody [2]**   10/6 33/14
**anybody's [1]**   20/6
**anyone [3]**   26/8 49/6 50/11
**anything [5]**   10/23 19/5 20/24 34/14 44/1
**apologize [3]**   23/24 24/7 64/6
**app [1]**   55/19
**appear [1]**   61/14
**appears [2]**   34/15 55/8
**applicant [5]**   33/12 46/5 60/4 60/5 60/16
**application [8]**   3/10 37/3 43/23 43/24 43/25 60/3 60/5 65/1
**applications [3]**   57/8 57/9 58/6
**appointment [1]**   34/19
**appreciate [1]**   52/25
**approaching [1]**   48/8
**appropriate [3]**   4/19 52/6 59/24
**approval [4]**   11/19 39/1 45/5 61/24
**approvals [1]**   23/17
**approved [6]**   24/10 37/4 46/3 46/5 55/16 56/2
**approximately [1]**   14/24
**are [37]**   4/11 8/22 9/19 9/21 9/21 11/3 11/15 14/3 14/4 15/16 18/2 18/2 18/3 20/4 25/15 25/17 27/21 29/5 30/3 31/13 35/4 35/12 36/12 36/12 43/21 46/2 52/11 55/2 57/1 57/6 59/23 60/1 60/1 60/9 60/17 61/10 67/20
**area [11]**   9/19 9/24 14/5 14/7 14/19 14/21 19/3 20/5 38/12 46/6 46/7
**areas [1]**   14/22
**around [1]**   14/19
**arrange [4]**   11/2 11/3 13/19 50/20
**article [2]**   57/19 63/25
**as [40]**   1/6 1/8 1/9 4/11 4/14 5/1 5/2 6/14 12/19 12/19 12/22 12/22 13/16 16/11 17/4 17/18 26/22 26/22 28/4 29/7 35/9 35/12 35/18 42/3 43/21 44/5 44/12 46/7 46/7 49/8 52/3 55/16 58/6 58/6 58/19 58/19 61/10 61/11 61/12 67/19
**ask [3]**   41/16 42/19 49/25

# B

**asked [2]**   14/18 49/18
**asking [4]**   25/7 31/20 61/2 61/5
**assembly [13]**   3/9 8/22 11/24 37/2 37/6 37/7 38/9 40/22 43/25 60/8 60/19 60/23 60/24
**assist [3]**   8/17 12/15 58/9
**assistance [1]**   37/20
**assisted [5]**   7/1 7/22 7/23 12/11 58/7
**associating [1]**   42/5
**assume [4]**   22/19 32/1 49/3 65/4
**assuming [1]**   18/24
**asterisk [2]**   41/14 41/20
**at [87]**
**attempt [1]**   34/15
**attended [1]**   66/6
**attending [1]**   49/13
**attends [1]**   10/5
**attention [1]**   18/9
**attorney [1]**   5/5
**attorneys [2]**   4/4 52/2
**audience [3]**   32/4 32/17 50/1
**aware [4]**   8/24 20/2 25/15 25/17
**Away [1]**   64/3

# B

**B A R R I E [1]**   5/1
**B-A-R-R-I-E [1]**   5/11
**back [11]**   5/23 6/4 6/13 11/20 19/11 27/24 31/7 33/3 43/19 44/23 50/6
**backing [2]**   33/25 34/18
**balance [3]**   32/10 33/16 47/9
**balanced [1]**   32/8
**balancing [1]**   32/4
**ballpark [3]**   12/4 21/14 33/1
**banner [2]**   26/24 48/7
**barricades [1]**   14/19
**BARRIE [8]**   1/13 2/2 5/11 44/10 55/3 67/1 67/18 67/21
**based [7]**   17/20 31/10 31/19 32/25 47/24 53/13 55/21
**basically [1]**   39/21
**basis [1]**   50/3
**be [53]**   4/5 4/9 4/14 4/18 4/20 11/24 12/19 12/20 15/16 19/17 21/18 23/12 23/20 24/16 25/22 27/19 30/6 31/22 32/8 32/10 34/15 37/18 38/25 39/1 40/9 42/5 44/13 46/25 47/3 48/16 48/20 48/23 48/23 50/1 52/6 53/3 53/24 54/4 54/8 54/22 55/8 56/1 56/19 57/19 58/15 59/24 60/14 61/15 61/24 62/1 62/6 64/8 67/2
**became [1]**   12/2
**because [15]**   13/21 18/13 21/21 28/15 30/3 31/8 32/5 33/22 34/7 35/4 37/19 47/17 51/20 52/10 56/22
**Bedford [2]**   1/16 66/19
**been [26]**   5/21 7/20 8/13 9/8 10/10 10/12 10/15

10/19 11/22 12/8 13/16 15/22 20/10 20/11 21/7 24/9 25/25 31/16 43/16 47/9 47/11 47/19 49/5 53/19 56/21 62/7
**before [13]**   1/16 5/5 9/11 9/12 10/19 15/1 18/19 35/18 39/14 45/8 50/22 62/18 67/22
**beginning [1]**   18/15
**behalf [2]**   36/16 36/20
**behind [1]**   30/20
**being [10]**   5/2 9/5 31/17 32/17 37/21 37/21 38/3 49/18 64/18 64/23
**belabor [1]**   59/18
**believe [9]**   15/20 28/5 32/9 34/23 35/19 47/19 47/21 57/18 64/18
**besides [1]**   20/3
**best [1]**   53/18
**Beth [1]**   15/25
**between [11]**   4/4 13/22 15/3 43/19 43/20 49/12 53/25 56/15 59/20 60/2 60/13
**beyond [4]**   17/8 20/6 39/7 46/22
**bible [1]**   27/1
**big [1]**   57/9
**bit [5]**   9/15 33/3 34/1 34/18 43/19
**black [1]**   45/2
**board [3]**   8/14 29/14 58/8
**booth [3]**   8/6 8/7 58/9
**booths [1]**   9/21
**bordering [1]**   25/5
**Boston [1]**   39/20
**both [2]**   57/4 57/12
**bottom [1]**   61/18
**bought [1]**   8/15
**boundary [2]**   14/5 14/7
**briefly [1]**   52/18
**bringing [2]**   6/13 30/5
**brought [1]**   58/1
**Bruce [1]**   29/13
**buffer [4]**   63/10 63/15 63/21 64/2
**BURNHAM [1]**   66/4
**bus [1]**   21/2
**busy [1]**   27/18
**but [39]**   9/12 10/20 11/15 13/10 15/3 17/8 19/12 20/5 20/13 20/19 21/4 21/16 21/20 22/19 23/1 28/15 32/7 32/16 36/20 36/20 39/7 43/17 43/25 45/10 46/21 47/18 48/17 49/3 50/1 51/8 52/13 56/20 57/15 57/19 58/8 59/6 61/14 61/21 64/18

# C

**call [2]**   53/19 53/21
**called [3]**   5/1 6/24 39/20
**can [27]**   7/10 8/20 10/14 13/9 15/10 19/4 21/10 21/18 22/6 26/22 27/24 27/24 28/1 30/21 31/7 34/9 35/12 35/14 40/9 44/11 45/2 45/16 45/20 46/14 48/16 58/13 63/8
**can't [12]**   11/23 19/5 19/11 19/23 20/24 21/16 23/10 24/13 38/19 50/5 56/22 63/8

**C**

cannot [1]   38/21
capacity [4]   1/6 1/8 1/9 9/9
captain [2]   1/8 29/18
Carter [1]   29/13
case [5]   5/7 37/3 39/19 50/19 54/6
cases [3]   39/14 39/15 39/18
Catholic [1]   20/4
caused [1]   14/15
caution [1]   14/18
CC [3]   16/11 29/16 29/25
CC'd [2]   29/10 29/19
celebrate [2]   9/17 10/2
celebration [4]   17/14 17/22 17/24 42/4
Center [5]   1/15 1/19 5/6 5/14 7/17
central [2]   6/16 46/4
centralized [2]   12/2 24/20
certain [3]   8/25 39/13 51/20
certainly [2]   43/7 56/6
certify [2]   66/6 67/18
chalk [1]   8/2
chance [1]   35/22
change [1]   43/11
changed [5]   11/13 14/2 43/6 43/7 67/2
Chapter [1]   6/17
checking [1]   53/13
checks [1]   11/18
Chief [1]   1/6
children [1]   17/25
chose [1]   20/20
Chris [5]   15/24 17/6 29/12 41/17 60/4
Christi [2]   7/13 7/14
church [1]   20/4
city [27]   1/6 1/7 1/8 1/10 1/22 1/23 5/8 7/1 8/23 11/18 13/2 13/4 14/9 15/5 20/5 24/9 24/23 27/4 32/13 32/25 38/18 38/22 50/11 55/9 56/9 56/15 56/21
City's [1]   11/9
civil [11]   1/5 4/15 4/18 4/19 5/19 5/21 6/8 6/15 7/2 7/4 7/4
clarify [3]   27/13 32/19 36/22
clear [4]   14/20 33/11 37/6 49/15
clearances [1]   11/3
Clinton [1]   10/20
close [2]   17/17 26/22
closer [2]   21/19 21/20
clue [1]   9/2
CNY [35]   7/14 7/17 7/20 8/10 9/8 9/15 10/9 12/9 12/16 13/14 13/25 15/5 16/14 22/22 26/8 26/8 29/13 30/12 36/23 37/22 40/23 40/23 43/6 49/6 50/11 50/20 50/23 56/16 56/16 59/11 60/7 64/3 64/16 64/25
collaborate [2]   15/6 41/17
colleges [1]   6/12
come [4]   14/10 24/25 27/24 38/23

comes [1]   30/4
coming [5]   17/16 26/23 30/24 48/8 52/20
command [2]   29/10 31/11
commencing [1]   1/14
comment [1]   17/5
comments [3]   46/1 46/2 62/25
communicate [2]   11/4 47/10
communicated [2]   11/20 27/8
communicating [3]   11/1 11/1 11/2
communication [6]   13/20 13/21 24/21 30/8 34/13 34/16
communications [7]   27/19 30/15 37/18 45/4 56/9 56/12 60/14
community [7]   6/12 7/6 7/8 9/18 10/3 42/4 54/10
complaint [1]   6/25
complete [1]   67/19
complicated [1]   27/18
complimentary [1]   20/20
concern [8]   17/13 17/15 17/19 31/16 31/17 32/2 32/4 32/5
concerns [7]   7/3 7/4 31/3 31/4 31/5 50/25 54/10
concluded [1]   65/14
conditionally [1]   46/5
conditions [3]   11/19 38/1 55/15
conduct [1]   26/20
confrontation [2]   14/16 31/25
connected [1]   46/18
conservative [2]   20/4 56/20
considered [2]   14/12 56/20
contact [5]   49/14 50/18 60/6 60/15 60/17
content [1]   45/10
context [4]   30/20 30/21 34/5 47/7
control [3]   39/22 40/4 46/6
controlling [1]   4/20
conversation [7]   25/12 43/10 43/13 43/17 51/17 54/8 54/14
conversations [6]   13/2 13/3 13/15 15/8 50/11 50/16
coordinator [1]   8/3
copies [5]   44/11 51/18 51/23 52/5 58/4
copy [9]   35/15 45/11 56/25 57/4 57/16 57/17 59/7 60/14 66/8
corner [4]   21/1 21/3 48/6 61/18
corporation [4]   1/22 29/12 29/23 30/4
correct [3]   13/13 66/8 67/20
correspondence [3]   27/4 27/17 56/14
correspondences [1]   27/14
could [26]   6/22 8/16 9/14 10/13 11/11 13/2 14/17 18/8 20/21 20/21 29/1 29/5 33/14 43/18 45/25 45/25 46/16 46/18 47/2

50/1 52/17 52/24 53/13 53/22 56/1 56/1
Council [1]   7/13
counsel [3]   1/22 29/12 30/4
counsel's [1]   29/23
counter [3]   31/15 32/2 33/20
County [2]   6/1 8/5
couple [6]   7/11 10/15 12/12 20/15 47/18 61/20
course [1]   44/16
court [9]   1/1 1/16 39/15 39/21 40/1 40/2 63/3 66/4 66/19
cream [1]   9/20
created [1]   31/14
critical [2]   17/13 17/22
crosshatching [1]   57/9
crucial [1]   31/13
current [1]   11/17
currently [2]   6/1 10/14
cut [1]   52/14
CV [1]   1/5

**D**

date [4]   13/20 60/3 60/4 60/7
dated [5]   15/25 54/3 54/7 55/17 66/23
day [5]   33/7 33/13 33/15 33/19 67/23
days [1]   4/8
deal [1]   31/14
decide [1]   29/25
decision [5]   39/21 50/19 54/5 57/17 63/3
deemed [1]   4/18
Defendants [2]   1/11 1/22
DEFERIO [16]   1/3 5/7 20/3 20/9 20/23 25/18 26/4 26/8 26/16 47/15 49/7 49/13 49/18 55/10 64/13 64/16
Deferio's [1]   54/6
defined [3]   14/19 40/4 40/5
definite [1]   35/3
definitely [2]   15/1 51/23
demonstrations [1]   8/25
department [9]   1/7 1/8 1/10 11/25 37/2 40/22 45/4 46/3 54/2
departments [1]   11/18
depend [2]   23/22 24/8
depended [1]   32/12
depends [1]   8/18
deployed [1]   31/12
deposition [5]   1/13 4/14 15/19 52/21 65/14
describe [1]   11/11
described [1]   42/3
description [1]   49/18
designation [1]   61/18
desire [2]   48/20 48/23
desired [1]   48/16
detail [2]   8/17 31/12
did [31]   6/14 6/18 6/18 6/19 12/7 14/15 14/17 16/19 25/22 27/3 29/3 29/25 31/1 31/2 31/5 32/9 32/17 33/9 34/4 34/23 39/9 41/17 48/2 49/25 51/1 56/19 58/9 58/9 58/9 63/9 63/22
didn't [8]   16/17 19/12

**D**

**didn't...** [6]  24/4 24/5 27/8 49/2 57/19 64/22
**differed** [1]  24/18
**difference** [4]  43/2 43/4 43/19 43/20
**differences** [2]  60/2 60/6
**different** [11]  6/11 6/20 9/6 10/10 60/7 60/8 60/10 60/10 60/13 60/17 61/21
**direct** [2]  18/8 20/10
**directly** [5]  11/25 19/19 40/25 41/6 41/11
**Director** [1]  6/16
**Disabled** [1]  7/14
**discrete** [1]  26/11
**discuss** [4]  28/22 30/25 31/2 50/25
**discussed** [3]  35/8 53/15 53/25
**discussion** [9]  14/23 14/25 16/4 22/3 32/24 33/2 36/1 45/23 54/4
**discussions** [2]  15/2 39/16
**dispersal** [1]  38/8
**display** [1]  8/7
**distress** [1]  14/15
**DISTRICT** [2]  1/1 1/1
**diversity** [3]  9/17 10/3 42/4
**DIVISION** [1]  1/2
**do** [89]
**document** [35]  16/8 22/6 22/12 22/13 22/19 22/20 36/9 36/25 37/1 40/12 40/16 40/18 40/25 42/8 42/17 44/18 44/24 45/8 45/10 46/21 54/7 55/24 58/13 59/5 59/9 60/13 60/15 60/16 61/25 61/25 62/3 62/15 62/17 62/20 62/23
**documents** [19]  8/22 16/20 22/25 27/9 27/20 31/9 34/8 35/2 35/4 43/13 51/9 51/11 51/21 51/23 51/24 51/25 52/9 53/14 57/7
**does** [9]  10/21 15/5 18/6 43/24 43/25 43/25 44/2 48/19 60/15
**doesn't** [2]  18/13 37/4
**dogs** [1]  9/14
**doing** [2]  32/25 47/25
**don't** [55]  9/11 10/16 12/1 12/20 15/2 16/11 16/18 17/5 17/6 19/10 19/24 21/5 21/12 21/13 21/17 21/21 22/20 22/24 22/25 23/4 23/17 24/24 25/20 26/10 26/13 27/16 28/8 31/8 34/8 35/2 35/7 36/5 43/3 43/7 43/8 45/9 46/22 47/16 47/22 48/2 48/12 48/17 49/3 49/3 49/22 49/24 50/7 51/8 57/16 58/8 59/6 62/19 62/22 64/17 64/23
**donation** [1]  8/15
**done** [6]  13/19 16/25 64/12
**down** [5]  16/22 37/10 41/14 41/20 45/16
**downstairs** [1]  21/3
**downtown** [2]  10/20 21/1
**Doyle** [2]  29/11 29/19

**draft** [1]  28/23
**drafts** [1]  28/23
**drawing** [1]  26/25
**dress** [1]  26/19
**drinks** [1]  9/20
**driveway** [9]  18/25 19/17 31/22 40/24 41/2 44/1 48/6 48/21 48/24
**driving** [1]  8/8
**dues** [2]  8/14 58/8
**duly** [1]  5/2
**during** [11]  21/15 25/18 26/9 27/14 38/12 39/23 40/5 41/7 41/9 41/21 50/25

**E**

**e-mail** [11]  15/24 24/25 28/19 28/20 29/17 30/20 30/23 31/8 31/11 37/10 37/13
**e-mails** [3]  15/8 56/19 57/1
**EAB** [9]  16/6 22/5 28/7 35/21 40/15 42/14 44/7 59/2 62/13
**each** [2]  8/2 53/23
**East** [1]  1/23
**educational** [1]  7/5
**effect** [3]  23/13 23/18 23/20
**effectively** [1]  31/14
**either** [6]  14/18 18/18 31/21 41/2 46/8 49/17
**elaborate** [2]  13/3 47/3
**Elmira** [1]  7/14
**else** [1]  33/14
**encountered** [1]  15/17
**encourage** [2]  34/11 34/13
**end** [3]  18/14 18/21 38/7
**ending** [1]  12/23
**engage** [1]  20/20
**ensure** [2]  14/3 33/11
**entail** [2]  6/19 10/25
**entering** [1]  19/16
**entities** [1]  7/16
**Entitled** [1]  64/2
**entrance** [1]  18/22
**entry** [1]  46/6
**equate** [1]  32/17
**Erica** [2]  1/16 66/19
**Erica Bedford** [1]  1/16
**escalate** [1]  14/17
**especially** [1]  17/24
**ESQ** [3]  1/21 1/24 1/25
**essentially** [3]  61/1 61/21 63/5
**estimate** [2]  12/4 21/14
**event** [13]  7/21 11/7 11/7 12/13 21/16 33/14 34/12 46/18 47/1 47/12 50/7 50/20 65/5
**events** [7]  20/22 20/25 28/21 29/8 46/3 51/1 54/10
**Everson** [1]  10/17
**everybody** [2]  8/4 33/23
**everyone** [3]  33/7 33/19 33/19
**everything** [1]  58/1
**exact** [1]  59/9
**exactly** [3]  36/24 38/15 61/12
**EXAMINATION** [1]  2/2
**examine** [2]  15/13 62/14
**examples** [2]  6/22 7/11

**Excellent** [1]  57/13
**except** [2]  4/11 23/18
**exchanged** [1]  49/12
**exclusive** [14]  31/19 38/4 38/5 38/10 38/16 39/9 41/4 41/8 41/20 46/6 46/9 46/15 63/18 63/18
**Executive** [1]  6/16
**exhibit** [46]  3/4 3/5 3/7 3/9 3/11 3/14 3/16 3/19 3/21 3/23 15/11 15/18 16/5 22/1 22/4 27/23 28/6 35/12 35/15 35/20 36/10 40/9 40/14 42/9 42/11 42/13 42/21 42/24 43/23 43/24 43/24 44/2 44/4 44/6 54/17 54/22 54/23 55/2 55/16 59/1 59/21 59/24 60/3 60/4 62/12 63/14
**exhibits** [3]  15/16 43/20 44/12
**expected** [2]  60/8 60/9
**experience** [1]  17/21
**experienced** [1]  39/12
**explain** [2]  20/22 32/6
**explicit** [1]  31/22
**express** [1]  14/4
**EXPRESSION** [3]  1/19 5/6 5/15

**F**

**facilitate** [2]  14/23 34/13
**facilitating** [1]  34/15
**facts** [1]  47/7
**fair** [2]  21/23 21/23
**fairly** [1]  31/14
**familiar** [8]  8/22 21/7 21/8 28/15 36/11 36/12 40/19 59/6
**familiarize** [1]  39/16 42/15
**family** [1]  9/24
**far** [5]  6/4 12/22 15/15 58/19 61/12
**Fayette** [1]  21/4
**FEDERAL** [4]  4/1 4/15 4/17 4/19
**feet** [6]  32/20 41/1 42/22 42/25 46/7 55/23
**Fest** [1]  64/3
**festival** [49]  8/6 9/15 10/1 10/22 10/24 12/10 13/15 15/6 16/15 16/18 17/15 18/15 19/1 19/16 25/18 26/4 26/6 26/9 27/3 27/3 27/5 28/25 30/12 31/22 37/7 41/9 41/9 41/11 41/21 41/22 41/23 41/24 41/25 42/3 42/6 46/7 46/10 46/19 47/4 47/15 47/25 48/9 48/9 49/7 50/9 50/10 50/12 56/16 64/16
**festivals** [4]  10/5 11/9 26/16 26/20
**figure** [3]  7/23 33/1 47/9
**figured** [1]  52/5
**figuring** [1]  12/11
**filing** [1]  4/9
**fill** [2]  7/24 11/15
**filled** [3]  11/24 36/16 36/17
**filling** [1]  12/18
**find** [1]  56/19

**F**

**fine [2]** 53/10 64/7
**first [23]** 5/11 12/14
12/15 21/10 22/11 30/4
30/23 32/7 33/16 33/23
34/18 37/20 38/23 38/24
39/1 39/12 39/14 39/17
41/10 41/16 41/22 41/25
64/15
**flag [1]** 28/24
**flashpoints [1]** 14/16
**focus [1]** 17/15
**follows [1]** 5/2
**foot [1]** 1/6
**football [1]** 6/9
**foregoing [2]** 66/6 66/8
**forgot [1]** 58/25
**form [44]** 4/11 13/5 13/6
15/7 22/13 22/14 23/3
23/16 23/25 24/15 24/17
25/13 25/19 27/6 27/15
29/21 29/22 30/2 30/9
30/10 30/16 30/17 32/11
34/6 38/17 39/10 41/12
42/2 43/22 46/13 47/5
48/1 49/20 49/21 50/13
50/14 50/17 51/7 56/11
63/6 63/7 63/16 63/23
64/21
**former [1]** 42/10
**forms [3]** 9/2 11/15 12/19
**found [2]** 57/7 57/8
**FOWLER [1]** 1/6
**FRANK [1]** 1/6
**freely [1]** 19/18
**friction [1]** 31/25
**front [1]** 14/9
**functions [1]** 12/2
**further [6]** 4/6 4/10 4/13
4/16 38/9 39/16

**G**

**G E W A N T E R [1]** 5/1
**G-E-W-A-N-T-E-R [1]** 5/12
**gather [2]** 14/4 14/20
**gathering [4]** 9/16 12/24
14/11 42/5
**gatherings [1]** 26/1
**gave [4]** 7/5 33/11 55/16
58/14
**general [3]** 17/13 26/15
49/10
**generally [1]** 48/19
**get [9]** 8/4 11/2 11/4
12/14 14/11 16/16 38/25
39/2 52/24
**getting [3]** 12/9 17/16
17/22
**GEWANTER [10]** 1/13 2/2
5/4 5/12 22/2 28/2 55/3
67/1 67/18 67/21
**gist [1]** 39/13
**give [10]** 6/22 7/10 8/16
21/16 35/3 35/22 52/2
58/12 58/25 62/3
**given [3]** 23/17 47/6
67/19
**go [14]** 6/4 6/5 11/6
11/16 16/22 16/22 43/19
45/15 45/18 45/20 46/14
49/19 49/25 54/21
**goes [1]** 13/11
**going [13]** 8/3 13/16
14/20 15/16 21/25 23/15
33/3 50/6 52/18 54/18

56/4 62/3 62/5
**good [1]** 56/5
**got [50]** 5/13 7/19 7/19
8/9 9/7 9/7 10/4 10/4
10/21 10/21 11/8 11/21
17/8 18/8 22/15 23/7 23/7
23/12 25/14 29/15 29/19
33/17 33/25 34/17 35/13
36/3 37/15 37/24 37/24
39/3 39/6 39/20 40/7
41/13 43/15 43/18 44/4
45/11 47/14 49/14 50/18
50/23 52/1 52/17 52/17
53/20 54/12 56/3 56/3
58/4
**Gotcha [26]** 9/25 12/4
13/24 16/12 16/21 18/17
19/9 22/21 24/12 25/22
26/3 27/22 28/18 29/1
36/24 36/24 46/24 48/13
49/5 50/8 52/22 56/24
59/8 59/18 63/13 65/6
**granted [2]** 23/19 46/6
**great [1]** 44/13
**group [4]** 8/2 10/23 20/4
39/19
**groups [3]** 7/6 7/9 50/24
**guess [26]** 10/12 20/21
27/13 29/4 29/4 29/6
30/19 30/22 34/17 35/6
39/8 40/10 43/19 53/12
53/15 55/19 58/13 59/18
59/20 59/23 60/18 61/1
61/7 63/14 64/12 64/14
**guided [1]** 30/3

**H**

**had [12]** 7/2 11/10 12/12
13/4 14/20 30/7 30/7
33/10 33/12 47/11 57/6
57/9
**half [1]** 52/11
**hall [3]** 1/23 14/9 20/5
**hand [1]** 35/14
**handing [1]** 51/25
**handwriting [1]** 36/14
**happen [4]** 19/12 22/15
23/8 27/11
**happened [4]** 13/21 17/4
25/20 50/23
**Harbor [7]** 10/15 18/22
18/25 25/6 40/24 46/7
48/22
**hard [3]** 9/10 18/13 18/16
**HARRINGTON [1]** 1/25
**has [13]** 10/12 11/13
11/21 13/25 14/2 19/4
26/23 31/25 37/10 38/18
56/5 62/7 64/25
**have [127]**
**having [11]** 19/16 19/18
27/14 31/4 43/9 45/7
48/25 49/5 50/10 50/11
58/23
**he [31]** 17/3 17/9 18/20
19/2 19/4 19/7 19/10
20/17 22/9 23/8 23/11
25/7 26/22 26/22 26/23
27/23 29/23 48/2 48/5
48/10 48/12 48/16 48/17
48/20 48/22 48/23 49/2
49/25 59/11 63/9 64/18
**he's [10]** 17/12 18/18
18/24 19/6 19/21 19/25
20/10 20/15 26/24 47/19
**hear [1]** 63/22

**hearing [1]** 26/7
**held [10]** 1/13 10/9 10/12
10/15 10/17 10/19 16/4
22/3 36/1 45/23
**help [3]** 12/21 13/19
16/17
**helped [1]** 14/22
**helping [4]** 7/23 16/15
50/20 59/13
**her [2]** 54/19 58/23
**here [19]** 16/22 17/3 18/9
25/2 31/10 32/20 37/10
38/3 38/3 38/4 40/25
41/14 42/21 55/7 55/18
60/23 60/24 61/7 63/24
**hereby [3]** 4/3 66/6 67/18
**Hibernians [1]** 39/20
**him [18]** 20/25 21/1 21/7
21/8 21/11 29/25 30/5
30/8 36/20 44/11 47/21
47/25 48/25 49/3 49/25
59/14 63/9 64/20
**himself [1]** 48/5
**his [19]** 1/6 1/8 1/9 5/7
17/6 17/8 18/23 19/8
19/11 20/11 23/10 23/11
26/9 26/19 26/19 26/20
26/24 26/25 36/20
**history [2]** 20/8 20/10
**hold [5]** 10/22 44/8 45/17
62/22 65/4
**Holtman [1]** 29/11
**honestly [3]** 24/18 25/25
46/25
**Hopefully [1]** 36/5
**hot [1]** 9/19
**hours [1]** 41/7
**how [16]** 5/21 6/4 7/24
8/17 9/7 11/9 11/21 12/15
12/20 15/5 21/6 32/9
33/11 36/12 36/12 49/10
**However [2]** 44/2 61/23
**huh [16]** 16/23 22/8 33/8
34/3 34/20 35/24 37/12
41/15 42/20 43/1 51/13
52/20 56/10 59/22 59/25
61/9
**human [3]** 5/19 7/4 7/15

**I**

**I'd [4]** 40/11 42/15 42/19
58/12
**I'll [2]** 28/8 33/18
**I'm [32]** 5/5 5/6 5/19 8/5
9/12 15/4 15/23 16/19
18/23 18/23 20/6 21/8
21/25 23/10 23/15 23/23
29/16 31/10 38/19 40/25
42/23 44/14 45/14 52/18
56/13 57/1 58/7 58/20
60/6 60/22 62/3 64/12
**I've [13]** 6/8 7/16 13/19
20/11 20/11 20/25 36/3
40/16 42/3 44/4 44/24
57/16 62/15
**ice [1]** 9/19
**idea [11]** 11/8 11/10
17/11 18/17 19/15 19/24
22/17 25/9 34/7 39/25
49/15
**identification [10]** 16/6
22/5 28/7 35/21 40/15
42/14 44/7 54/24 59/2
62/13
**Identified [1]** 3/2
**identify [3]** 10/13 29/2

**I**

**identify... [1]** 29/5
**identities [1]** 19/21
**identity [1]** 20/6
**if [25]** 5/17 15/21 18/8
18/18 18/18 19/23 20/21
23/19 24/9 28/8 35/22
37/25 38/1 43/5 43/18
44/10 45/25 48/21 52/17
52/23 53/6 54/18 55/25
65/3 65/4
**imagine [1]** 45/11
**immediate [1]** 18/22
**impossible [1]** 27/20
**in [140]**
**inappropriate [1]** 14/13
**incident [6]** 17/9 17/11
25/17 25/23 49/7 49/11
**incidents [4]** 17/9 64/19
64/22 64/23
**include [1]** 47/19
**including [2]** 33/20 49/7
**independent [1]** 19/13
**indicate [1]** 63/9
**indicated [4]** 31/12 36/2
39/23 63/11
**indicates [2]** 31/20 45/10
**indicating [3]** 38/4 60/24
61/8
**indication [1]** 61/24
**individually [2]** 1/7 1/9
**individuals [1]** 17/23
**information [7]** 9/22
24/14 54/4 56/5 60/7
60/15 60/17
**informed [1]** 49/6
**initial [1]** 55/12
**injunction [4]** 54/5 55/9
57/18 57/23
**Inner [7]** 10/15 18/22
18/25 25/6 40/24 46/7
48/22
**Institute [1]** 6/12
**instructions [1]** 33/11
**intended [3]** 17/6 32/3
33/15
**intent [1]** 42/6
**interacted [1]** 7/1
**interaction [3]** 8/7 20/12
49/1
**interest [1]** 39/19
**interested [1]** 32/25
**interests [4]** 32/5 32/7
32/7 47/7
**interference [2]** 14/5
14/6
**International [1]** 6/12
**interpret [2]** 47/1 47/4
**interpretation [1]** 27/1
**interrupt [1]** 24/4
**into [8]** 6/13 11/6 11/16
18/25 31/22 40/24 46/6
46/22
**intruding [1]** 17/3
**invalidated [1]** 55/25
**involved [6]** 9/8 12/8
22/21 47/8 58/5 59/13
**is [103]**
**issue [1]** 54/5
**issued [6]** 24/9 31/4
37/21 37/21 47/9 47/12
**it [159]**
**it's [21]** 9/16 10/10
10/15 15/21 18/13 18/15
22/14 22/19 28/12 36/17
37/4 37/6 44/20 61/5 61/5
61/12 61/21 63/17 63/19
63/24 64/5
**its [3]** 10/3 23/20 32/3

**J**

**JAMES [2]** 1/3 60/5
**JAMEY [1]** 1/9
**Jayme [1]** 59/10
**Jeff [1]** 21/3
**Jefferson [1]** 21/4
**Jim [1]** 5/7
**job [1]** 6/7
**Joe [1]** 29/11
**JOSEPH [2]** 1/7 29/17
**judge [2]** 50/19 64/2
**judge's [2]** 54/5 63/11
**June [2]** 16/1 34/12
**June 16th [1]** 16/1
**just [30]** 5/17 6/5 15/15
16/21 16/24 18/23 20/20
24/1 24/3 26/21 27/13
28/8 32/19 33/24 35/22
36/2 37/4 37/7 38/1 40/12
44/8 44/14 45/14 45/17
52/2 53/12 56/4 61/24
61/25 64/7

**K**

**keep [2]** 37/22 56/4
**Keeping [1]** 64/2
**kind [18]** 7/8 8/21 12/24
13/3 13/24 16/16 20/22
20/22 24/22 25/15 26/1
27/4 29/1 31/5 31/25
38/23 53/13 63/10
**King [2]** 53/4 64/8
**Kirkpatrick [10]** 25/4
25/5 38/7 41/1 41/3 41/7
46/8 48/22 55/24 61/13
**Kluge [4]** 28/21 29/8 36/6
46/3
**Kluge's [1]** 29/10
**knew [1]** 30/3
**know [31]** 15/15 16/25
17/2 17/6 17/9 18/11
19/10 19/20 21/17 22/15
22/20 23/8 24/15 24/24
25/6 26/13 37/25 38/1
42/3 42/5 43/7 43/8 44/14
47/22 48/12 49/3 49/23
50/7 52/24 65/2 65/3
**knowledge [2]** 19/13 49/4

**L**

**label [5]** 15/10 22/1 28/1
42/8 58/13
**labor [1]** 7/16
**Lane [1]** 1/19
**language [20]** 12/19 12/21
12/22 23/2 23/5 23/6
25/11 25/13 31/10 31/13
33/5 33/10 60/19 60/21
60/22 60/23 61/4 61/16
63/21 63/22
**large [1]** 26/23
**last [6]** 5/11 16/22 19/22
33/4 61/20 62/2
**law [2]** 38/20 38/20
**lawsuit [3]** 55/8 55/13
55/25
**lawyers [3]** 39/12 39/17
52/23
**laypeople [1]** 12/20
**layperson's [1]** 38/20
**leaders [1]** 54/9
**leading [2]** 27/3 50/9

**leave [3]** 18/10 36/6 36/6
**leaving [1]** 48/9
**left [1]** 48/24
**LEK [1]** 1/5
**LEK-TWD [1]** 1/5
**let [10]** 16/21 16/25
36/22 39/4 44/17 44/18
44/21 52/2 52/24 62/14
**let's [12]** 6/5 6/5 12/14
12/14 15/10 16/22 22/1
26/3 26/21 40/8 45/18
54/21
**LGBT [5]** 17/14 20/25
21/16 26/25 54/9
**LGBTQ [5]** 9/17 10/3 17/14
42/4 50/24
**liaison [1]** 7/23
**liberties [4]** 6/8 6/15
7/2 7/5
**Lieutenant [1]** 29/11
**life [1]** 27/17
**like [21]** 5/4 7/20 13/17
13/18 14/18 36/14 37/4
37/8 38/1 40/11 40/21
42/15 42/17 42/19 44/11
45/3 51/16 51/23 58/12
59/17 61/5
**likely [3]** 36/17 47/19
59/17
**limited [4]** 39/5 40/4
40/5 46/9
**Lincoln [1]** 1/15
**line [4]** 8/4 29/16 46/4
67/2
**lines [1]** 9/6
**lineup [3]** 14/8 14/21
37/5
**list [1]** 45/4
**little [6]** 8/16 9/15 33/3
34/1 34/17 43/19
**lives [1]** 17/14
**LOCASTRO [1]** 1/9
**location [12]** 21/1 32/1
39/24 40/5 41/9 41/21
50/2 50/7 60/18 60/23
60/24 63/19
**locations [1]** 10/13
**long [6]** 1/24 5/21 9/7
11/21 21/7 36/6
**look [8]** 19/4 35/23 37/4
44/18 44/24 45/2 47/7
52/18
**looked [2]** 44/15 62/15
**looking [6]** 15/23 26/14
37/19 45/16 48/22 60/6
**looks [9]** 36/14 37/8
40/21 42/17 45/3 51/16
59/6 59/17 60/25
**loop [2]** 30/6 37/23
**lot [3]** 12/20 13/19 19/1
**loudly [1]** 26/24
**Louis [2]** 6/10 6/13

**M**

**made [3]** 8/14 23/9 58/6
**mail [11]** 15/24 24/25
28/19 28/20 29/17 30/20
30/23 31/8 31/11 37/10
37/13
**mails [3]** 15/8 56/19 57/1
**make [7]** 13/20 24/21 33/5
36/15 44/11 54/16 54/21
**makes [1]** 38/2
**MANGINI [3]** 1/21 5/5 36/3
**many [6]** 6/20 6/20 7/10
7/17 7/17 25/25

**M**

mark **[4]** 1/21 35/12 44/4 58/23
marked **[13]** 3/2 16/5 22/4 28/6 35/17 35/20 40/14 42/13 44/6 54/23 59/1 62/8 62/12
Martin **[2]** 59/10 60/6
Mary **[2]** 15/25 66/4
Maryville **[1]** 6/10
massacre **[2]** 50/23 54/11
matters **[3]** 7/4 37/20 56/21
maximum **[2]** 60/9 60/10
may **[17]** 1/13 4/14 8/14 10/19 20/25 24/9 27/8 30/13 43/16 47/8 47/8 49/2 53/19 55/3 55/13 56/20 66/23
maybe **[3]** 27/24 27/24 49/24
me **[38]** 5/17 6/4 9/14 15/13 16/11 16/21 16/25 20/15 27/20 28/12 34/8 34/15 35/14 35/22 36/22 37/19 37/21 37/22 39/4 39/13 40/19 42/17 44/17 44/18 44/21 46/1 46/15 51/16 52/2 52/24 55/16 57/25 58/1 60/14 60/25 62/14 67/20 67/22
mean **[10]** 14/6 24/4 25/25 30/21 33/9 35/7 43/16 46/16 47/4 56/13
meaning **[2]** 23/11 61/21
means **[4]** 46/12 46/17 63/1 63/5
meant **[4]** 19/10 33/19 38/15 41/24
mechanical **[1]** 46/17
media **[1]** 7/3
meeting **[14]** 13/20 28/22 34/2 34/11 34/12 34/19 34/21 34/25 50/21 50/24 51/1 51/15 51/18 53/25
meetings **[6]** 12/13 51/3 51/6 53/15 53/16 53/21
member **[2]** 8/13 58/7
members **[3]** 9/17 14/13 54/9
membership **[1]** 58/8
memorandum **[1]** 57/17
memory **[5]** 16/20 22/6 28/16 53/14 55/21
Memphis **[1]** 1/20
mentioned **[2]** 6/6 13/1
mentions **[6]** 16/24 25/3 31/18 42/22 42/24 55/8
message **[3]** 17/22 39/22 40/4
messages **[1]** 14/5
messaging **[1]** 42/5
mid **[1]** 5/23
middle **[1]** 21/20
might **[4]** 27/23 27/23 51/9 56/20
mind **[5]** 15/22 19/11 23/10 28/8 63/8
minds **[1]** 50/5
minimum **[2]** 60/9 60/11
minute **[2]** 28/9 45/21
minutes **[2]** 4/7 53/8
Missouri **[1]** 6/10
ML **[2]** 53/3 64/8
Monday **[1]** 34/19
more **[10]** 8/16 25/22 34/1

34/14 38/19 49/24 53/8 59/24 61/11 64/14
most **[4]** 10/14 15/15 15/16 35/1
motivation **[2]** 17/6 17/9
move **[2]** 27/23 40/8
movement **[1]** 7/17
moving **[2]** 25/15 56/4
Mr **[15]** 20/23 23/8 25/7 25/12 26/4 26/8 47/15 49/7 49/13 49/18 54/6 55/10 64/13
Mr. **[13]** 5/7 17/2 20/3 20/9 25/18 26/16 29/19 36/3 36/16 36/18 36/22 37/17 64/16
Mr. Deferio **[5]** 20/3 20/9 25/18 26/16 64/16
Mr. Doyle **[1]** 29/19
Mr. Jim Deferio **[1]** 5/7
Mr. Mangini **[1]** 36/3
Mr. Shepherd **[4]** 17/2 36/18 36/22 37/17
Mr. Shepherd's **[1]** 36/16
Ms **[1]** 5/4
much **[5]** 46/22 52/8 57/13 57/14 65/13
multifaceted **[1]** 6/21
my **[44]** 5/4 5/5 6/7 16/20 22/6 23/21 27/10 27/17 27/21 27/21 28/16 29/4 31/9 32/4 32/5 32/16 33/22 34/9 34/15 35/3 35/4 36/14 38/22 43/13 43/14 44/22 44/22 45/16 45/17 51/9 51/18 53/24 55/21 56/18 56/23 56/25 57/6 57/15 59/7 60/14 63/21 64/12 67/18 67/19
myself **[3]** 28/17 39/15 42/15

**N**

name **[7]** 5/4 5/5 5/10 5/11 5/12 7/10 60/16
names **[2]** 39/13 60/12
Naylor **[1]** 15/25
near **[2]** 20/5 21/1
nearby **[1]** 10/20
necessarily **[3]** 32/17 32/22 35/10
need **[7]** 8/24 9/3 11/15 25/21 33/6 33/15 41/16
needed **[1]** 11/3
Neither **[1]** 14/17
never **[5]** 8/13 8/14 15/22 49/14 63/21
NEW **[9]** 1/1 1/15 1/17 1/24 6/7 6/15 6/17 7/1 66/5
New York **[2]** 1/15 6/17
news **[1]** 63/12
next **[2]** 27/23 48/3
Nixes **[1]** 64/2
no **[46]** 1/5 3/4 3/5 3/7 3/9 3/11 3/14 3/16 3/19 3/21 3/23 16/5 17/11 19/23 20/10 22/4 22/13 22/17 23/6 23/10 23/18 25/1 25/9 26/5 27/7 28/6 34/7 34/23 35/20 40/14 42/13 43/12 43/13 43/17 44/6 46/2 49/9 54/23 57/16 58/18 59/1 61/24 62/12 62/22 65/9 65/11
nonprofit **[1]** 7/15

normal **[2]** 8/6 11/6
north **[2]** 41/2 61/12
northern **[2]** 1/1 46/8
not **[52]** 4/18 8/11 8/22 8/24 8/24 9/12 9/12 10/20 12/5 14/16 15/1 15/4 16/9 16/19 18/6 20/6 20/19 20/19 20/20 21/3 21/20 23/1 23/2 23/6 23/10 25/11 25/12 27/9 27/21 29/17 30/18 32/17 32/22 33/24 34/23 35/4 35/10 36/20 37/6 39/7 43/24 43/25 47/8 50/1 53/16 56/22 58/7 59/9 59/18 60/10 60/15 65/2
Notary **[3]** 1/16 66/5 67/25
notes **[15]** 31/8 51/15 51/16 51/17 52/11 53/18 53/24 54/3 54/7 54/8 54/15 55/2 55/18 56/8 66/7
nothing **[1]** 52/12
notion **[2]** 26/16 26/17
now **[5]** 8/5 42/19 56/4 56/13 57/24
number **[8]** 6/11 7/15 11/25 22/19 22/20 60/8 60/10 61/19
numbers **[1]** 60/9
nut **[1]** 55/9
NYCLU **[3]** 8/5 39/11 60/15

**O**

o'clock **[2]** 52/25 64/5
Oakleaf **[1]** 1/19
oath **[1]** 67/18
object **[37]** 13/5 13/6 15/7 23/15 23/24 24/17 25/19 27/6 27/15 29/21 29/22 30/2 30/9 30/10 30/16 30/17 32/11 34/6 38/17 39/10 42/2 43/22 46/13 47/5 48/1 49/20 49/21 50/13 50/14 50/17 51/7 56/11 63/6 63/7 63/16 63/23 64/21
objection **[5]** 13/8 13/11 23/21 24/2 24/4
objections **[1]** 4/11
observed **[2]** 20/11 20/23
occurred **[1]** 31/25
occurring **[1]** 64/20
off **[10]** 16/4 22/3 22/11 36/1 41/11 45/18 45/21 45/23 52/14 64/15
office **[15]** 1/19 1/22 6/24 7/1 11/16 11/17 12/3 28/21 29/10 29/24 45/5 46/4 50/21 54/1 55/23
officer **[5]** 28/21 29/7 29/10 29/11 36/6
officers **[5]** 31/11 33/6 33/10 49/19 50/22
official **[4]** 1/6 1/8 1/9 8/9
officials **[1]** 56/15
oh **[4]** 42/23 57/16 58/20 58/21
okay **[268]**
old **[1]** 21/1
on **[95]**
once **[1]** 8/15
one **[30]** 1/15 12/18 13/16 18/18 21/21 22/2 27/18

**O**

**one... [23]** 28/2 33/4
33/24 35/12 39/1 39/18
40/9 42/9 42/19 44/9 44/8
47/17 48/3 49/8 49/11
49/23 49/24 52/10 54/21
58/13 59/24 61/18 62/5
**ones [2]** 15/17 58/14
**ongoing [1]** 55/8
**only [12]** 19/4 20/2 28/15
31/7 45/2 46/14 46/16
46/18 53/24 55/12 56/18
64/12
**Onondaga [1]** 6/1
**open [1]** 10/8
**opinion [3]** 26/24 32/16
33/22
**opposed [3]** 13/17 35/9
49/8
**or [42]** 6/25 7/2 8/2 8/15
8/21 8/24 11/19 11/24
13/15 14/19 14/19 17/9
18/19 21/15 21/19 21/21
22/22 26/8 26/11 26/11
31/9 34/5 35/10 36/22
37/7 37/25 38/20 41/23
43/5 47/8 48/7 48/8 48/9
49/17 50/10 51/23 53/13
56/16 58/8 58/15 61/12
62/25
**order [4]** 10/22 57/17
57/23 63/11
**ordinance [2]** 38/18 38/21
**organizations [3]** 7/2
7/18 9/21
**originate [1]** 39/9
**Orlando [2]** 50/23 54/11
**other [27]** 6/12 7/6 7/8
7/16 7/17 10/23 11/18
14/2 19/5 20/1 20/24 21/4
21/15 21/21 33/24 50/24
52/2 54/9 56/1 56/7 56/9
56/21 56/22 58/1 60/6
61/14 64/12
**others [1]** 20/12
**our [5]** 18/10 19/7 24/2
26/6 55/23
**out [17]** 7/24 7/24 11/4
11/16 11/24 12/11 12/18
26/23 27/18 33/18 36/16
36/17 48/22 52/9 53/12
53/13 61/23
**outcome [3]** 24/13 55/13
55/25
**outdoor [1]** 11/7
**outline [2]** 7/7 53/25
**outreach [2]** 8/6 8/7
**over [3]** 10/10 11/13
33/24
**own [1]** 56/2

**P**

**P.C [1]** 1/14
**p.m [2]** 1/14 65/15
**page [8]** 3/2 3/2 52/11
54/15 55/7 60/16 67/1
67/2
**Pages [1]** 2/2
**paid [1]** 8/14
**paper [1]** 57/19
**parade [34]** 3/9 7/22 8/1
8/3 8/8 8/17 8/21 11/24
12/23 12/23 13/15 14/1
14/9 14/11 17/4 17/16
17/18 17/18 18/1 18/4

18/6 18/7 18/15 28/24
37/2 37/5 37/6 37/8 38/6
38/7 40/22 43/23 43/24
58/10
**Parade/Public [2]** 3/9
40/22
**paragraph [6]** 16/22 18/9
19/22 33/4 34/1 34/18
**parameters [1]** 47/11
**parents [1]** 17/24
**Park [5]** 10/15 18/23
18/25 25/6 40/25
**parking [3]** 19/1 44/22
45/17
**part [7]** 6/14 17/18 24/19
31/22 31/23 32/5 33/14
**participants [7]** 14/4
41/11 41/23 41/24 42/1
47/12 60/9
**participate [3]** 7/21 8/8
58/10
**participated [1]** 12/12
**participating [1]** 16/14
**particular [11]** 9/10 23/2
23/2 25/21 36/25 39/19
48/6 49/23 50/6 50/7
52/13
**particularly [2]** 9/18
31/1
**parties [3]** 4/4 4/17 47/8
**pass [1]** 19/18
**past [8]** 6/3 10/14 10/16
17/21 20/3 20/22 32/1
47/18
**Patrick [1]** 15/25
**Patrick Naylor [1]** 15/25
**Paul [1]** 46/3
**Pax [2]** 7/13 7/14
**pay [1]** 58/8
**Peace [1]** 7/13
**people [14]** 6/24 8/20
14/10 14/17 17/17 19/16
26/23 26/24 26/25 39/21
46/18 47/11 48/7 49/13
**Per [2]** 63/2 63/2
**performances [1]** 9/20
**performers [1]** 11/4
**perhaps [2]** 49/24 53/21
**perimeter [2]** 18/22 20/5
**period [5]** 14/8 27/8 38/8
40/4 40/5
**permit [36]** 3/9 7/24 8/17
8/23 8/24 11/9 12/6 12/9
12/12 18/6 22/22 22/23
23/13 23/18 24/22 28/23
30/25 31/2 31/23 33/5
33/10 33/12 37/5 37/21
38/22 39/22 39/23 39/24
40/22 46/4 47/11 55/16
55/19 57/8 62/1 64/25
**permits [21]** 11/2 11/16
11/17 12/2 12/17 15/6
16/16 24/10 24/20 28/21
29/9 31/4 31/13 34/10
45/5 45/6 47/8 50/21 54/1
55/23 57/9
**permitted [4]** 14/21 33/13
38/12 47/13
**personal [1]** 49/17
**personally [2]** 12/8 43/9
**phone [5]** 44/22 45/16
51/16 53/19 53/21
**phrases [1]** 61/20
**physical [1]** 49/14
**pick [1]** 27/18
**place [6]** 19/1 30/23 34/5

34/22 35/1 39/5
**places [1]** 10/10
**Plaintiff [2]** 1/4 1/19
**plan [1]** 65/3
**plaza [3]** 10/17 10/20
10/20
**please [6]** 5/9 6/23 10/13
15/14 22/2 53/23
**point [15]** 12/23 12/23
16/15 21/15 33/18 38/8
45/12 46/17 46/19 48/11
49/14 52/9 55/8 59/19
61/23
**police [41]** 1/7 1/7 1/8
1/10 7/22 11/25 12/13
13/18 13/18 13/22 13/25
14/3 14/15 14/18 14/19
14/20 29/9 29/18 30/3
31/3 31/11 32/12 32/25
33/22 34/12 37/2 40/21
45/4 46/3 46/25 47/3 47/6
47/10 49/1 49/18 49/25
50/5 50/21 50/25 54/2
54/8
**portion [3]** 31/21 41/5
46/8
**position [3]** 6/19 6/21
8/10
**possession [12]** 16/19
23/1 27/9 27/21 35/5
43/13 56/14 56/19 56/23
57/6 57/15 59/7
**possible [2]** 12/19 53/6
**possibly [1]** 26/22
**Post [1]** 63/24
**power [1]** 11/7
**pre [4]** 12/13 34/11 34/12
50/20
**pre-event [3]** 12/13 34/12
50/20
**pre-meeting [1]** 34/11
**precise [16]** 12/19 12/21
16/18 19/24 20/6 21/5
21/12 21/16 21/21 22/13
22/24 43/17 49/22 50/2
62/19 62/23
**precisely [13]** 9/11 9/13
10/17 11/23 12/1 15/1
15/2 15/4 20/19 24/24
35/9 47/22 48/14
**precision [2]** 1/14 12/22
**prefer [1]** 54/19
**prelim [1]** 55/9
**preliminary [3]** 54/5
57/18 57/22
**presence [1]** 4/5
**present [5]** 20/10 33/14
34/25 35/2 51/2
**presentations [1]** 7/5
**presently [1]** 5/25
**president [1]** 59/11
**previous [3]** 6/7 15/19
58/14
**previously [2]** 29/7 62/8
**pride [67]** 7/14 7/20 7/21
8/10 9/8 9/15 10/22 12/9
12/10 12/16 13/14 13/22
13/25 14/17 14/18 14/22
15/5 16/14 17/22 21/15
22/23 25/18 26/1 26/4
26/6 26/8 26/8 26/9 26/16
28/22 29/13 30/12 30/24
31/3 31/5 31/20 32/6
34/11 36/23 37/22 40/1
40/23 40/23 43/6 46/16
47/14 49/6 49/7 49/13

**P**

**pride... [18]**   50/11 50/12 50/20 50/22 50/24 50/1 51/1 52/12 54/1 54/9 54/10 56/16 58/6 58/8 59/11 60/7 64/3 64/16 64/25
**primary [1]**   13/21
**prior [5]**   20/8 28/21 28/22 30/7 52/20
**probably [5]**   9/12 19/15 35/2 54/16 55/15
**Procedure [3]**   4/15 4/18 4/20
**proceedings [1]**   66/7
**process [8]**   8/17 11/9 11/12 11/13 11/22 12/9 31/4 34/10
**produce [2]**   51/20 56/22
**produced [1]**   55/2
**producing [1]**   57/1
**prohibited [1]**   63/10
**prompted [2]**   30/22 43/10
**prosecution [1]**   52/13
**protect [2]**   33/6 33/23
**protest [1]**   20/11
**protested [2]**   20/3 20/5
**Protester [1]**   64/3
**protesters [10]**   14/10 17/3 17/13 17/21 19/21 20/2 31/15 32/2 32/8 33/20
**protests [2]**   20/11 20/12
**provide [1]**   57/12
**provided [7]**   4/14 4/17 54/4 56/8 57/16 57/25 58/1
**provides [1]**   33/6
**providing [1]**   9/22
**proximity [3]**   32/3 32/16 50/1
**prudent [1]**   30/6
**public [13]**   1/16 3/9 7/3 8/21 8/21 10/8 14/22 37/2 38/9 40/22 43/25 66/5 67/25
**publicity [1]**   11/4
**purpose [2]**   9/25 46/9
**purposes [3]**   4/14 18/7 55/1
**put [6]**   9/10 10/24 12/12 12/16 14/18 58/24
**putting [1]**   11/6

**Q**

**question [6]**   6/25 29/4 42/19 54/19 61/17 64/13 65/7 65/9 65/11
**questions [5]**   7/2 64/14 65/7 65/9 65/11
**quick [1]**   43/18
**quoting [2]**   18/23 38/19

**R**

**raising [1]**   28/24
**rather [1]**   58/15
**read [13]**   4/7 16/24 19/6 19/11 23/10 28/9 39/15 45/25 46/22 50/5 63/8 67/2 67/18
**reading [5]**   28/16 31/11 40/25 41/11 56/13
**ready [1]**   14/11
**Real [1]**   43/18
**really [8]**   12/5 18/15 20/24 21/13 21/17 30/18 33/19 43/20

**reason [2]**   34/23 43/8
**recall [26]**   20/17 20/24 21/6 21/11 21/18 25/12 25/20 26/3 26/7 27/11 27/13 27/16 34/21 43/9 45/7 47/15 48/25 49/5 50/3 50/10 50/10 51/5 51/8 56/8 64/13 64/23
**recalling [1]**   25/1
**receipt [1]**   4/8
**receiving [1]**   29/6
**recognize [10]**   16/8 22/11 23/4 25/11 28/14 36/9 40/18 45/1 45/3 59/5
**recollection [27]**   16/18 21/5 21/12 21/22 22/24 23/1 26/10 27/7 27/10 27/21 31/9 34/9 35/3 43/3 43/12 43/14 43/17 44/19 45/9 47/16 48/20 49/17 49/17 49/22 51/10 53/18 64/17
**recollections [2]**   30/15 34/25
**record [12]**   5/9 13/11 16/4 22/3 36/1 44/12 45/19 45/21 45/23 55/2 67/19 67/19
**redaction [1]**   52/10
**reduce [1]**   31/24
**refer [3]**   31/7 32/20 60/21
**Referee [1]**   4/5
**reference [2]**   13/14 18/16
**references [1]**   28/23
**referred [1]**   19/15
**referring [15]**   17/3 17/10 18/2 18/2 18/3 18/11 18/18 19/21 19/25 25/7 32/21 55/10 55/14 55/20 60/22
**refers [2]**   18/20 55/15
**reflect [4]**   22/25 31/9 34/9 35/3
**reflects [1]**   32/4
**refresh [9]**   16/20 22/6 27/10 27/21 31/9 34/9 43/14 44/19 51/9
**refreshed [2]**   28/16 28/16
**refreshing [2]**   53/14 55/21
**regard [7]**   41/13 41/19 61/6 61/17 62/25 64/20 64/24
**regarding [9]**   15/6 25/17 27/5 38/3 38/4 42/21 47/3 50/12 56/16
**regards [1]**   17/24
**region [1]**   9/18
**related [6]**   28/24 30/5 41/10 41/23 41/25 42/6
**relating [1]**   44/1
**relation [2]**   24/22 45/5
**relationship [1]**   7/20
**RELIGIOUS [3]**   1/19 5/6 5/15
**remember [20]**   9/11 10/16 12/1 14/24 15/2 23/2 35/7 44/15 47/17 47/24 47/25 48/2 48/17 49/24 50/18 50/20 62/19 62/22 64/15 64/19
**renew [2]**   44/22 45/17
**Rensselaer [1]**   38/7
**report [1]**   49/11
**Reporter [3]**   1/16 66/4

66/19
**Reporters [1]**   1/14
**reporting [1]**   63/12
**representative [1]**   36/23
**representatives [1]**   54/1
**representing [1]**   5/7
**request [32]**   11/19 11/24 18/10 18/11 19/7 19/7 19/8 22/23 23/9 23/14 23/18 31/19 33/1 37/5 37/17 37/22 38/5 38/10 38/25 39/22 40/3 41/20 44/1 45/6 50/23 55/22 55/23 56/1 59/14 59/20 61/5 62/1
**requested [5]**   9/5 13/25 14/1 14/3 38/3
**requester [1]**   11/20
**requesting [8]**   19/2 22/9 22/22 23/8 40/24 63/14 63/17 63/19
**requests [10]**   7/24 12/16 28/23 30/25 31/2 41/4 41/8 56/1 60/2 60/14
**requires [1]**   8/23
**reserved [1]**   4/11
**respect [1]**   4/20
**respective [1]**   4/4
**respond [1]**   6/25
**response [1]**   57/1
**responsibilities [1]**   6/20
**responsive [4]**   52/16 56/20 57/7 57/20
**review [2]**   40/12 52/18
**reviewed [3]**   28/13 40/16 52/20
**right [38]**   17/23 21/2 25/2 25/14 29/7 30/22 31/11 32/17 33/25 36/21 37/9 37/10 37/17 39/8 39/8 39/22 40/3 40/20 42/8 48/4 48/24 50/8 52/15 54/13 54/17 54/25 55/9 56/3 56/7 57/24 57/24 58/5 58/12 59/10 62/2 62/2 63/20 64/4
**rights [6]**   4/17 5/19 5/19 5/22 7/4 33/23
**ringing [1]**   64/6
**Roach [1]**   15/25
**room [3]**   1/23 52/3 52/24
**rough [1]**   7/6
**route [9]**   14/1 17/4 17/16 17/18 18/1 18/4 18/6 18/21 38/6
**ruled [1]**   40/2
**Rules [3]**   4/15 4/17 4/19
**run [2]**   26/1 47/17

**S**

**said [11]**   5/5 5/14 10/2 29/7 33/18 39/21 47/1 51/5 51/8 51/20 56/14
**Salina [1]**   21/4
**Sam [10]**   15/24 28/20 29/9 46/5 50/18 51/17 53/19 54/4 55/22 63/9
**Sam's [1]**   63/8
**same [9]**   28/4 42/17 60/20 61/3 61/10 61/17 61/21 66/7 66/8
**say [8]**   12/7 14/12 17/12 18/1 21/8 25/22 34/9 48/7
**says [23]**   17/3 18/9 19/7 29/11 31/10 31/24 33/5 34/1 34/18 38/5 38/10

**S**

**says... [12]** 38/18 38/21 41/20 46/2 46/4 46/15 46/21 46/22 46/23 55/12 55/19 63/2
**School [1]** 53/4
**scratch [3]** 16/13 20/7 27/12
**scream [1]** 14/12
**screaming [1]** 19/19
**scripture [1]** 27/1
**sec [4]** 40/11 42/15 44/8 62/14
**second [6]** 13/1 34/1 46/4 54/15 55/7 61/6
**section [1]** 29/8
**sections [1]** 4/19
**security [4]** 25/6 25/8 50/25 54/10
**see [8]** 13/17 13/18 16/11 23/17 26/3 37/10 44/17 55/18
**seeing [8]** 21/11 26/4 47/15 47/21 62/19 62/22 64/13 64/15
**seeking [2]** 8/23 34/10
**seeks [1]** 11/18
**seem [5]** 53/24 54/3 54/8 57/19 61/25
**seemed [1]** 30/6
**seems [3]** 48/23 61/4 61/24
**seen [4]** 20/25 20/25 45/7 62/17
**sell [1]** 9/22
**send [1]** 30/22
**sending [1]** 29/2
**sense [3]** 14/21 36/15 38/2
**sent [3]** 29/12 37/18 60/14
**sentence [1]** 33/4
**separate [4]** 43/21 55/20 55/23 55/24
**Sergeant [1]** 1/9
**serve [2]** 33/7 33/19
**served [1]** 38/24
**services [1]** 7/15
**set [9]** 8/1 8/3 8/5 13/16 16/15 16/17 27/18 50/24 51/1
**setup [4]** 7/22 37/8 41/10 41/22
**several [1]** 50/6
**shall [3]** 4/7 4/18 4/20
**shared [1]** 39/13
**Shepherd [12]** 15/24 17/2 23/8 25/7 25/12 28/4 29/13 36/18 36/22 37/17 41/17 60/4
**Shepherd's [1]** 36/16
**shirt [1]** 8/15
**shortly [1]** 50/22
**should [5]** 18/10 31/24 32/3 54/16 67/2
**show [2]** 22/1 31/15
**side [6]** 31/21 41/2 41/2 46/8 55/19 61/12
**sides [1]** 57/4
**sidewalk [8]** 8/2 18/3 18/7 41/6 48/8 48/10 48/23 55/24
**sidewalks [12]** 18/11 18/21 18/24 19/8 19/11 19/17 25/5 31/21 41/1 41/5 44/2 49/19

**sign [1]** 4/7
**SIGNATURE [1]** 67/1
**significance [1]** 22/16
**significant [1]** 39/14
**similar [4]** 60/25 61/4 61/5 61/16
**simply [1]** 37/22
**since [2]** 19/11 40/1
**sir [2]** 58/3 60/21
**site [2]** 41/9 41/21
**situation [2]** 11/17 47/6
**situations [1]** 31/14
**slightly [1]** 61/20
**SMG [1]** 54/24
**so [116]**
**some [17]** 6/22 8/21 9/22 14/2 14/10 14/13 21/15 21/15 45/11 49/12 49/13 49/14 51/9 51/9 52/11 56/5 56/19
**somebody [1]** 19/18
**someone [1]** 43/5
**something [3]** 15/12 28/16 32/6
**sometimes [2]** 8/20 12/21
**somewhere [2]** 15/3 21/20
**soon [1]** 55/13
**sorry [13]** 12/7 16/13 23/23 27/11 29/4 29/16 38/14 42/23 45/14 58/21 58/24 59/23 62/10
**sort [1]** 7/6
**sought [1]** 24/23
**sound [14]** 31/16 31/17 31/19 38/6 38/10 38/11 38/18 38/21 39/1 41/4 46/10 46/15 46/16 63/18
**south [2]** 41/6 61/12
**space [1]** 39/23
**SPD [1]** 37/1
**speakers [1]** 60/12
**speaking [1]** 42/5
**special [3]** 28/21 29/8 46/3
**specific [18]** 17/11 25/22 26/10 27/7 27/16 30/14 34/14 35/2 37/18 39/4 39/5 43/3 43/12 45/9 47/16 49/4 49/8 64/17
**specifically [9]** 13/14 26/5 26/13 27/16 38/3 40/23 44/1 48/2 48/17
**specificity [1]** 61/11
**specified [3]** 27/9 38/14 41/7
**specifies [1]** 56/17
**specify [2]** 30/21 56/12
**spoke [2]** 7/3 63/9
**St [2]** 6/10 6/13
**stage [1]** 9/20
**stages [1]** 55/12
**stand [2]** 48/6 56/2
**standard [4]** 22/14 37/1 40/22 63/24
**standardize [1]** 24/20
**standardized [1]** 24/22
**standing [1]** 48/21
**stands [1]** 26/22
**start [2]** 15/10 26/21
**started [2]** 9/11 15/3
**starting [4]** 12/22 12/24 53/12 54/14
**state [3]** 1/17 5/9 66/5
**STATES [1]** 1/1
**stating [2]** 24/1 24/3
**station [1]** 48/5

**stenographic [1]** 66/7
**step [1]** 24/5
**still [4]** 13/9 32/3 50/1 58/5
**STIPULATED [5]** 4/3 4/6 4/10 4/13 4/16
**stipulations [5]** 4/1 23/22 24/8 24/16 37/25
**street [1]** 1/23 8/2 18/2 18/4 21/1 25/6 41/6 46/9 48/22 49/19 49/25 61/13
**strike [1]** 21/24
**struck [1]** 32/10
**subject [1]** 32/24
**submitted [2]** 40/23 64/25
**Submitting [1]** 31/3
**subpoena [5]** 51/20 52/16 56/13 57/2 57/7
**subsequent [1]** 63/12
**substantial [1]** 60/1
**substantially [1]** 60/20
**successive [1]** 26/5
**such [1]** 32/2
**suggest [1]** 43/10
**suggested [2]** 39/25 40/2
**Suite [2]** 1/15 1/20
**summarize [2]** 53/13 53/22
**supervision [1]** 39/12
**Supreme [4]** 39/15 39/20 40/1 40/2
**sure [15]** 6/24 7/12 9/12 9/16 13/20 15/4 20/6 23/10 24/21 25/16 25/24 33/5 40/13 53/5 57/15
**surrounding [1]** 18/21
**SWEENY [2]** 1/7 29/17
**sworn [2]** 5/2 67/22
**SYRACUSE [21]** 1/2 1/6 1/7 1/8 1/10 1/15 1/22 1/24 6/9 6/9 6/11 7/13 9/19 10/16 27/4 29/8 29/18 37/2 40/21 56/15 63/24
**Syracuse.com [1]** 63/12
**system [1]** 38/10

**T**

**t-shirt [1]** 8/15
**take [7]** 28/8 34/4 35/6 35/22 44/18 52/18 62/14
**taken [2]** 44/24 67/18
**takes [1]** 19/1
**talked [1]** 49/3
**talking [3]** 17/12 18/24 19/24
**tape [2]** 14/18 14/19
**team [1]** 6/9
**tell [10]** 5/17 8/20 9/14 11/23 18/13 18/14 18/16 24/13 48/16 63/8
**telling [1]** 26/24
**Tennessee [1]** 1/20
**term [1]** 39/9
**terminology [1]** 19/8
**testifies [1]** 5/2
**testimony [2]** 67/18 67/19
**text [3]** 29/17 31/18 31/20
**than [8]** 19/5 19/5 20/24 21/4 49/24 56/7 58/1 61/14
**Thank [16]** 5/16 28/12 44/14 44/21 44/23 45/22 52/1 52/4 52/7 53/9 57/5 57/13 57/14 62/11 64/8 65/12
**that [252]**

**T**

**that's [19]** 6/13 11/16 11/19 15/18 20/13 21/23 21/23 32/20 40/1 41/11 46/21 53/10 55/17 58/20 60/19 62/11 63/19 64/7 65/7

**their [9]** 8/13 12/16 12/22 14/4 14/4 31/13 47/9 56/2 58/6

**them [21]** 7/22 7/23 7/23 9/2 12/11 12/21 13/19 13/19 14/12 16/15 16/17 17/15 19/19 23/11 31/3 32/18 33/11 52/18 52/20 58/7 58/9

**then [17]** 11/16 11/17 11/19 13/20 25/14 27/24 38/9 41/5 42/24 46/5 51/22 51/22 54/7 55/18 58/12 61/6 64/24

**there [41]** 9/19 9/21 11/15 13/2 14/8 14/9 14/13 17/12 17/15 18/23 35/4 35/8 37/11 37/25 38/1 38/16 41/20 43/16 46/2 46/14 47/19 47/22 49/6 49/11 49/12 49/14 50/21 50/22 52/10 52/11 58/25 60/1 60/1 60/19 61/7 61/18 61/23 62/25 63/10 64/18 64/18

**there's [7]** 9/20 9/24 13/7 32/7 43/2 53/16 61/11

**thereto [1]** 4/20

**these [13]** 10/5 15/16 33/6 42/21 44/12 51/18 51/23 52/9 52/18 53/14 53/15 53/15 56/25

**they [34]** 8/24 9/3 13/17 14/1 14/2 14/3 14/20 24/19 24/20 24/21 26/1 29/5 29/5 29/13 32/6 32/8 32/13 33/6 33/12 33/13 33/15 37/19 40/2 43/21 47/17 49/3 57/9 58/6 58/6 61/1 61/14 65/3 65/4 65/5

**they're [6]** 8/23 13/16 23/1 29/6 56/22 61/2

**thing [6]** 12/25 13/1 16/16 41/16 53/5 61/3

**things [10]** 8/7 9/22 11/6 12/18 13/24 14/12 48/7 48/7 56/7 56/18

**think [11]** 10/2 20/15 20/25 21/3 24/20 29/3 39/20 55/22 56/4 56/5 63/17

**third [1]** 33/4

**this [94]**

**those [21]** 10/13 11/6 12/2 12/15 15/2 17/7 24/15 26/20 30/15 35/4 39/15 39/16 45/25 50/16 51/2 51/6 51/11 51/23 59/23 60/2 61/10

**three [4]** 27/17 27/19 53/15 53/16

**through [3]** 12/2 15/8 19/16

**time [21]** 4/12 11/13 18/14 18/16 21/10 25/1 27/14 29/9 29/14 37/16 38/12 38/14 39/5 39/23

40/5 40/6 41/10 41/22 43/8 47/1 50/6

**times [4]** 12/23 12/24 20/16 56/22

**today [1]** 58/1

**TODD [1]** 1/24

**together [4]** 10/24 26/2 28/22 47/18

**told [1]** 64/23

**Tony [1]** 5/5

**too [3]** 7/10 46/22 52/19

**took [4]** 34/21 35/1 52/11 66/7

**top [4]** 17/16 17/23 19/19 32/18

**touch [1]** 56/21

**transcript [4]** 4/8 4/9 67/18 67/19

**transfers [1]** 21/2

**traveling [1]** 17/17

**trial [1]** 4/12

**true [3]** 66/8 67/19 67/20

**try [1]** 48/5

**trying [1]** 44/14

**turn [3]** 39/15 44/22 44/23

**TWD [1]** 1/5

**twice [1]** 8/15

**two [8]** 13/21 34/13 42/21 52/5 53/21 60/2 60/13 64/14

**two-way [2]** 13/21 34/13

**type [1]** 25/22

**types [1]** 8/25

**U**

**uh [16]** 16/23 22/8 33/8 34/3 34/20 35/24 37/12 41/15 42/20 43/1 51/13 52/20 56/10 59/22 59/25 61/9

**uh-huh [16]** 16/23 22/8 33/8 34/3 34/20 35/24 37/12 41/15 42/20 43/1 51/13 52/20 56/10 59/22 59/25 61/9

**unchanged [1]** 18/10

**under [5]** 31/18 38/9 39/11 55/7 67/18

**understand [1]** 12/20

**understanding [10]** 11/12 23/13 38/20 38/23 46/11 61/2 62/24 63/1 63/4 63/14

**Union [2]** 6/8 6/15

**unions [1]** 7/16

**UNITED [1]** 1/1

**University [5]** 6/9 6/9 6/10 6/11 6/11

**until [2]** 4/11 36/3

**up [18]** 8/1 8/3 8/5 13/16 16/15 16/17 27/3 30/24 31/15 33/25 34/18 35/13 40/10 46/25 47/3 50/9 50/24 51/1

**upon [1]** 4/8

**us [3]** 6/13 8/16 65/10

**use [23]** 18/10 18/20 19/8 19/10 31/17 38/4 38/4 38/6 38/11 38/16 38/19 38/21 39/9 40/1 40/24 41/4 41/8 41/21 46/9 46/15 46/16 63/18 63/18

**used [2]** 11/23 25/23

**usually [5]** 8/8 26/23 26/24 26/25 48/5

**Utica [1]** 7/14

**utilized [1]** 4/14

**V**

**van [1]** 38/7

**various [1]** 9/21

**vendors [3]** 9/19 9/22 11/1

**versus [4]** 12/24 14/22 25/21 47/17

**very [11]** 14/13 17/17 27/18 27/18 50/22 52/7 57/13 60/25 61/4 61/16 65/12

**via [1]** 19/17

**W**

**waived [3]** 4/5 4/9 4/18

**want [10]** 6/4 8/21 14/16 15/13 17/5 24/5 31/2 33/5 46/22 65/4

**wanted [3]** 24/19 24/21 30/24

**wants [2]** 12/16 48/22

**was [105]**

**Washington [1]** 1/23

**wasn't [3]** 33/14 37/21 52/16

**way [5]** 8/23 12/15 13/21 25/1 34/13

**we [25]** 8/1 15/10 27/22 27/23 27/24 27/24 30/24 33/5 34/2 34/18 35/12 35/12 36/5 38/5 38/10 41/20 44/11 45/20 52/24 54/15 54/16 58/13 58/14 58/17 58/19

**we'd [1]** 51/23

**we'll [2]** 44/4 51/22

**we're [2]** 40/10 56/4

**we've [1]** 15/17

**welcome [1]** 64/10

**well [13]** 10/13 11/13 15/22 16/17 18/20 32/12 44/12 46/7 52/3 58/16 60/10 61/10 64/14

**went [2]** 39/14 58/19

**were [34]** 5/14 14/9 14/11 14/12 14/20 14/22 16/14 17/13 17/17 17/21 17/23 18/18 19/16 22/21 23/11 23/19 24/10 29/2 29/13 32/13 32/25 33/13 34/25 37/19 37/25 38/1 48/8 49/12 50/16 50/21 51/2 57/7 58/5 59/13

**what [120]**

**what's [19]** 7/19 9/14 9/25 28/18 28/18 30/19 30/20 31/7 41/24 43/20 45/3 46/11 46/14 55/13 55/14 55/20 62/24 62/25 63/4

**whatever [1]** 11/3

**whatsoever [1]** 52/12

**when [31]** 6/24 8/1 8/4 9/11 10/17 12/1 13/7 14/24 15/2 16/25 17/3 18/1 20/25 21/6 21/10 23/8 23/11 24/9 24/20 25/7 27/7 27/8 30/4 31/14 32/20 33/18 34/4 39/11 50/22 52/24 63/9

**where [29]** 5/24 5/24 6/2 8/2 10/9 10/12 13/16 14/8 14/19 14/21 14/22 16/24

# W

**where... [17]** 18/9 19/1 25/2 34/1 34/4 34/18 37/10 39/9 40/10 41/20 46/2 48/12 48/16 48/17 48/19 49/25 63/22

**whereupon [11]** 16/5 22/4 28/6 35/20 40/14 42/13 44/6 54/23 59/1 62/12 65/14

**whether [7]** 8/24 18/14 21/18 24/25 34/21 37/7 61/12

**which [16]** 11/16 14/1 18/18 21/2 27/21 38/18 39/19 40/9 47/18 49/12 56/13 56/22 57/6 57/18 59/21 60/21

**white [10]** 15/24 28/20 29/9 45/2 46/5 50/19 51/17 53/19 55/22 63/2

**who [8]** 10/4 19/24 20/5 29/2 29/5 29/18 39/13 59/10

**whole [1]** 66/9

**whom [1]** 47/11

**whose [1]** 22/20

**why [8]** 29/6 29/19 29/25 37/17 43/2 43/4 43/19 43/21

**will [6]** 12/21 17/12 34/8 52/9 57/12 61/23

**willing [2]** 32/13 32/14

**wing [1]** 55/9

**wishes [1]** 10/6

**within [7]** 4/8 8/10 11/18 14/5 14/7 33/15 38/11

**without [7]** 14/5 18/16 19/18 24/13 27/20 34/14 38/22

**witness [6]** 4/7 5/2 49/2 51/25 55/3 64/22

**word [1]** 25/23

**words [6]** 17/7 18/23 19/4 19/6 23/11 49/12

**work [5]** 5/25 6/1 7/5 8/3 27/17

**worked [5]** 6/2 6/8 7/9 7/16 39/11

**Workers' [1]** 7/17

**working [1]** 28/22

**works [1]** 11/9

**would [47]** 5/9 5/17 6/25 9/2 10/23 10/25 13/17 13/18 14/10 16/20 18/17 21/18 23/12 23/18 23/19 23/22 24/8 24/16 24/25 25/21 27/10 27/19 27/20 31/16 32/10 35/7 36/15 37/17 38/1 40/3 42/5 43/10 44/13 45/11 46/16 46/25 47/3 47/10 47/18 48/5 52/6 52/25 54/19 54/22 58/15 59/24 61/1

**wouldn't [1]** 21/8

**writing [2]** 61/7 61/7

**written [6]** 19/5 19/6 46/14 60/12 60/19 60/23

**wrote [3]** 23/11 28/17 32/2

# Y

**yeah [19]** 15/20 22/8 25/24 26/21 28/11 28/11 35/16 36/7 38/2 38/15

44/9 45/15 45/20 51/22 53/9 54/20 54/20 54/20 62/9

**year [19]** 8/18 9/10 13/16 13/17 21/16 22/9 24/18 24/19 25/21 25/21 47/17 47/17 48/3 48/18 49/1 49/8 49/23 49/23 49/24

**years [16]** 10/11 10/15 10/16 12/1 14/2 14/2 20/1 21/19 21/19 26/1 26/6 27/17 27/19 47/18 50/6 60/13

**yell [2]** 14/11 48/7

**yelled [2]** 20/15 20/18

**yelling [1]** 19/18

**yes [23]** 11/10 13/12 15/14 15/14 16/2 22/14 25/5 26/6 38/10 41/18 42/12 42/23 44/16 50/15 51/4 51/22 53/1 53/7 55/5 58/3 58/21 59/15 60/22

**YORK [9]** 1/1 1/15 1/17 1/24 6/8 6/15 6/17 7/1 66/5

**you [193]**

**you'd [2]** 44/10 56/12

**you're [9]** 16/25 19/23 24/1 26/13 32/20 48/21 54/18 58/23 64/10

**you've [3]** 56/8 57/25 58/1

**your [20]** 5/10 7/19 11/11 12/19 18/8 20/7 23/13 26/15 37/13 44/12 46/11 48/20 53/14 56/14 58/4 61/2 62/24 63/1 63/4 63/13

**yourself [2]** 5/18 56/15

# Z

**zone [4]** 63/10 63/15 63/21 64/2

| | |
|---|---|
| **From:** | chris shepherd <syrvmguy@hotmail.com> |
| **Sent:** | Monday, June 16, 2014 10:27 AM |
| **To:** | White, Sam; Naylor, Patrick; Roach, Mary Beth |
| **Cc:** | The Rev. Doctor Bruce Carter; Jayme Martin; pkehoe@live.com |
| **Subject:** | Pride Parade 6/21/14 |
| **Attachments:** | Parade Neighbors Notice.doc |

**Importance:** High

I am waiting for an email with your insurance certicicates naming the City as an additional insured for the Parade and festival which i expect to have shortly and will foward immediately to you.

This confirms that Sam White from the City of Syracuse and I have discussed moving the step off location one block westward for this parade owing to construction and access at 690/W. Genessee offramp near Plum Street. I understand and we both agree to this change in the interest of saftey.

This should leave unchanged our request use of the sidewalks at the end of the route surrounding the immediate perimiter of the entrance to Inner Harbor Park, as we have added security there per a request from the city Parks Department.

I do need some professional guidance from SPD on redirecting the staging/sign in of the parade and if Sgt Naylor or a responsible designee would please discuss this with me I would be grateful. 380-6445 cell or 435-2411.

It appears the following becomes our revised route.... This does pass two residential units on Leavenworth...and I do need advice on that, too.

- The same area of Belden/Plum for line-up just turned 180 degrees to walk down Belden to Leavenworth,
- One block on Leavenworth,
- one block W Genesee,
- then the remainder on Van Rensalier .

Let me also mention again the need for the officers who work this assignment to be vigilant about the small number of individuals or protesters intruding on the parade route as happened in 2012 when this general route for the parade was last used.

Attached is the notice we delivere Thursday/Friday along the Parade route, revised for this year.

THANK YOU both for your assistance and I look forward to continuing to work well with you.

*PC - 0284-14* (vertical, right margin)

1



PERMIT # _____

## SYRACUSE POLICE DEPARTMENT
### PARADE/PUBLIC ASSEMBLY PERMIT
### (CITY ORDINANCE SECTION 16-35)

| Requesting Organization:<br>CNY PRIDE, INC. | Name of Applicant/Representative<br>Chris Shepherd, Chair Parade |
|---|---|
| Address:<br>POBOX608, Syr. NY 13217 | Address:<br>212 W. Molloy Rd  Syr. 13211 |
| Phone Business:<br>315-254-2386 / 315-380-1720 | Phone Business:<br>315-435-2411 |
| Phone Home: | Phone Home:<br>315-380-6445 |
| E-mail<br>contact page @ cnypride.wix.com | E-mail<br>syrvmguy@ hotmail.com |

Date of Application: 6-6-13   Reason/ Purpose of Application: Annual Parade

**PARADE APPLICATION:**
Formation location: Belden & Plum Streets   Dispersal location: Inner Harbor Park

Day/Date: SAT June 21   Start Time: 10Am   Finish Time: 1/30

Parade Route: See "attached"

Continued _____   Sound System: YES ____ NO ____

Estimated Number of Participants: 400   # of Motor Vehicles (See requirements on reverse): 5

**PUBLIC ASSEMBLY APPLICATION :**
Explain the Public Assembly (concert, protest, demonstration etc) as part of above

Date(s) of Assembly: SAT JUNE 21   Start Time: 11 AM   Finish Time: 5 PM

Location(s) of
Assembly: Sidewalks bordering Kirkpatrick
Street @ Inner Harbor park For security.   Expected # of Participants:
Estimated Maximum # 1000
Estimated Minimum # 3500

Sound System: YES X N/A NO ____   Speakers, names: NONE No speakers @ sidewalks

Date of Issuance _____

Special Events Section C. O. _____

Uniform Bureau Deputy Chief_____

******* Police Stipulations _____ if checked see attached sheet



PC-0284-14

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD)  0061

## NOTICE TO PARADE/PUBLIC ASSEMBLY PERMIT APPLICANTS

Applicant/Authorized Representative, please be advised that the Syracuse Police Department does not provide police services free of charge for Parades/Public Assembly's where officers have to be brought in to cover the event. There will not be a charge for Police services when the Department determines that based on the size or type of event, routine patrol functions are sufficient. The Special Events Section will review the Police deployment and associated costs with the applicant (via telephone or face to face meeting) before the permit is issued.

The expense for each Officer will be based on the current hourly overtime rate. The number of officers assigned to an event will be determined by the Police Department taking into consideration the type of event, location of event, alcohol being served, the number of participants and the level of street usage approved for the event. The event organizer will be required to reimburse the Syracuse Police Department for Police deployment associated with the event within 30 days of receiving the invoice for services rendered.

The Syracuse Police Department shall determine if the Parade/Assembly requires the closure of the entire street, ½ the street or no closure of the street. Participants may be directed to use the sidewalk, based on the day of the week, time of day, and participant's safety.

Two events will not be allowed to use the same route/assembly location without written permission of both requesting organizations and the approval of the Syracuse Police Department.

### VEHICLE PARTICIPATION

Any motor vehicle participating in the any parade or public assembly must meet all New York State Vehicle & Traffic rules & regulations including valid registration, current insurance coverage, current NYS Inspection and the vehicle must be operated by a driver licensed to operate the type of motor vehicle involved. Proof of this requirement must be available for all vehicles and all drivers at the time of the event and must be produced if a Syracuse Police Officer so requests. Any motor vehicle or driver who does not have such proof on the day of the event will not be allowed to participate in the event.

***This permit can be revoked due to emergency conditions that may arise before or during the course of the event for which granted, or for violations of any of the following regulations.***

1) The applicant should carry a copy of this permit on his/her person during the event and will be designated as the contact person available to Police Officers for the transmission of messages or directions to all persons participating or attending the event. If the applicant is not going to be on scene then another individual must carry the permit and make his position known to the Police Officers on scene.

2) All persons participating in or attending the event shall obey the lawful commands of any Police Officer and shall conduct themselves in a lawful manner at all times.

3) Parades/processions will proceed at a constant pace and shall not be stopped (unless agreed to in advance, with the Police) except upon direction of the Police.

4) All sections/groups in a parade/procession shall remain in close proximity to each other and will not step out of line to perform independent maneuvers.

5) The normal flow of traffic shall not be deterred except in instances where a Police Officer performs this disruption.

6) If the actual number of participants exceeds the estimated maximum number of participants to the point where the Syracuse Police Department feels the assigned police coverage is not adequate to provide for a safe environment for the participants or the public in general , the Police Department can, at its discretion, delay or cancel the event if.

Contact Information:

Name: Chris Shepherd    Address: CNY Pride PO 6608 Syr 13217

Telephone Daytime: 315-435-2411    Other Telephone: 315-380-6445

E-mail: syrvm guy@hotmail.com

Signature: _Chris Shepherd_    Title: Parade chair

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD)  0062

PC-0284-14



Same route used 2012.

Barricades needed at Belden, Spencer, Kirkpatrick St.

note. Sidewalk area on North side of Kirkpatrick across
from Parks facility needed for security


DEPOSITION
EXHIBIT
Gewanter 3
5/2/17

**Long, Todd**

| | |
|---|---|
| **From:** | Barrie Gewanter <bgewanter@nyclu.org> |
| **Sent:** | Friday, June 05, 2015 7:15 PM |
| **To:** | pkluge@syracusepolice.org; White, Sam |
| **Cc:** | bholtman@syracusepolice.org; josephdoyle@syrgov.net; chris shepherd; dbcarter@syr.edu; jsweeney@syracusepolice.org |
| **Subject:** | Draft Permit REquests for Pride Flag Raising, Parade, Line Up, and Portion of Sidewalks adjacent to Driveway Into Festival |
| **Attachments:** | CNY Pride.2015.Draft Permit Req 1.Flag Raise 6.15.pdf; CNY Pride.2015.Draft Permit Req 2.Street Close for Line Up & Parade6.20.pdf; CNY Pride.2015.Draft Permit Req 3.Sdwalk Next to Fest Drvwy.6.20.pdf |

To: Officer Kluge - Syracuse Police / Sam White - Syracuse Permits Office
CC: Lt. Holtman - Syracuse Police / Joe Doyle - Corporation Counsel / Chris Shepherd & Bruce Carter - CNY Pride

Officer Kluge and Mr. White,

We have an appt for a meeting with you at Police HQ on Monday at 10am to review the permit requests for the Pride Flag Raising and Parade.
This email should serve as confirmation of that meeting. The attachments are documents for discussion at this meeting.

We all agreed to this meeting to ensure that the language on the permit requests will provide the police with the bases they need for law enforcement purposes on those days.
We wanted t make sure that the permits clearly delineate the physical and sound spaces for which CNY Pride is looking for exclusive use during the related events. We also wanted to ensure continuity of communication given changes in personnell and permitting processes over the years.

Additionally, in the past, police command officers deployed for this detail have indicated that the language in the permits are crucial to their ability to deal fairly and effectively with situations created when counter protestors show up with a bullhorn or attempt to be in close proximity to Pride participants. We greatly appreciate the assistance the police provide to Pride participants during the parade and festival. We want to make sure that the permit language provides these officers with what they need to protect and serve everyone that day.

In preparation for this meeting, please find the attached draft permit requests. I will also bring 4 hardcopies of these permit requests with me.

Request 1 - Is an Assembly Request for the flag raising on Monday June 15. This includes a request for exclusive use of sound amplification during this event.

Request 2 - Is a Street Closing Request Forms for the Parade Line Up on Plum and W. Belden AND the related Assembly and Parade Permit Request. Note: We are working on the insurance certificate, and will bring a check for the street closing application fee with us on monday. This includes a requst for exclusive use of sound amplification during this period.

Request 3 - Is an Assembly Request for a portion of the sidewalks on either side of the Driveway into the Festival in Inner Harbor Park on the N. Side of Kirkpatrick. Note that we are not asking for the City to close the entire sidewalk adjacent to the Festival on Kirpatrick, only 15-20 feet on either side of the driveway. Any counter protestor could still stand on the sidewalk and express their message, just not right on top of the people coming into and leaving the festival at the driveway entrance. This should reduce the kind of friction and confrontation that has occurred at that location in past

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD) 0242

years that has required police attention. Any such counter-protester would still have adequate proximity to his intended audience, but constitutional precedent doesn't require that such a counter-protestor be allowed to be immediately adjacent to his audience. This request also includes a request for exclusive use of sound amplification during the Festival hours.

We look forward to the discussion on Monday

Barrie

Barrie Gewanter
Director - Central NY Chapter
of the NY Civil Liberties Union (ACLU)
731 James St., Suite 205
Syracuse, NY. 13203
bgewanter@nyclu.org
www.nyclu.org/regions/central

Check out our chapter's Facebook page! https://www.facebook.com/cnyclu

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD) 0243


DEPOSITION EXHIBIT
Gerwanter 4
5/2/17    EN

PERMIT # _____

**SYRACUSE POLICE DEPARTMENT**
**PARADE/PUBLIC ASSEMBLY PERMIT**
**(CITY ORDINANCE SECTION 16-35)**

| Requesting Organization:<br>CNY PRIDE, INC | Name of Applicant/Representative CNY PRIDE BOARD MEMBER +<br>CHRIS SHEPHERD, CHAIR OF PARADE |
|---|---|
| Address:<br>P.O. BOX 6608<br>SYRACUSE, NY 13217 | Address:<br>212 W. MOLLOY RD<br>SYRACUSE, NY 13211 |
| Phone Business:<br>315-254-2386/ 315 380 1720 | Phone Business:<br>315-435-2411 |
| Phone Home: | Phone Home:<br>315-380-6445 |
| E-mail<br>contactpage@cnypride.wix.com | E-mail<br>syrvm guy @hotmail.com * |

Date of Application: 6/6/15    Reason/ Purpose of Application: ANNUAL CNY PRIDE PARADE

**PARADE APPLICATION:**
Formation location: W. BELDEN + PLUM ST    Dispersal location: INNER HARBOR PARK
Day/Date: SAT JUNE 20, 2015    LINE UP /SETUP    PARADE START 11:00 AM
Start Time: 10:00 AM    Finish Time: 11:30 AM
Parade Route: SEE ATTACHED MAP — PLUM + W. GENESEE TO VAN RENSSELAER
Continued TO W. KIRKPATRICK    Sound System: YES X NO

Estimated Number of Participants: 4-500    # of Motor Vehicles (See requirements on reverse): 8-10

(WE REQUEST EXCLUSIVE USE OF SOUND AMPLIFICATION ALONG PARADE ROUTE, ON KIRKPATRICK AND
**PUBLIC ASSEMBLY APPLICATION:** ON VAN RENSSELAER AT END OF PARADE PERIOD AND
Explain the Public Assembly (concert, protest, demonstration etc)    AT DISPERSAL POINT)
↳ LINE UP/SET UP FOR PRIDE PARADE
Date(s) of Assembly: SAT JUNE 20    Start Time: 10:00    Finish Time: 11:30
2015

Location(s) of PLUM ST AT
Assembly: PLUM + W GENESEE TO W BELDEN    Expected # of Participants: 4-500
AND W. BELDEN TO KIRKPATRICK    Estimated Maximum # 500
Estimated Minimum # 350

✓ Sound System: YES X NO ___ Speakers, names: _____
WE REQUEST EXCLUSIVE USE OF SOUND AMPLIFICATION WITHIN AND ADJACENT
TO PERMITTED AREA DURING
SPECIFIED TIME

Date of Issuance _____

Special Events Section C. O. _____

Uniform Bureau Deputy Chief _____

PC-0329-15

******* Police Stipulations _____ if checked see attached sheet    (315) 569-6334

* PLEASE SEND COMMUNICATIONS ALSO TO bgewanter@nyclu.org

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD)  0140

## NOTICE TO PARADE/PUBLIC ASSEMBLY PERMIT APPLICANTS

Applicant/Authorized Representative, please be advised that the Syracuse Police Department does not provide police services free of charge for Parades/Public Assembly's where officers have to be brought in to cover the event. There will not be a charge for Police services when the Department determines that based on the size or type of event, routine patrol functions are sufficient. The Special Events Section will review the Police deployment and associated costs with the applicant (via telephone or face to face meeting) before the permit is issued.

The expense for each Officer will be based on the current hourly overtime rate. The number of officers assigned to an event will be determined by the Police Department taking into consideration the type of event, location of event, alcohol being served, the number of participants and the level of street usage approved for the event. The event organizer will be required to reimburse the Syracuse Police Department for Police deployment associated with the event within 30 days of receiving the invoice for services rendered.

The Syracuse Police Department shall determine if the Parade/Assembly requires the closure of the entire street, ½ the street or no closure of the street. Participants may be directed to use the sidewalk, based on the day of the week, time of day, and participant's safety.

Two events will not be allowed to use the same route/assembly location without written permission of both requesting organizations and the approval of the Syracuse Police Department.

## VEHICLE PARTICIPATION

Any motor vehicle participating in the any parade or public assembly must meet all New York State Vehicle & Traffic rules & regulations including valid registration, current insurance coverage, current NYS Inspection and the vehicle must be operated by a driver licensed to operate the type of motor vehicle involved. Proof of this requirement must be available for all vehicles and all drivers at the time of the event and must be produced if a Syracuse Police Officer so requests. Any motor vehicle or driver who does not have such proof on the day of the event will not be allowed to participate in the event.

***This permit can be revoked due to emergency conditions that may arise before or during the course of the event for which granted, or for violations of any of the following regulations.***

1) The applicant should carry a copy of this permit on his/her person during the event and will be designated as the contact person available to Police Officers for the transmission of messages or directions to all persons participating or attending the event. If the applicant is not going to be on scene then another individual must carry the permit and make his position known to the Police Officers on scene.

2) All persons participating in or attending the event shall obey the lawful commands of any Police Officer and shall conduct themselves in a lawful manner at all times.

3) Parades/processions will proceed at a constant pace and shall not be stopped (unless agreed to in advance, with the Police) except upon direction of the Police.

4) All sections/groups in a parade/procession shall remain in close proximity to each other and will not step out of line to perform independent maneuvers.

5) The normal flow of traffic shall not be deterred except in instances where a Police Officer performs this disruption.

6) If the actual number of participants exceeds the estimated maximum number of participants to the point where the Syracuse Police Department feels the assigned police coverage is not adequate to provide for a safe environment for the participants or the public in general , the Police Department can, at its discretion, delay or cancel the event if.

**Contact information:**

Name: _CHRIS SHEPHERD_  Address: _CNY PRIDE  PO BOX 6608  SYRACUSE, NY 13217_

Telephone Daytime: _315-435-2411_  Other Telephone: _315-380-6445_

E-mail _SYrvm guy @ hotmail.com  AND  bgewanter @nyclu.org_

Signature: _Chris Shepherd_  Title: _PARADE CHAIR_

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD)  0141

PC - 0329 - 15



# N O T I C E

~~Tomorrow, Saturday, June 20th, the Annual CNY Pride Parade will be held.~~

Between 10am and 11:30am tomorrow, the participants in the Pride Parade will assemble and line up on Plum Street (from W. Genesee to W. Belden) and on W. Belden St (from Kirkpatrick to Plum). These streets will be temporarily closed for this purpose during that time. CNY Pride has sought and received a permit from the City to do this.

The Pride Parade will begin between 11am and 11:15am on W. Genesee at Plum Street The Parade will progress west along Genesee in the 600 and 700 blocks of W. Genesee Street, and then turn right on Van Rensselaer Street to proceed towards the Inner Harbor Park and Amphitheatre on Kirkpatrick Street. CNY Pride has sought and received a permit from the City to do this.

The Syracuse Police Department will close the westbound lanes of traffic on W. Genesee in these blocks for a few minutes before 11am until the last parade participants have turned onto Van Rensselaer St. The parade should pass through this point by 11:30am.

Following the parade, there will be a lively Festival at the Inner Harbor Park. This will include musical acts, a comedian, and numerous vendors and food booths. You are most welcome to drop by.

Dr. Bruce Carter, President CNY Pride Inc.

Christopher Shepherd, Parade Chair

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD) 0142

PC-0284-14

PC-0329-15



Same route used 2012.

Barricades needed at Belden, Spencer, Kirkpatrick St.

note. Sidewalk area on North side of Kirkpatrick ~~20 feet on EITHER SIDE OF DRIVEWAY~~ TO INNER HARBOR PARK

~~20 feet on EITHER SIDE OF DRIVEWAY~~ on North side of Kirkpatrick

~~Gate Parks Security~~ needed for security + FIRST AMENDMENT ACTIVITIES

DURING PARADE + FESTIVAL HOURS

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD)  0143

PRIDE
3
REQUEST



PERMIT #_____

Requesting Organization: **CNY PRIDE, INC.**

Name of Applicant/Representative **CNY PRIDE BOARD + CHRIS SHEPHERD, CHAIR PARADE**

Address: **P.O. BOX 6608**
**SYRACUSE, NY 13217**

Address: **212 W. MOLLOY RD**
**SYRACUSE, NY 13211**

Phone Business: **315-254-2386 / 315-380-1726**

Phone Business: **315-435-2411**

Phone Home:

Phone Home: **315-380-6445**

E-mail **Contact page @ cnypride.wix.com**

E-mail **syrvmguy@hotmail.comm** *

Date of Application: **6/6/15**   Reason/ Purpose of Application: **FIRST AMENDMENT ACTIVITIES AT ENTRANCE TO PRIDE FESTIVAL**

**PARADE APPLICATION:**
Formation location: _____   Dispersal location: _____

Day/Date: _____   Start Time: _____   Finish Time: _____

Parade Route: _____

Continued _____   Sound System: YES ____ NO ____

Estimated Number of Participants: _____   # of Motor Vehicles (See requirements on reverse): _____

**PUBLIC ASSEMBLY APPLICATION :**
Explain the Public Assembly (concert, protest, demonstration etc) **FESTIVAL ENTRY LOCATION**

Date(s) of Assembly: **SAT JUNE 20, 2015**   Start Time: **10:30 AM**  Finish Time: **5:00 PM**

Location(s) of Assembly: **DRIVEWAY INTO INNER HARBOR PARK ON KIRKPATRICK AND ADJACENT SIDEWALKS FOR 20 FT TO EITHER SIDE OF DRIVEWAY ON N. SIDE OF KIRKPATRICK.** *

Expected # of Participants: **3000**
Estimated Maximum # **3500**
Estimated Minimum # **1000**

Sound System: YES **X** NO ____ Speakers, names: **ORGANIZERS + PERFORMERS (WITHIN FESTIVAL GROUNDS ADJACENT TO THIS LOCATION)**

WE REQUEST EXCLUSIVE USE OF SOUND AMPLIFICATION ON THIS PORTION OF THESE SIDEWALKS AND ON SIDEWALK DIRECTLY ACROSS STREET (TO S.) ON KIRKPATRICK DURING SPECIFIED HOURS

Date of Issuance _____

Special Events Section C. O. _____

Uniform Bureau Deputy Chief _____

Police Stipulations _____ if checked see attached sheet

* WE REQUEST EXCLUSIVE USE OF THIS LOCATION FOR ACCESS TO FESTIVAL SITE DURING FESTIVAL, FOR SET UP TIME, + FOR FIRST AMENDMENT ACTIVITIES RELATED TO FESTIVAL + PARTICIP.

* ALSO SEND COMMUNICATIONS ON THIS TO bgewarter

TO bgewarter

## NOTICE TO PARADE/PUBLIC ASSEMBLY PERMIT APPLICANTS

Applicant/Authorized Representative, please be advised that the Syracuse Police Department does not provide police services free of charge for Parades/Public Assembly's where officers have to be brought in to cover the event. There will not be a charge for Police services when the Department determines that based on the size or type of event, routine patrol functions are sufficient. The Special Events Section will review the Police deployment and associated costs with the applicant (via telephone or face to face meeting) before the permit is issued.

The expense for each Officer will be based on the current hourly overtime rate. The number of officers assigned to an event will be determined by the Police Department taking into consideration the type of event, location of event, alcohol being served, the number of participants and the level of street usage approved for the event. The event organizer will be required to reimburse the Syracuse Police Department for Police deployment associated with the event within 30 days of receiving the invoice for services rendered.

The Syracuse Police Department shall determine if the Parade/Assembly requires the closure of the entire street, ½ the street or no closure of the street. Participants may be directed to use the sidewalk, based on the day of the week, time of day, and participant's safety.

Two events will not be allowed to use the same route/assembly location without written permission of both requesting organizations and the approval of the Syracuse Police Department.

## VEHICLE PARTICIPATION

Any motor vehicle participating in the any parade or public assembly must meet all New York State Vehicle & Traffic rules & regulations including valid registration, current insurance coverage, current NYS Inspection and the vehicle must be operated by a driver licensed to operate the type of motor vehicle involved. Proof of this requirement must be available for all vehicles and all drivers at the time of the event and must be produced if a Syracuse Police Officer so requests. Any motor vehicle or driver who does not have such proof on the day of the event will not be allowed to participate in the event.

***This permit can be revoked due to emergency conditions that may arise before or during the course of the event for which granted, or for violations of any of the following regulations.***

1) The applicant should carry a copy of this permit on his/her person during the event and will be designated as the contact person available to Police Officers for the transmission of messages or directions to all persons participating or attending the event. If the applicant is not going to be on scene then another individual must carry the permit and make his position known to the Police Officers on scene.

2) All persons participating in or attending the event shall obey the lawful commands of any Police Officer and shall conduct themselves in a lawful manner at all times.

3) Parades/processions will proceed at a constant pace and shall not be stopped (unless agreed to in advance, with the Police) except upon direction of the Police.

4) All sections/groups in a parade/procession shall remain in close proximity to each other and will not step out of line to perform independent maneuvers.

5) The normal flow of traffic shall not be deterred except in instances where a Police Officer performs this disruption.

6) If the actual number of participants exceeds the estimated maximum number of participants to the point where the Syracuse Police Department feels the assigned police coverage is not adequate to provide for a safe environment for the participants or the public in general , the Police Department can, at its discretion, delay or cancel the event if.

**Contact information for Billing Purposes:**

Name: CHRIS SHEPHERD  Address: CNY PRIDE. Po Box 6608 SYR 13217

Telephone Daytime: 315-435-2411  Other Telephone: 315-380-6445

E-mail  SYRVangwy @ hotmail.com

Signature: _____  Title: PARADE CHAIR
+ CNY PRIDE BOARD
MEMBER

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD) 0247


DEPOSITION
EXHIBIT
Gewater 6
5/2/17 DHR

PRIDE
3
REQUEST

PERMIT # _____

## SYRACUSE POLICE DEPARTMENT
## PARADE/PUBLIC ASSEMBLY PERMIT
### (CITY ORDINANCE SECTION 16-35)

| Requesting Organization: | Name of Applicant/Representative: CNY PRIDE BOARD + |
|---|---|
| CNY PRIDE, INC. | CHRIS SHEPHERD, CHAIR PARADE |
| Address: P.O. BOX 6608 | Address: 212 W. MOLLOY RD |
| SYRACUSE, NY 13217 | SYRACUSE, NY 13211 |
| Phone Business: 315-254-2386 / 315-380-1726 | Phone Business: 315-435-2411 |
| Phone Home: | Phone Home: 315-380-6445 |
| E-mail: Contact page @ cnypride.wix.com | E-mail: syrvmguy @ hotmail.com * |

Date of Application: 6/6/15    Reason/ Purpose of Application: FIRST AMENDMENT ACTIVITIES
AT ENTRANCE TO PRIDE FESTIVAL

### PARADE APPLICATION:
Formation location: _____   Dispersal location: _____

Day/Date: _____   Start Time: _____   Finish Time: _____

Parade Route: _____

Continued _____   Sound System: YES ____ NO ____

Estimated Number of Participants: _____   # of Motor Vehicles (See requirements on reverse): _____

PC-030-15

### PUBLIC ASSEMBLY APPLICATION :
Explain the Public Assembly (concert, protest, demonstration etc) FESTIVAL ENTRY LOCATION

Date(s) of Assembly: SAT JUNE 20, 2015   Start Time: 10:30 AM   Finish Time: 5:00 PM

Location(s) of Assembly: DRIVEWAY INTO INNER HARBOR PARK ON KIRKPATRICK AND ADJACENT SIDEWALKS FOR 40 FT TO EITHER SIDE OF DRIVEWAY ON N. SIDE OF KIRKPATRICK.

Expected # of Participants: 3000
Estimated Maximum # 3500
Estimated Minimum # 1000

Sound System: YES X NO ____ Speakers, names: ORGANIZERS + PERFORMERS
(WITHIN FESTIVAL GROUNDS ADJACENT TO THIS LOCATION)

WE REQUEST EXCLUSIVE USE OF SOUND AMPLIFICATION ON THIS PORTION OF THESE SIDEWALKS AND ON SIDEWALK DIRECTLY ACROSS STREET (TO S) ON KIRKPATRICK DURING SPECIFIED HOURS

Date of Issuance _____

Special Events Section C. O. _____

Uniform Bureau Deputy Chief _____

********Police Stipulations _____
if checked see attached sheet

* WE REQUEST EXCLUSIVE USE OF THIS LOCATION FOR ACCESS TO FESTIVAL SITE DURING FESTIVAL, FOR SET UP TIME, + FOR FIRST AMENDMENT ACTIVITIES RELATED TO FESTIVAL + PARTIES

* ALSO SEND COMMUNICATIONS TO bgewanter @ ...

## NOTICE TO PARADE/PUBLIC ASSEMBLY PERMIT APPLICANTS

Applicant/Authorized Representative, please be advised that the Syracuse Police Department does not provide police services free of charge for Parades/Public Assembly's where officers have to be brought in to cover the event. There will not be a charge for Police services when the Department determines that based on the size or type of event, routine patrol functions are sufficient. The Special Events Section will review the Police deployment and associated costs with the applicant (via telephone or face to face meeting) before the permit is issued.

The expense for each Officer will be based on the current hourly overtime rate. The number of officers assigned to an event will be determined by the Police Department taking into consideration the type of event, location of event, alcohol being served, the number of participants and the level of street usage approved for the event. The event organizer will be required to reimburse the Syracuse Police Department for Police deployment associated with the event within 30 days of receiving the invoice for services rendered.

The Syracuse Police Department shall determine if the Parade/Assembly requires the closure of the entire street, ½ the street or no closure of the street. Participants may be directed to use the sidewalk, based on the day of the week, time of day, and participant's safety.

Two events will not be allowed to use the same route/assembly location without written permission of both requesting organizations and the approval of the Syracuse Police Department.

### VEHICLE PARTICIPATION

Any motor vehicle participating in the any parade or public assembly must meet all New York State Vehicle & Traffic rules & regulations including valid registration, current insurance coverage, current NYS Inspection and the vehicle must be operated by a driver licensed to operate the type of motor vehicle involved. Proof of this requirement must be available for all vehicles and all drivers at the time of the event and must be produced if a Syracuse Police Officer so requests. Any motor vehicle or driver who does not have such proof on the day of the event will not be allowed to participate in the event.

**\*\*\*This permit can be revoked due to emergency conditions that may arise before or during the course of the event for which granted, or for violations of any of the following regulations.\*\*\***

1) The applicant should carry a copy of this permit on his/her person during the event and will be designated as the contact person available to Police Officers for the transmission of messages or directions to all persons participating or attending the event. If the applicant is not going to be on scene then another individual must carry the permit and make his position known to the Police Officers on scene.

2) All persons participating in or attending the event shall obey the lawful commands of any Police Officer and shall conduct themselves in a lawful manner at all times.

3) Parades/processions will proceed at a constant pace and shall not be stopped (unless agreed to in advance, with the Police) except upon direction of the Police.

4) All sections/groups in a parade/procession shall remain in close proximity to each other and will not step out of line to perform independent maneuvers.

5) The normal flow of traffic shall not be deterred except in instances where a Police Officer performs this disruption.

6) If the actual number of participants exceeds the estimated maximum number of participants to the point where the Syracuse Police Department feels the assigned police coverage is not adequate to provide for a safe environment for the participants or the public in general , the Police Department can, at its discretion, delay or cancel the event if.

**Contact information for Billing Purposes:**

Name: _CHRIS SHEPHERD_ Address: _CNY PRIDE PO BOX 6608 SYR 13217_

Telephone Daytime: _315-435-2411_    Other Telephone: _315-380-6445_

E-mail _SYRVmguy @ hotmail.com_

Signature: _Chris Shepherd_    Title: _PARADE CHAIR_
_+ CNY PRIDE BOARD MEMBER_

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD)  0135

PC-030-15



Department of Neighborhood & Business Development
Central Permit Office
Stephanie A. Miner, Mayor

## Public Assembly Plan Review Comments for Applicant
(Revised 07/15)

Location of Proposed Work:  N/A Kirkpatrick St W

Permit #: PC-0330-15                                      Permit Type: Public Assembly

Date:  06/14/2016

Contact:  CNY Pride, Inc.                                 Phone #:  315-706-1091

The departments below have reviewed your application and provided the following comments.
**Approval is subject to the conditions listed below.**

| Approval | Status Date | Status | Reviewer | Comments |
|---|---|---|---|---|
| Police Department - Special Events | 06/16/2015 | Approved | Paul Kluge | |
| Central Permit Office | 06/19/2015 | Conditionally Approved | Sam White | Applicant is granted exclusive control to the entry area into the inner harbor festival area as well as the 40-feet on either side of the northern portion of Kirkpatrick street for the limited purpose of allowing exclusive use of sound amplification and access to the festival |



DEPOSITION EXHIBIT
Debbie Gewanter 7
5/2/17  EAB

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD)  0133

MEETING AT PERMITS - PRIDE + SPD          5/20/16

MM
DB F.
J HOLTMAN
B. KLUGE
DUKANDA
JIM
R&B

PRIDE
ISSUES        NEW ROUTE!

BOUNDARY AT LINE UP SPACE  ⎤ EXCLUSIVE USE
DESTINY PARKING LOT        ⎦

EXCLUSIVE USE OF SIDEWALK
40' ON EITHER SIDE OF ENTRANCE
TO INNER HARBOR PARK

EXCLUSIVE USE OF SOUND AMPLIFICATION
ON THOSE SIDEWALKS + SIDEWALK
ACROSS THE STREET ON KIRKPATRICK

FESTIVAL AREA FENCED
+ RESTRICTED ACCESS

DEPOSITION
EXHIBIT
Seawater 8
5/4/17    CAB

WING NUT UPDATE + ANTICIPATING
                    ANTI-TRANS PROTESTS?

SAM:
① NEED TO FILL OUT ADDITION DOCS ⎤
                                   |
  1 APP COVER FESTIVAL + PARADE ←  |

  1 APP FOR EXCLUSIVE USE ASSEMBLY

SAM

② NOTIFICATION OF PEOPLE ALONG
ROUTE
- NOTIFY HOTEL
SAM TO IDENTIFY GC BY EMAIL

SAM

③ ROUTE MAP + TIMES
LINE UP 9 AM
PARADE
START 11          WRONG ON PERMIT
PARADE
END 12                    REQUEST

SAM

④ ONGOING LAWSUIT AGAINST CITY
50 PERMIT   BY RIGHT WING NUT  (PRELIM INJUNCTION)
APP.        ONLY INITIAL STAGES OF LAWSUIT
SEPARATE    OUTCOME SOON - MAY AFFECT 40!

⑤ FENCED IN - BOB STILL WAITING
                    ON BRITTANY IN PARKS
ONISE
                    LT SAYS CHECK W/ FIRE

PAROLE ⑥ ALTERCATION LAST YEAR
        W/ WING NUT.

        PRISC TRAINS PEOPLE NOT TO
        ENGAGE.

PARDY ⑦ HOW MANY OFFICERS NEED AT
        PARADE VS FESTIVAL - 2 DUTY OF ONE

BOB- TRY TO MAKE IT ONE DUTY TO REDUCE COSTS
OUTSIDE SECURITY IS CHESTNUT
SECURITY

KLUGE — ONE LOCATION —
CONVENIENT TO HAVE ONE
DUTY NOT 2

Same (8) SOUND AMPLIFICATION — DEPENDS ON
DECISION IN COURT

Police (9) CAN'T THROW THINGS FROM VEHICLES
IF HAND THINGS OUT ON PARADE
MAY BE EXTRA
DPW CHARGE STREET
CLEANING





DEPOSITION EXHIBIT
Gewander 9
5/12/17   ESK

PERMIT # _____

**SYRACUSE POLICE DEPARTMENT**
**PARADE/PUBLIC ASSEMBLY PERMIT**
**(CITY ORDINANCE SECTION 16-35)**

| Requesting Organization: CNY PRIDE, INC. | Name of Applicant/Representative: JAMES W. MARTIN II "JAYME" |
|---|---|
| Address: P.O. BOX 6608 SYRACUSE, NY 13217 | Address: 1412 TEALL AVE SYRACUSE, NY 13206 |
| Phone Business: 315-706-1091 | Phone Business: ~~xxx-xxx-xxxx~~ |
| Phone Home: | Phone Home: 315-706-1091 |
| E-mail INFO@CNYPRIDE.ORG | E-mail JAYME3@gmail.com |

Date of Application: 4/18/16   Reason/Purpose of Application: FIRST AMENDMENT ACTIVITIES AT ENTRANCE TO PRIDE FESTIVAL

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PARADE APPLICATION:**
Formation location: _____   Dispersal location: _____

Day/Date: _____   Start Time: _____   Finish Time: _____

Parade Route: _____

Continued _____   Sound System: YES ☐ NO ☑

Estimated Number of Participants: _____   # of Motor Vehicles (See requirements on reverse): _____

037-16

**PUBLIC ASSEMBLY APPLICATION :**
Explain the Public Assembly (concert, protest, demonstration etc)   FESTIVAL EVENT LOCATION(S)

Date(s) of Assembly: SAT 6/18/2016   Start Time: 10 AM   Finish Time: 5 PM

| | |
|---|---|
| Location(s) of Assembly: DRIVEWAY INTO INNER HARBOR PARK ON KIRKPATRICK + ADJACENT SIDEWALKS FOR TO GET TO EITHER SIDE OF DRIVEWAY ON NORTH SIDE OF OF KIRKPATRICK * | Expected # of Participants: 5000 Estimated Maximum # 5800 Estimated Minimum # 1000 |

◊ Sound System: YES ☒ NO ☐   Speakers, names: ORGANIZERS + PERFORMERS WITHIN FESTIVAL GROUNDS ADJACENT TO THIS LOCATION

WE REQUEST EXCLUSIVE USE OF SOUND AMPLIFICATION ON THIS PORTION OF THESE SIDEWALKS AND SIDEWALK DIRECTLY ACROSS STREET

Date of Issuance _____

Special Events Section C. O. _____

Uniform Bureau Deputy Chief _____

******* Police Stipulations _____   if checked see attached sheet

ON KIRKPATRICK ST DURING SPECIFIED HOURS

* WE REQUEST EXCLUSIVE USE OF THIS LOCATION FOR ACCESS TO FESTIVAL SITE DURING FESTIVAL AND SET UP TIME + 1ST AMENDMENT ACTIVITIES RELATED TO FESTIVAL PARTICIPANTS

James Defeno v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD)

Applicant/Authorized Representative, please be advised that the Syracuse Police Department does not provide police services free of charge for Parades/Public Assembly's where officers have to be brought in to cover the event. There will not be a charge for Police services when the Department determines that based on the size or type of event, routine patrol functions are sufficient. The Special Events Section will review the Police deployment and associated costs with the applicant (via telephone or face to face meeting) before the permit is issued.

The expense for each Officer will be based on the current hourly overtime rate. The number of officers assigned to an event will be determined by the Police Department taking into consideration the type of event, location of event, alcohol being served, the number of participants and the level of street usage approved for the event. The event organizer will be required to reimburse the Syracuse Police Department for Police deployment associated with the event within 30 days of receiving the invoice for services rendered.

The Syracuse Police Department shall determine if the Parade/Assembly requires the closure of the entire street, ½ the street or no closure of the street. Participants may be directed to use the sidewalk, based on the day of the week, time of day, and participant's safety.

Two events will not be allowed to use the same route/assembly location without written permission of both requesting organizations and the approval of the Syracuse Police Department.

### VEHICLE PARTICIPATION

Any motor vehicle participating in the any parade or public assembly must meet all New York State Vehicle & Traffic rules & regulations including valid registration, current insurance coverage, current NYS Inspection and the vehicle must be operated by a driver licensed to operate the type of motor vehicle involved. Proof of this requirement must be available for all vehicles and all drivers at the time of the event and must be produced if a Syracuse Police Officer so requests. Any motor vehicle or driver who does not have such proof on the day of the event will not be allowed to participate in the event.

**\*\*\*This permit can be revoked due to emergency conditions that may arise before or during the course of the event for which granted, or for violations of any of the following regulations.\*\*\***

**1)** The applicant should carry a copy of this permit on his/her person during the event and will be designated as the contact person available to Police Officers for the transmission of messages or directions to all persons participating or attending the event. If the applicant is not going to be on scene then another individual must carry the permit and make his position known to the Police Officers on scene.

**2)** All persons participating in or attending the event shall obey the lawful commands of any Police Officer and shall conduct themselves in a lawful manner at all times.

**3)** Parades/processions will proceed at a constant pace and shall not be stopped (unless agreed to in advance, with the Police) except upon direction of the Police.

**4)** All sections/groups in a parade/procession shall remain in close proximity to each other and will not step out of line to perform independent maneuvers.

**5)** The normal flow of traffic shall not be deterred except in instances where a Police Officer performs this disruption.

**6)** If the actual number of participants exceeds the estimated maximum number of participants to the point where the Syracuse Police Department feels the assigned police coverage is not adequate to provide for a safe environment for the participants or the public in general , the Police Department can, at its discretion, delay or cancel the event if.

PC-0374-16

### Contact information:

Name: JAMES W. MARTIN II  Address: 1442 TRALL AVE. SYRACUSE, NY 13206

Telephone Daytime: 315-706-1091   Other Telephone: _____

E-mail JAYME3 @ gmail.com

Signature: _____   Title: PRESIDENT

James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD)  0158



Department of Neighborhood & Business Development
<u>Central Permit Office</u>
Stephanie A. Miner, Mayor

## Public Assembly Plan Review Comments for Applicant
(Revised 07/15)

Location of Proposed Work: N/A Spencer St

Permit #: PC-0374-16                              Permit Type: Public Assembly

Date: 07/21/2016

Contact: CNY Pride, Inc.                           Phone #: 315-706-1091

The departments below have reviewed your application and provided the following comments.
**Approval is subject to the conditions listed below.**

| Approval | Status Date | Status | Reviewer | Comments |
|---|---|---|---|---|
| Police Department - Special Events | 06/10/2016 | Denied | Paul Kluge | Per Sam White.  Per Court decision. |



James Deferio v. City of Syracuse, et al. (5:16-cv-00361-LEK-TWD)  0156