**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES DEFERIO,**

                              **Plaintiff,**

        **v.**                                          **Civil Action No.: 5:16-CV-0361**
                                                        **(LEK/TWD)**

**CITY OF SYRACUSE; FRANK FOWLER,**
In his official capacity as Chief of Police for
the City of Syracuse Police Department, **JOSEPH**
**SWEENY**, individually and in his official
Capacity as Captain for the City of Syracuse
Police Department, and **JAMEY LOCASTRO,**
individually and in his official capacity as Sergeant
for the City of Syracuse Police Department,

                              **Defendants.**

_____

**MEMORANDUM OF LAW IN SUPPORT OF**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

                                                JOSEPH E. FAHEY, ESQ.
                                                Corporation Counsel
                                                Attorney for Defendant
                                                300 City Hall
                                                Syracuse, New York 13202
                                                (315) 448-8400

By:     Todd M. Long, Esq.
        Assistant Corporation Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

**PRELIMINARY STATEMENT** ...................................................................1

**STATEMENT OF FACTS** ............................................................................1

**STANDARD OF REVIEW** ...........................................................................1

**ARGUMENT** ...............................................................................................2

   I.   **PLAINTIFF'S ALLEGATIONS THAT DEFENDANTS VIOLATED HIS RIGHTS UNDER THE FIRST AMENDMENT SHOULD BE DISMISSED** ...............................................................................2

      A.   **Defendants did not Create a Policy By Issuance Of A Permit CNY Pride** ................................................................................2

         *i.  Plaintiff cannot establish that Defendants created a regulation by issuing CNY Pride permits in 2014 and 2015.* .............................2

         *ii.  Requests of CNY Pride are not attributable to Defendants.* .................3

      B.   **CNY Prides Permit Had Appropriate Time, Place, or Manner Regulations.** ..........................................................................4

         *i.  Content Neutrality.* .................................................................5

         *ii. Narrowly Tailored to Serve a Significant Government Interest.* ...........7

         *ii. Permits alternative channels for expression.* .......................................8

   II.  **PLAINTIFF'S DUE PROCESS VIOLATION CLAIMS SHOULD BE DISMISSED.** .......................................................................9

   III.  **DEFENDANT OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY** ...............................................................................11

    A.    **Defendant Officers Acted Reasonably on Understanding of Legal Permit.**...................................................................................13

    B.    **Defendant Officers Acted Reasonably Under the Totality of Circumstances.**...........................................................................15

IV.  **IF PLAINTIFF HAS STATED A *MONELL* CLAIM IT SHOULD BE DISMISSED.**.......................................................................18

    A.    **Plaintiff has failed to state a *Monell* claim under the standards of *Iqbal & Twombly*.**....................................................18

    B.    **Even if Plaintiff has stated a *Monell* claim, there is no question of fact as to the lack of policy or practice of a 40-foot buffer zone as alleged by Plaintiff.**................................................................20

V.  **PLAINTIFF'S CLAIMS OF OFFICIAL CAPACITY SHOULD BE DISMISSED.**.......................................................................25

**CONCLUSION**..................................................................25

# TABLE OF AUTHORITIES

**Cases:**

*Akinnagbe v. City of New York*, 128 F. Supp 3d 539 (EDNY 2015) ............................................16

*All Aire Conditioning, Inc. v. City of New York*, 979 F Supp 1010 (SDNY 1997), affd, 166 F3d 1199 (2d Cir 1998)............................................................................................................................10

*Amidon v Student Ass'n of State Univ. of New York*, 399 F Supp 2d 136 (NDNY 2005), affd sub nom. *Amidon*, 508 F3d 94 (2d Cir 2007) .......................................................................................2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).......................................................................1

*Arizona v. Evans*, 514 U.S. 1 (1995).................................................................................................13

*Ashcroft v. Iqbal*, 556 US 662 (2009) ...........................................................................10, 18, 19

*Beal v. Stern*, 184 F3d 117 (2d Cir 1999) ........................................................................................3

*Bell Atl. Corp.v. Twombly*, 550 US 544 (2007) ...........................................................10, 18, 19

*Bernard v. United States*, 25 F.3d 98 (2d Cir. 1994) .......................................................................13

*Betancourt v. Bloomberg*, 448 F3d 547 (2d Cir 2006) ...................................................................9

*Bible Believers v. Wayne County, Mich.*, 805 F3d 228 (6th Cir 2015)...................................16, 17

*Bl(a)ck Tea Socy. v. City Of Boston*, 378 F3d 8 (1st Cir 2004)......................................................16

*Boykin v. Keycorp*, 521 F.3d 202 (2d Cir. 2008) ..................................................................... FN1

*Bracci v. Becker*, 2013WL123810 (NDNY 2013)...........................................................................10

*Bradley v. City of New York*, 2009 WL 1703237 (EDNY 2009)......................................20, 21, 22

*Brown v. Henderson*, 257 F3d 246 (2d Cir. 2001)............................................................................2

*Cantwell v. State of Connecticut*, 310 U.S. 296 (1940) .........................................................15, 17

*Castro v. United States*, 34 F. 3rd 106 (2d Cir. 1994) .....................................................................13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................1

*City of Canton Ohio v. Harris*, 489 US 387 (1989)...............................................................20, 22, 23

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986).......................................................................21

*City of Oklahoma v. Tuttle*, 471 U.S. 808 (1985) ........................................................24

*Cohen v. California*, 403 US 15 (1971) ...............................................................16, 17

*Costello v City of Burlington*, 632 F3d 41 (2d Cir 2011) ...........................6, 7, 13, 14, 15

*Davis v. United States*, 131 S. Ct. 2419 (2011) ..........................................................13

*Deegan v. City of Ithaca*, 444 F.3d 135 (2d Cir.2006) .............................................5, 7

*Diener v. Reed*, 77 Fed Appx 601 (3d Cir 2003) ...........................................................4

*Dwares v. City of New York,* 985 F.2d 94 (2d Cir. 1993) .................................22, 23, 24

*Field Day, LLC v County of Suffolk*, 2005 WL 2445794 (EDNY 2005),
affd, 463 F3d 167 (2d Cir 2006) .............................................................................13

*Forsyth County, Ga. v. Nationalist Movement*, 505 US 123 (1992) .......................2, 3, 4

*Fowler v. Kingston City Police Dept.*, 2009 WL 3064775 (NDNY 2009) ......................2

*Giano v. Senkowski*, 54 F.3d 1050 (2d Cir. 1995) .........................................................1

*Grayned v. Rockford*, 408 U.S. 104 (1972) ..........................................................15, 17

*Hafez v. City of Schenectady, 894 FSupp2d 207 (NDNY 2012)* ..................................10

*Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640 (1981) .....................5, 9

*Jean-Laurent v. Wilkerson*, 461 Fed Appx 18 (2d Cir 2012) .......................................25

*Kennedy v. City of Albany*, 2015 WL 6394513 (NDNY 2015) .....................................25

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986) ................................................2

*Kolender v. Lawson,* 461 U.S. 352 (1983) ...................................................................10

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995) ..............................................................12

*Luna v. Pico*, 356 F.3d 481 (2d Cir 2004) ...................................................................12

*Lusk v. Vil. of Cold Spring*, 475 F3d 480 (2d Cir 2007) ........................................10, 11

*Marcavage v. City of New York*, 918 F Supp 2d 266 (SDNY 2013) ...........................6, 7

*Marcavage v. City of Syracuse*, 2013 WL 3788569 (NDNY 2013) ...............................6

*Marinaccio v. Boardman*, 2007 WL 748441 (NDNY 2007)...........................................................12

*Mastrovincenzo v. City of New York*, 435 F3d 78 (2d Cir 2006)...................................................6, 9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................................1

*McCullen v. Coakley*, 134 S Ct 2518 (2014) ...................................................................................8

*Mercado v. City of New York*, 2011 WL 6057839 (SDNY 2011) ..................................................20

*Monell v. Departments of Social Services*, 436 U.S. 658 (1978)............. 3, 18, 19, 20, 21, 23, FN1

*Odom v. Matteo*, 772 F.Supp.2d 377 (DConn 2011) ....................................................................25

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)....................................................................23

*People v. Stephens*, 28 NY3d 307 (2016) .....................................................................................14

*Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002) ..............................................................................12

*Pritchard v. Town of New Hartford*, 2016WL4523986 (NDNY 2016) .................................3, 6, 21

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ..........................................................................16

*Rivera v. City of Yonkers*, 2007 WL 143033 (SDNY 2007) ........................................................24

*Saucier v. Katz*, 533 US 194 (2001) ......................................................................................12, 13

*Scotto v. Almenas*, 143 F3d 105 (2d Cir. 1998).............................................................................2

*Segal v. City of New York*, 459 F.3d 207 (2d Cir.2006) ..............................................................21

*Sistrunk v. City of Strongsville*, 99 F3d 194 (6th Cir 1996).........................................................4

*Smylis v. City of New York*, 983 F Supp 478 (SDNY 1997)........................................................10

*Stefanoni v. Darien Little League, Inc.*, 101 FSupp3d 160 (D. Conn 2015) ................................4

*Sweirkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)................................................................. FN1

*Thomas v. Chicago Park Dist.*, 534 US 316 (2002) .......................................................................7

*Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999)..........................................................................12

*Tongue v. Sanofi*, 2016 WL 851797 (2d Cir. 2016).....................................................................18

*Tunick v. Safir*, 209 F3d 67 (2d Cir 2000) ...................................................................3

*U.S. v. Erie County, NY*, 724 F Supp 2d 357 (WDNY 2010) ......................................19

*U.S. v. Grace*, 461 US 171 (1983) ...............................................................................5

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)...........................18

*Velardi v. Walsh*, 40 F.3d 569 (2d Cir. 1994) ............................................................13

*Walker v. City of Birmingham*, 388 U.S. 307 (1967).............................................15, 23

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ...................................5, 9, 8, 9, 16

*World Wide St. Preachers' Fellowship v. Reed*, 430 F.Supp.2d 411 (M.D. Pa 2006)....................4

*Yu Juan Sheng v. City of New York*, 2009WL6871132 (EDNY 2009)..........................10

*Zalaski v. City of Hartford*, 462 Fed Appx 13 (2d Cir 2011) .........................4, 9, 16, 18

**Rule:**

FED R. CIV. P. 56(c)..................................................................................................1

FED R. CIV. P. RULE 8 ........................................................................................10, 19

42 U.S.C. § 1983................................................................3, 19, 20, 21, 22, 25

City of Syracuse Revised General Ordinances, Section 1-3.........................................11

## PRELIMINARY STATEMENT

On March 31, 2016, Plaintiff filed a Verified Complaint ("Complaint") alleging that Defendants violated his freedom of speech and religious expression through their alleged policies and practices of creating a 40-foot buffer zone that incorporates a public sidewalk, and that this policy is vague, in violation of the First and Fourteenth Amendments of the U.S. Constitution. For the reasons that follow, Defendants respectfully request that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's Complaint in its entirety with prejudice.

## STATEMENT OF FACTS

The facts, circumstances, and grounds on which Defendants seek the relief requested are set forth in Defendants' "Statement of Material Facts Not In Dispute" ("SMF").

## STANDARD OF REVIEW

In order to succeed on summary judgment, Defendants must show that the "pleadings, depositions, answers to interrogatories, and admissions on file… show that there is no genuine issue as to any material fact and that [they] are entitled to judgment as a matter of law." FED R. CIV. P. 56(c). The Court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Giano v. Senkowski*, 54 F.3d 1050, 1052 (2d Cir. 1995). If the moving party demonstrates the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), then the burden shifts to the nonmoving party to prove that a genuine issue of material fact exists for trial, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The opponent cannot overcome summary judgment by merely raising "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or relying on "on mere speculation or conjecture as to the true nature of the facts

1

to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). The opponent must "come forth with evidence sufficient to allow a reasonable jury to find in her favor," *Brown v. Henderson*, 257 F3d 246, 252 (2d Cir.2001), and "may not rely on conclusory allegations or unsubstantiated speculation" to show that a genuine issue as to a material fact exists. *Fowler v. Kingston City Police Dept.*, 2009 WL 3064775, at *3 (NDNY 2009)(quoting *Scotto v. Almenas*, 143 F3d 105, 114 (2d Cir. 1998)).

## ARGUMENT

### I.  PLAINTIFF'S ALLEGATIONS THAT DEFENDANTS VIOLATED HIS RIGHTS UNDER THE FIRST AMENDMENT SHOULD BE DISMISSED.

Plaintiff's First Cause of Action alleges Defendants violated the Plaintiff James Deferio's ("Plaintiff") religious expression by allegedly creating a "40-foot buffer zone that incorporates a public sidewalk," (Dkt. No. 1, ¶ 101) that occurred on June 21, 2014 and June 20, 2015.

#### A.  Defendants did not Create a Policy By Issuance Of A Permit CNY Pride.
##### i.  *Plaintiff cannot establish that Defendants created a regulation by issuing CNY Pride permits in 2014 and 2015.*

Defendants note that during the course of discovery, the issues have been narrowed and Defendants in good faith take the position that, in fact, Defendants approval of a private-entity's permit for a public park is not in of itself a defined and standing administrative regulation executively or legislatively instituted by the City as argued in the City's opposition to Plaintiff's motion for a preliminary injunction. *See* Dkt. Nos. 14, 15.  Rather, the record establishes that Defendants role was limited to its own permitting authority with regard to public assemblies in public parks. Plaintiff has not challenged the permitting ordinance in his pleadings. *See, e.g., Amidon v Student Ass'n of State Univ. of New York*, 399 FSupp2d 136, 148 (NDNY 2005), affd sub nom. *Amidon*, 508 F3d 94 (2d Cir 2007); *Forsyth County, Ga. v. Nationalist Movement*, 505

2

US 123 (1992). Courts have held "that government, in order to regulate competing uses of public forums, may impose a permit requirement on those wishing to hold a march, parade, or rally." *Beal v. Stern*, 184 F3d 117, 124 (2d Cir 1999) (quoting, *Forsyth County*, 505 U.S. at 130); *Tunick v. Safir*, 209 F3d 67, 91 (2d Cir 2000) (Court ruled cities may require licensing with special procedures for expressive conduct).

Here, there is no regulatory or statutory schema or focus upon which Defendants can be accused of having implemented the alleged policy of a 40-foot buffer zone. Rather, Plaintiff's speculative allegations are that the permit granting itself to a private party for use of a public park and portions of the right away is proof of an alleged *policy* granting "a private entity over speech on public property." *See* Long Aff., Ex. LL, Resp. No. 6, 7; Ex. MM, Resp. No. 5. Plaintiff plainly could not, and has not, established that the underlying statute granting permits is itself unconstitutional (whether in any alleged abridgment of free speech of vagueness). Id. In the absence of a statute, established regulation, ordinance, local law, or instituted written and applied policy (*see* Dkt. No. 1, ¶¶ 1, 93), Plaintiff's causes of action are left without a sufficiently stated claim pursuant to 42 USC § 1983. *See Pritchard v. Town of New Hartford*, 2016WL4523986, at *2 (NDNY 2016) (citing, *Monell v. Departments of Social Services*, 436 U.S. 658, 693 (1978)). Plaintiff merely speculates as to the existence of a 40-foot buffer zone and banning speech on a public sidewalk (*see* Dkt. No. 1, ¶¶ 1, 81, 101, 104) as a uniform policy or custom—with no evidence of codification or thrust of established law—but the established material facts in the record do not substantiate the allegations. *See* Dkt. No. 15; *see* Point IV (*Monell*), below.

### ii.  Requests of CNY Pride are not attributable to Defendants.

A municipality may apply "exclusive use" to a public park, effectively regulating

competing uses of public forums, and may impose a permit requirement on those wishing to hold a march, parade, or rally. *See Forsyth County*, 505 US 123 at 130; *see, eg., Zalaski v. City of Hartford*, 462 Fed Appx 13, 15 (2d Cir 2011); *Sistrunk v. City of Strongsville*, 99 F3d 194, 198 (6th Cir 1996); *Diener v. Reed*, 77 Fed Appx 601 (3d Cir 2003); *Stefanoni v. Darien Little League, Inc.*, 101 FSupp3d 160 (D. Conn 2015). A permit holder's request for certain boundaries cannot plainly be imputed or attributed to the state actor. *See, e.g., World Wide St. Preachers' Fellowship v. Reed*, 430 F.Supp.2d 411 (M.D. Pa 2006)(City's application of permit ordinance giving permit holder authority to decide who allowed in permitted area, even if content based is permit holder's decision to admit or exclude and not state action). Although Plaintiff alleges that Defendants' policies and practices of creating a 40-foot buffer improperly "granted a private entity over speech on public property," (Dkt. No. 1, ¶ 101), Plaintiff must show that CNY Pride's actions are attributable to the City by CNY Pride being fairly understood as a state actor. *See Stefanoni*, 101 FSupp3d at 172–73 (internal quotation omitted). Here, Plaintiff relies upon unsubstantiated speculation that Defendants' permit is attributable to a state act, or that CNY Pride is a state actor; however, the record has established that permit drafting and application was in the strict purview and at the pleasure of CNY Pride. *See* Long Aff., Ex. I; Ex. A, pp. 17-22; Ex. B, pp. 7, 36, 41; Ex. CC; *see also* SMF, ¶¶ 10, 78-84. For the forgoing reasons, Plaintiff's Complaint should be dismissed in its entirety.

**B.**     **CNY Prides Permit Had Appropriate Time, Place, or Manner Regulations.**

Even assuming, *arguendo*, Defendants had a policy or practice of creating and/or enforcing an alleged 40-foot buffer zone, and that any alleged policy could be inferred to be pursuant to a regulation itself imposing such a policy in these two issuances of a permit to a

4

private entity (*see* Dkt. No. 1, ¶ 101) the permits were Constitutional.

Although oral and written dissemination of religious views are entitled to First Amendment protection (*see Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981)), and "public places" such as sidewalks are considered "public forums," government can regulate these public places. *See U.S. v. Grace*, 461 US 171, 177 (1983). Government may permissibly restrict expressive conduct through the enforcement of reasonable time, place, and manner regulations (*see id.*), and, as noted above, can regulate competing uses of public forums through the imposition of a permit requirement for that use. The regulations will withstand constitutional scrutiny so long as they are "(1) content neutral, in that they target some quality other than substantive expression; (2) narrowly tailored to serve a significant governmental interest; and (3) permit alternative channels for expression." *Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir.2006) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

As an initial matter, for all three portions of the *Ward* test above, here, Frank Fowler ("Chief Fowler") played no individual role in the events that occurred on and/or before the 2014 and 2015 CNY Pride festivals, having had no personal familiarity with either event. *See* Long Aff., Ex. HH, Ex. A thereto, Resp. Nos. 6, 9. Furthermore, Chief Fowler verified that he did not have personal involvement in any alleged activity of establishing a "policy" of creating a 40-foot buffer zone policy at public events "empowering a private entity with a heckler's veto." Dkt. No. 1, ¶ 1.

### i. *Content Neutrality.*

To determine if a restriction is content-neutral, the Court inquires whether the regulation "is justified without reference to the content of the regulated speech." *Marcavage v. City of New*

*York*, 918 FSupp2d 266, 270 (SDNY 2013) (quoting, *Mastrovincenzo v. City of New York*, 435 F3d 78, 98 (2d Cir 2006)). A regulation that "serves purposes unrelated to the content of expression" may be deemed content-neutral, "even if it has an incidental effect on some speakers or messages but not others." *See Ward*, 491 U.S. at 791. Where "it appears that the regulations on amplified speech and leafleting (both as written and as applied to Plaintiffs)" they are deemed "content neutral." *Marcavage v. City of Syracuse*, 2013 WL 3788569, at *4 (NDNY 2013); *see e.g., Costello v City of Burlington*, 632 F3d 41 (2d Cir 2011) (noise ordinance, as applied to preacher, did not burden substantially more speech than was necessary to achieve city's goal of curbing excessive noise); *Pritchard*, 2016WL4523986 (Court found for code enforcement officer when no evidence he "did anything beyond enforce a constitutional, content-neutral Town ordinance" when he ordered Plaintiff to remove campaign sign from lawn).

In *Marcavage v. City of New York*, the Plaintiff alleged violations of his First and Fourteenth Amendments in restrictions on sound amplification devices.  With regard to content neutrality, the Court ruled that because of the "potentially harmful secondary effects of speech," the Sound Amplification Devices Code provisions there regarding permit applications were content-neutral. 918 FSupp2d at 270.

Here, in 2014, on the face of the permit there is no restriction listed based on content with respect to CNY Pride's festival permit. *See* Long Aff., Ex. V, Ex. 1.  Furthermore, the permit only states that there are "no speakers @ sidewalks," that includes only those "sidewalks bordering KirkPatrick [sic] Street @ Inner Harbor park for security." *See* id.  Even though both Defendant Jamey Locastro ("Sgt. Locastro") and Mr. Shepherd testified that they interpreted "speakers" to refer to sound amplification devices (*see* Long Aff., Ex. A, pp. 35-36; id., V, ¶ 15),

assuming the definition to include or refer to persons speaking, there is no indication as to content of the sound amplification or speaking that would be restricted in that part of the permitted park area.  *See* id. Ex. V, Ex. 1.  Thus, the permit on its face was content neutral.  *See* id. Here, as for the 2015 CNY Pride festival permit, it is clear that Defendants went to great lengths so as to maintain the content neutrality of the permit.  *See* SMF, ¶¶ 82-84. Of note, City Defendant only conditionally approved CNY Pride's permit with a content-neutral prescription for: "exclusive control to the entry area into the Inner Harbor festival area, as well as the 40-feet on either side of the northern portion of Kirkpatrick street for the limited purpose of allowing exclusive use of sound amplification and access to the festival." SMF, ¶ 84.  Here, bolstered by *Marcavage*, the permit itself when dealing with sound amplification is content-neutral.

### ii. Narrowly Tailored to Serve a Significant Government Interest.

A time, place or manner regulation must be narrowly tailored to serve a significant governmental interest. *See Deegan*, 444 F.3d at 142. The "'essence of narrow tailoring' is having the regulation 'focus [ ] on the source of the evils the city seeks to eliminate ... and eliminate [ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.'"  *Marcavage*, 918 FSupp2d at 271 (internal quotes omitted). "Decision-making standards must be provided; a content-neutral permitting scheme regulating speech in a public forum is not an unconstitutional prior restraint if it 'contain[s] adequate standards to guide the official's decision and render it subject to effective judicial review.'" Id., (quoting, *Thomas v. Chicago Park Dist.*, 534 US 316, 323 (2002)). A municipality's interest in protecting the public health, safety and welfare of individuals using a public forum is a valid governmental objective. *See, e.g., Costello*, 632 F3d at 45 (holding that noise control ordinance

to "preserve the public health, safety, and welfare of its residents," narrowly tailored); *Marcavage v. City of New York*, 689 F3d 98 (2d Cir 2012) ("Courts in this Circuit have regularly recognized the City of New York's interest in regulating amplified sound"); *cf. McCullen v. Coakley*, 134 S Ct 2518 (2014) (Court found statute, not content-neutral permit, imposing a buffer zone was not sufficiently narrowly tailored).

Here, in 2014, the permit itself was narrowly tailored to serve a significant government interest.  Mr. Shepherd testified that after conferring with the City's Park's Department, the City Park's Department requested security for CNY Pride's request for "sidewalks bordering KirkPatrick [sic] Street @ Inner Harbor park for security" for the purpose of crowd control "ID'ing the crowd," as there would be alcohol served there.  Long Aff, Ex. A, p. 25, ll. 11-24; id., p. 25, ll. 21-24. Mr. Shepherd testified that, for that reason of properly "ID'ing," CNY Pride was asked by the Parks Department "to have added security there [at the entrance of the Inner Harbor on Kirkpatrick Street]."  Id.; *see also* SMF, ¶ 61. Here, in 2015, the permit was, unlike the case in *McCullen* (which is not comparable because it is a state statute and not a permit at issue), narrowly tailored not to limit speech but like *Marcavage* to regulate the ill-effects of sound amplification.  *See* id., ¶¶ 81-85.  In fact, had Plaintiff not created a safety risk to himself at the entry to the Inner Harbor, Plaintiff would have, unlike *McCullen*, be able to exercise speech in the alleged "buffer zone" without his sound amplification equipment. *See* id., ¶ 104; *see also* Long Aff., Ex. C, p. 26, ll. 9-17.

### iii.  Permits alternative channels for expression.

A valid time, place or manner regulation should leave open ample alternative channels of communication, *See Ward,* 491 U.S. at 802, but the "First Amendment does not guarantee the

right to communicate one's views at all times and places or in any manner that may be desired." *Heffron* 452 U.S. at 647. These alternative channels need not be a "perfect substitute for those channels denied to plaintiffs by the regulation." *See Mastrovincenzo*, 435 F.3d at 101. Even if the government's regulations "may reduce to some degree the potential audience" for protected speech, a regulation will be held valid if there is no showing that alternative remaining avenues of communication are inadequate. *See Ward*, 491 U.S. at 802-03.

Here, there is no question of fact as to Plaintiff's opportunities in both 2014 and 2015 to have an alternative channel of expression. Like the case of *Zalaski*, below, Plaintiff's modest movement across the street from the Inner Harbor entrance on West Kirkpatrick Street, without being arrested, and freely allowed to keep his sign and continue to preach during both years of the festival, was clearly an ample alternative channels of communication. *See* SMF, ¶¶ 76-77, 104, 107; *see also* Long Aff., Ex. J, pp. 260-262. For the forgoing reasons, Plaintiff's Complaint should be dismissed in its entirety as a matter of law.

## II.    PLAINTIFF'S DUE PROCESS VIOLATION CLAIMS SHOULD BE DISMISSED.

Plaintiff's Second Cause of Action alleges that the "policies and practices of granting a private party power over speech on public property, creating a 40-foot buffer zone that incorporates a public sidewalk, and resultantly banning expression on public sidewalk bordering Inner Harbor during Pride Festivals, are vague and lack sufficient objective standards to curtail the discretion of city officials and police officers." Dkt. No. 1, ¶ 104.

The Due Process Clause of the Fourteenth Amendment requires that laws be crafted with sufficient clarity to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and to "provide explicit standards for those who apply them." *Betancourt v.*

*Bloomberg*, 448 F3d 547, 552–54 (2d Cir 2006) (internal quotes omitted). "The clarity of a statute that does not involve First Amendment freedoms is to be evaluated on an 'as applied' basis." *All Aire Conditioning, Inc. v. City of New York*, 979 FSupp 1010, 1016–17 (SDNY 1997), affd, 166 F3d 1199 (2d Cir 1998) (internal quote omitted). "A civil statute is not impermissible under this standard unless its commands are 'so vague and indefinite as really to be no rule or standard at all.'" *Id*. "Regulations need not, however, achieve 'meticulous specificity,' which would come at the cost of 'flexibility and reasonable breadth.'" *Kolender v. Lawson,* 461 U.S. 352, 357-58 (1983) (internal quotation omitted). "The degree of vagueness that the Constitution tolerates-as well as the relative importance of fair notice and fair enforcement-depends in part on the nature of the enactment." *Id*. Courts have frequently applied matters regarding due process and vagueness when dealing with codified statutes, codes, instituted regulations, and established procedures. *See, e.g., Smylis v. City of New York*, 983 FSupp 478 (SDNY 1997) (NY GML); *Lusk v. Vil. of Cold Spring*, 475 F3d 480 (2d Cir 2007) (local law governing the issuance of permits subject to vagueness analysis, not the permit itself); *Bracci v. Becker*, 2013WL123810 (NDNY 2013) (NYCRR code); *Hafez v. City of Schenectady*, 894 FSupp2d 207 (NDNY 2012) (City Code); *Yu Juan Sheng v. City of New York*, 2009WL6871132 (EDNY 2009) (procedures for serving and filing summonses for parking violations).

 As an initial matter, pursuant to *Iqbal* & *Twombly* (below), Plaintiff failed in his pleading to provide even "a short and plain statement [under Rule 8]" that is anything more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," regarding alleged vagueness in his Complaint, and, therefore Plaintiff fails to state a claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 55 U.S. at 555); *see also* Dkt. No. 1, ¶¶ 101, 104, 105. Plaintiff never says how each permit or their

application is "vague," alleging that an unproven policy or custom is "vague and lack sufficient objective standards to curtail the discretion of city officials and police officers." *See id.*, ¶ 104. Here, rather than alleging that a specific statute or scheme for the issuing of permits itself is unconstitutionally vague, Plaintiff alleges the alleged policy itself is vague. *See Lusk*, 475 F3d 480; *see also* Point I(A)(i), above. Even assuming, *arguendo*, that Plaintiff properly pled his claim and the issuance of the permit itself is deemed as a sufficient "statute" or instituted regulatory system, it is neither facially vague nor vague as-applied. The 2014 permit, as enforced by Sgt. Locastro as plainly written, is not vague with time, space, and manner prescriptions. *See* Long Aff., Exs. T, V. Plaintiff asserts that Sgt. Locastro improperly claimed that "the grassy area was within the 'curtilage' of the sidewalk." Dkt. No. 1, ¶ 48. Sgt. Locastro was in fact correct, as the City of Syracuse defines a "sidewalk" to include curtilage: "any portion of a street or highway between the curbline . . . and the adjacent property line, intended for the use of pedestrians." Long Aff., Ex. NN, Section 1-3 "Sidewalks." There cannot be vague application where the ordinance definition of a sidewalk was applied by Sgt. Locastro. *See* id.

Here the 2015 festival permit is not vague as a matter of law as it was clear in its time, place, and manner parameters, including in key party: limitation of sound amplification use in a defined space around a defined geographical area, or that the area is to be used for entry and exit of the festival. *See* Long Aff., Ex. BB, Ex. 1 thereto. For the forgoing reasons, Plaintiff's Complaint should be dismissed in its entirety as a matter of law.

## III.   DEFENDANT OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

Assuming, *arguendo*, the Court finds that Defendant officers acted in relation to Plaintiff in 2014 and 2015 pursuant to a permit and established policy or custom that was allegedly

11

unconstitutional—Defendants are still entitled to qualified immunity because "government officials performing discretionary functions" are not liable for damages if their conduct does not violate a clearly established constitutional right of which a reasonable person would have known. *Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995). Even where a plaintiff's federal rights are clearly established, the official's conduct is still protected if it was "objectively reasonable" for the official to believe that his actions were reasonable at the time of his actions. *Id*. The doctrine assists in "relieving an officer's fear of personal liability and frivolous litigation that will unduly prohibit an officer in the discharge of their duties." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Saucier v. Katz*, 533 US 194 (2001). Thus, generally public officials will be entitled to qualified immunity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Marinaccio v. Boardman*, 2007 WL 748441, at *3 (NDNY 2007) (quotation omitted). The actions of a public official "must be viewed as objectively reasonable unless 'no [official] of reasonable competence could have male [*sic*] the same choice in similar circumstances.'" *Marinaccio*, 2007 WL 748441, at *3 (internal quotation omitted). Thus, "[i]f there is a material question of fact as to the relevant surrounding circumstances, the question of objective reasonableness is for the jury[, but i]f there is no material question of fact, the court decides the qualified immunity issue as a matter of law." *Id*., (internal citation omitted); *see, e.g.*, *Luna v. Pico*, 356 F.3d 481 (2d Cir 2004) (a state official who violates a plaintiff's constitutional rights is protected if he objectively and reasonably believed that he was acting lawfully); *Poe v. Leonard*, 282 F.3d 123, 131-132 (2d Cir.2002) (the conduct of the

defendant is "evaluated for objective reasonableness based upon the information the officers had when the conduct occurred."); *Costello*, 632 F3d at 52 (officer was entitled to qualified immunity from preacher's First Amendment claim, since it was reasonable for officer, 22-year veteran of police department, to believe that preacher's conduct was in violation of noise ordinance).

### A.   <u>Defendant Officers Acted Reasonably on Understanding of Legal Permit</u>.

"Generally, the Second Circuit has held that a government officer is entitled to presume that the law he enforces is constitutional." *Field Day, LLC v County of Suffolk*, 2005 WL 2445794, at *15 (EDNY 2005), affd, 463 F3d 167 (2d Cir 2006) (citations omitted). When a police officer is acting pursuant to a written document, such as a warrant, which is facially valid, the officer is entitled to qualified immunity when it contains either technical or factual errors, as a good-faith exception. *See Velardi v. Walsh*, 40 F.3d 569, 575 (2d Cir. 1994) (qualified immunity even if warrant's identifications were erroneous and led to search of wrong house); *Davis v. United States*, 131 S. Ct. 2419, 2424, 2429 (2011) (applying good faith exception where police reasonably rely on "binding appellate precedent" that is later overturned); *Arizona v. Evans*, 514 U.S. 1, 15–16 (1995) (extending good-faith exception to police reliance on court clerk's out-of-date computer records). Even under the good-faith exception, when the officer is mistaken as to what the law required, he is entitled to qualified immunity as long as his mistake was reasonable under the circumstances. *See Saucier*, 533 U.S. at 205-06; *Castro v. United States*, 34 F. 3rd 106, 112 (2d Cir. 1994); *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (good faith exception for probable cause when relied on mistaken information).

Here, Sgt. Locastro's actions are protected by Qualified Immunity because he was relying upon his understanding of a legally-issued permit, *see* Long Aff., Ex. V, which he obtained in

13

advance of the 2014 festival, *see* Long Aff., Ex. V, ¶ 14. Sgt. Locastro knew the permit to be facially valid and legally approved by the Central Permit Office for CNY Pride's 2014 festival at the Syracuse Inner Harbor. *See id.*, ¶ 15.  Here, like in *Costello*, he had a reasonable, good faith belief that the parameters of the permit were, therefore, enforceable; this could have resulted in an arrest for disorderly conduct and for being in violation of the City's constitutional noise ordinance. *See* 632 F3d at 52; Long Aff., Ex. E, pp. 31, 33; *see also People v. Stephens*, 28 NY3d 307 (2016). According to Sgt. Locastro's reasonable and good faith understanding of the approval process, the permit was approved as to legality by City officials, and, therefore, he had no reason to believe that its parameters were illegal or unauthorized. *See id.*, pp. 21-22. Thus, asking Plaintiff to move across the street from the Inner Harbor entrance to safely express his opinion outside the permitted area was a reasonable and in good faith.  *See* Long Aff, Ex. V, ¶ 17.

Here, Defendant Joseph Sweeny's ("Capt. Sweeny") actions are protected by Qualified Immunity because he was relying upon his understanding of a legally-issued permit. *See* Long Aff., Ex. BB.  As was his custom and practice, he met with SPD's permitting officer for the June 20, 2015 CNY Pride festival, who informed him of a legally enforceable area of forty feet to the entrance of the Inner Harbor for the exclusive use of sound amplification equipment and access to the festival. *See id.*, ¶¶ 9-11. As a result of this briefing, he had a reasonable and good faith basis to believe that the permit parameters were approved by a proper legal authority in the City of Syracuse, and that it was a legally binding document whose terms were enforceable. *See id.*, ¶ 12. Capt. Sweeny recalls that he encountered Plaintiff using his sound amplification equipment within the forty-foot zone in violation of what he understood to be a legally enforceable permit. *See id.*, ¶

14

16, 17, 20, 21. Like *Costello*, Capt. Sweeny believed that Plaintiff was in violation of the permit and City's noise ordinance with his use of his sound amplification equipment. *See* id., ¶ 20; *see also* Long Aff., Ex. C, pp. 32-34. Thus, asking Plaintiff to move across the street from the Inner Harbor entrance to use his sound amplification equipment outside the permitted area was reasonable and in good faith regardless of Plaintiff's allegations of the permit's illegality. *See* id., pp. 20-22.

### B.   Defendant Officers Acted Reasonably Under the Totality of Circumstances.

Courts have consistently recognized the strong interest of state and local governments in regulating the use of their streets and other public places. *Walker v. City of Birmingham*, 388 U.S. 307, 315 (1967). "When protest takes the form of . . . picketing on public streets and sidewalks, the free passage of traffic and the prevention of public disorder and violence become important objects of legitimate state concern." *Walker*, 388 U.S. at 316. "The offense known as 'breach of the peace' embraces a great variety of conduct destroying or menacing public order and tranquility" and "[i]ncludes not only violent acts but acts and **words likely to produce violence in others**." *Cantwell v. State of Connecticut*, 310 U.S. 296, 308 (1940)(emphasis supplied). "When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious." *Id*. "If overamplified loudspeakers assault the citizenry, the government may turn them down," and "where demonstrations turn violent, they lose their protected quality as expression under the First Amendment." *Grayned v. Rockford*, 408 U.S. 104, 116 (1972). "Offensive statements made generally to a crowd are not excluded from First Amendment protection; the insult or offense must be directed specifically at an individual."

*Bible Believers v. Wayne County, Mich.*, 805 F3d 228, 246 (6th Cir 2015) (citing, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 432 (1992)); accord *Cohen v. California*, 403 US 15, 20 (1971) (defining fighting words as a "direct personal insult"). "[A] **spontaneous police order** to demonstrators to relocate can be viewed through the lens of the time, place and manner doctrine." *Akinnagbe v. City of New York*, 128 F. Supp 3d 539, 548 (EDNY 2015) (emphasis supplied). In the First Amendment context "[a]ll that is required is that the 'risk to public safety [be] substantial and real' instead of merely 'symbolic.'" *Marcavage*, 689 F.3d at 105 (internal quotes omitted). "[I]t is 'appropriate' for governments to consider possible security threats and the role that protesters may play in causing such threats or inadvertently preventing the authorities from thwarting or responding to such threats." *Id.* (internal quote omitted). "As long as a designed security protocol reduces a plausible and substantial safety risk, it directly and effectively advances a substantial government interest." *Id.*; *see e.g., Bl(a)ck Tea Socy. v. City Of Boston*, 378 F.3d 8, 13 (1st Cir 2004) ("[T]he government's judgment as to the best means for achieving its legitimate objectives deserves considerable respect." (citing *Ward,* 491 U.S. at 798–99)); *Zalaski*, 723 F.3d at 382 ("activists were holding large banner, positioned partially in front of clearly visible point of ingress and egress… officer never attempted to silence or delay protected speech but merely to relocate it by modest distance of approximately 20 feet… officer was entitled and obliged to assess risks presented from totality of circumstances to accommodate… interests of all concerned").

Here, Plaintiff has an established history of verbal and physical altercations at events which he preaches, (*see* SMF, ¶¶ 10, 11, 13-15, 21(f), 49, 50, 52, 55, 57-59, 90)—even being threatened with death (*see* id., ¶ 21(n))—advocating violence and perpetrating violence (*see* id., ¶

16

17, 20, 54), and in particular in actively disrupting CNY Pride events (*see* id., ¶¶ 12, 26, 34, 43-45, 47, 48, 54, 105), which have caused him to be at risk for his own safety and that of members of the public (*see* id.)  Plaintiff's statement to "not harass anyone," (Dkt. No. 1, ¶¶ 18-20) is contradicted by sentiment he has expressed to the public (*see* SMF 18-21) and directed at individuals (*see* id., ¶ 21(b), 22, 23, 24) (*see* Cantwell).

On June 20, 2015, Plaintiff insulted festivalgoers from the moment he arrived (*see* id., ¶¶ 85, 86), and then had an altercation with an unknown male (*see* id.).  *See Cantwell*, 310 U.S. 296. Plaintiff then directed verbal insults to individual festivalgoers in his vicinity (*see* SMF, ¶¶ 89, 90).  *See Bible Believers*, 805 F3d at 246; *Cohen*, 403 US at 20. As a result, Plaintiff was subject to unwelcomed physical assault (*see* SMF, ¶¶ 89, 90, 91, 96, ), and ultimately  punched in the face (*see* id., ¶¶ 90-95), which led to him to be fearful for his own safety (*see* id., ¶ 95) and later pressing charges against the male assailant (*see* id., ¶¶ 108-113). When Capt. Sweeny—whose objective was to safely separate Plaintiff from an agitated crowd—was able to remove him from the threatening situation, *see* id., ¶¶ 97-104,Plaintiff admitted his intention to disrupt the CNY Pride festival as an uncivil event. *See* id., ¶ 44, 105.  Here, like in *Grayned*, while Plaintiff was exercising his use of speech with an overamplified loudspeaker that Capt. Sweeny reasonably believed was in violation of the City's noise ordinance and CNY Pride's permit (*see* Long Aff., Ex. BB, ¶ 20; *see* SMF, ¶¶ 102, 103), the event became violent and lost its protected quality under the First Amendment. Here, given the real risk to public safety under the circumstance foregoing, Capt. Sweeny asked Plaintiff to move citing a substantial safety risk to Plaintiff, to which Plaintiff did by his own volition.  *See* id., ¶¶ 101, 104. Plaintiff was never denied the ability to continue preaching, thus accommodating Plaintiff's desire to express his opinions

while addressing a legitimate safety concern in which Capt. Sweeny had a substantial interest to resolve as commanding officer of the SPD detail. *See* id., ¶¶ 106-107. Capt. Sweeny also was to serve Plaintiff's interest of safety by mitigating an exigent situation at the entrance of the Inner Harbor in order to have him and Ofc. Burlingame a safe and undisturbed space to perform a sufficient investigation as to the circumstances of the assault on Plaintiff. *See* id., ¶¶ 106-113.

On June 21, 2014, Sgt. Locastro was presented with similar exigent circumstances. *See* id., ¶¶ 62-77. Sgt. Locastro was informed that Plaintiff was in violation of CNY Pride's permit, but upon arrival Sgt. Locastro was presented to a situation in which he reasonably believed Plaintiff's safety was at risk. *See* id., ¶¶ 65-66. Sgt. Locastro, in his experience knew that the situation as it presented itself could result in further physical harm had he not acted to create space between Plaintiff and festivalgoers. *See* id., ¶¶ 70, 71, 74. Sgt. Locastro also had concerns, given his reasonable reading of the permit and the City's own ordinances, about Plaintiff's use of sound amplification equipment. *See* SMF, ¶ 75; Long Aff., Ex. E, pp. 31, 33. Here, like *Zalaski*, Plaintiff was never told he could not continue to exercise his speech and, in fact, remained in the area of the festival for an additional four hours preaching. *See* Long Aff., Ex. V, ¶¶ 18-19; id., Ex. 2. Consequently, Defendants are entitled to qualified immunity.

## IV.   IF PLAINTIFF HAS STATED A *MONELL* CLAIM IT SHOULD BE DISMISSED
### A.   Plaintiff has failed to state a *Monell* claim under the standards of *Iqbal & Twombly*.

Although "[t]he facts alleged in the complaint are assumed to be true," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir.2015), the court must examine the complaint for "'facial plausibility,' considering whether the 'factual content' 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tongue v. Sanofi*,

2016 WL 851797, at *6 (2d Cir.2016) (internal quotes omitted).  FRCP Rule 8's "statement of the claim" requirement holds that "a short and plain statement . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). This statement must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 545. Under the two-pronged *Iqbal* approach to examining the sufficiency of the complaint, "[f]irst, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away." *Erie County*, 724 F. Supp. 2d at 368 (*citing Iqbal*, 556 U.S. at 679). "Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they 'plausibly give rise to an entitlement to relief.'" *Id*.  Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.[1]

As for the first prong, Plaintiff alleges that there is a policy or practice to empower a private entity by creating a 40-foot buffer zone that allegedly banned Plaintiff's speech. *See* Dkt. No. 1, ¶ 1. Yet the Complaint does not provide an *indicia* of alleged fact to support the allegation that the City and/or any specific policymaker had an "established" (id., ¶ 82) policy, under the elements of a *Monell* claim (*see below*), violating § 1983. The Complaint is based solely on Plaintiff's conclusive allegation that Capt. Sweeny—not a policymaker—stated the City had an established policy; this is circumstantial speculation and not an allegation of a direct causal link.

---

[1] The Second Circuit has held that a pleading must be "sufficient to give [the defendant] fair notice of [the plaintiff's] claim and the ground upon which it rests." *Boykin v. Keycorp*, 521 F.3d 202, 214 (2d Cir.2008) (citing *Twombly*, 550 U.S. at 555 and *Sweirkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).  In this case, Plaintiff's conclusory allegations are so broad, vague, unsubstantiated, and unparticular as to deny Defendants fair notice of what he believes they have done to support any *Monell* claim.

*Id.*; *see City of Canton Ohio v. Harris*, 489 US 387, 385 (1989). Plaintiff also fails to demonstrate through the citation of two factually disparate incidents that the alleged policy or practice of a forty-foot buffer zone or deprivation of speech on public sidewalks is so "widespread . . . 'so permanent and well settled as to constitute a custom or usage' with the force of law." *Bradley v. City of New York*, 2009 WL 1703237, at *2 (EDNY 2009). In the complete absence of *Monell* allegations, there is no well-pleaded cause of action to examine the second prong, and Plaintiff thus fails to state a claim. For the forgoing reasons, Plaintiff's Complaint should be dismissed in its entirety as a matter of law.

**B.**   **Even if Plaintiff has stated a _Monell_ claim, there is no question of fact as to the lack of policy or practice of a 40-foot buffer zone as alleged by Plaintiff.**

In his First and Second Cause of Action, Plaintiff alleges that Syracuse Police Department ("SPD")—and by implication Chief Fowler (*see* Dkt. No. 1, ¶ 11)—have a policy and practice "empowering a private entity with a heckler's veto and creating a 40-foot buffer zone that bans protected speech from occurring on a public sidewalk during a public festival." *See* Dkt. No. 1, ¶¶ 168-176.

As an initial matter, "[a] municipality cannot be held liable under § 1983 without evidence that it maintained a policy or custom that caused a violation of constitutional rights." *Mercado v. City of New York*, 2011 WL 6057839, at *3, FN4 (SDNY 2011) (citing *Monell,* 436 US 658). In the absence of a genuine material issue of fact, the Court should grant summary judgment on that claim in favor of Defendants.

As to Plaintiff's unarticulated *Monell* argument, both Capt. Sweeny and Sgt. Locastro are not policymakers and their only roles in the underlying incidents were limited to their work on a police details at the CNY Pride festivals; Plaintiff does not allege that they played any other role

than enforcement. *See* Long Aff., Ex. JJ, Resp. Nos. 10, 11, 12, 13; *see also* Ex. KK, Resp. Nos. 10, 11, 12, 13; Dkt. No. 1, ¶¶ 12 and 13. Moreover, when claims against an individual defendant are dismissed, claims against the City must also be dismissed, given that a plaintiff's *Monell* claims are derivative of his claims against the individual defendants. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006). Consequently, if the Court dismisses Plaintiff's claims against the individual Defendants, the Court should dismiss the claims against the City.

"To recover against a municipality under § 1983, a Plaintiff must point to a government policy or custom, the enforcement of which infringes on a federally protected right." *Pritchard*, 2016 WL 4523986 at *2. "It is when execution of a government's policy or custom, whether made by its lawmakers or by those... [who]... may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* (internal quotes omitted). Further, municipal liability may be based on an express municipal policy, such as an ordinance, or a "widespread practice that, although not authorized by written law... is 'so permanent and well settled as to constitute a custom or usage' with the force of law." *Id.*

In the event the Court does not dismiss all claims against the individual Defendants, it is well settled that a municipality may not be held liable under Section 1983 on the basis of *respondeat superior. Coleman,* 2011 WL at *7; *Monell,* 436 U.S. at 690-91. Rather, "a plaintiff must establish both a violation of his or her constitutional rights and that the violation was caused by a municipal policy or custom." *Id.*; *Bradley*, 2009 WL 1703237 at *2. While the inference that a policy exists may be drawn from circumstantial proof, a plaintiff "must demonstrate a 'direct causal link between a municipal policy or custom, and the alleged

21

constitutional deprivation'…and that the municipal policy was the 'moving force [behind] the constitutional violation.'" *Harris*, 489 US at 385. "[T]o establish municipal liability under Section 1983, a plaintiff must show one of the following: (1) a formal policy, promulgated or adopted by the City...; (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights...; or (3) the existence of an unlawful practice by subordinate officials was so permanent or well settled so as to constitute a custom or usage and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials. *Bradley*, 2009 WL 1703237, at *2 (internal quotes omitted). To survive dismissal, Plaintiff must produce some evidence from which it can be inferred that the municipality has a custom and practice of allowing its employees to violate citizens' civil rights. *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993). Mere conclusory allegations are insufficient when unsupported by facts showing that policy makers were aware of the constitutional violations and failed to properly respond. *Id.*

There is no record evidence that Defendants acted in furtherance of any custom, practice or policy by the actions of Sgt. Locastro and Capt. Sweeny on June 21, 2014, and June 21, 2015, respectively. In particular, Plaintiff's allegations about a forty-foot buffer zone have no applicability to Sgt. Locastro and the June 21, 2014 CNY Pride festival. *See* Dkt. No. 1, ¶¶ 1, 38-62. Furthermore, when asked to identify a policy, practice or custom of the City that Plaintiff alleges gave rise to the claims alleged in his Complaint, Plaintiff failed to offer any evidence other than asserting conclusorily that the permit itself is evidence of policy and custom (Dkt. No. 1, ¶¶ 82, 84). Plaintiff also relies on an utterance of Capt. Sweeny—who has no policy-making capacity (*See* Long Aff., Ex. JJ, Resp. Nos. 10, 11, 12, 13) and says nothing about there being an

established policy to such effect beyond the permit parameters (*see* id., Exs. DD & EE)—as proof of a policy or custom (when in fact, Capt. Sweeny was only relaying what he was told about the contents of CNY Pride's Permit (*see* id., Ex. BB, ¶¶ 9-12)). The undisputed facts demonstrate that any so alleged "40-foot buffer zone" was a request of CNY Pride, which was in fact denied and only permitted insofar as it was wholly content-neutral. (*See* Long Aff., Ex. I). Regardless, Plaintiff has not presented any evidence of a policy that was the moving force behind the alleged constitutional violations in accordance with *Harris* above, and his conclusory allegations are insufficient when unsupported by facts showing that policy makers were aware of the constitutional violations and failed to properly respond. *Dwares*, 985 F.2d at 100; *see also* Long Aff., Ex. HH, Resp. No. 20; id., Ex. HH, Ex. A thereto, Resp. Nos. 6, 9.

Further, in order to establish a *Monell* claim, Plaintiff must "allege actual conduct by a municipal policymaker." *Walker*, 974 F.2d at 296-97; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)("Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered"). While Plaintiff alleges that Chief Fowler is a policymaker for the City with regard to laws involving public streets and sidewalks (*see* Dkt. No. 1, ¶ 11), he failed to allege any actual conduct that established that he himself drafted and implemented a policy or practice "granting a private entity power over speech on public property, creating a 40-foot zone that incorporates a public sidewalk," merely speculating that his role as Chief of SPD made him the crafter of this alleged policy. *See* Dkt. No. 1, ¶¶ 2, 11. Chief Fowler's interrogatory responses illustrate that he played no role in policy-making with regard to these permits and permit approval (*see* Long Aff., Ex. HH, Resp. No. 20). Chief Fowler did not, as Plaintiff alleges, implement any policies (*see* Dkt.

No. 1, ¶ 11) with particular reference to the alleged "40-foot buffer zone" policy or in order to ban speech from occurring on a public sidewalk during a public festival (*see* Dkt. No. 1, ¶ 1), nor can he be held liable under a *respondeat superior* theory based on Locastro and Sweeny's actions. *See Coleman,* 2011 WL at *7. Moreover, there is no material issue of fact that Chief Fowler had any role in creating policies or practices creating a 40-foot buffer zone or granting "a private entity over speech on public property." (*see* Dkt. No. 1, ¶¶ 1, 2, 11, 101, 104).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Dwares*, 985 F.2d at 100. Plaintiff's reliance on these unrelated, factually-dissimilar incidents, which involved actors below the policy-making level (Sgt. Locastro and Capt. Sweeny), does not support his claim. *See Rivera v. City of Yonkers*, 2007 WL 143033, *5 (SDNY 2007). Plaintiff alleges that the 40-foot buffer zone policy was applicable to the June 20, 2015 CNY Pride festival only, and not June 21, 2014. *See* Dkt. No. 1, ¶¶ 63-70, 82, 84. Even assuming, *arguendo*, that the City had a *de facto* policy, when Plaintiff alleged this policy he annunciated two disparate methods of alleged constitutional deprivation, taking two dissimilar permits for events in different years that have themselves different parameters to be enforced. *See* Dkt. No. 1, ¶¶ 45-47; id. *cf.* 82-87. What Plaintiff pleads, and wants the Court to accept as an established policy, fails as a matter of law to establish a material fact that the permit in 2014 and 2015 can be distilled as one singular policy replicated on two occasions. Plaintiff's first paragraph of his complaint combines an alleged policy of "bans protected speech from occurring on a public sidewalk during a public festival" (ostensibly referring to the 2014 festival) and the

24

2015 permit that had an alleged "40-foot buffer zone."  Dkt. No. 1, ¶ 1. Plaintiff admits this in his interrogatory responses when he then alters the unconstitutional manner of the alleged policy by vaguely speculating that the City has maintained an unarticulated "policy of creating and enforcing boundaries at permitted events so as to exclude disfavored speakers from traditional public fora." Long Aff., Ex. LL,  Resp. No. 6. Plaintiff admits to the difference of the events as applied by a blanket referral to the differing events in 2014 and 2015, as recorded by Plaintiff, when asked to describe the alleged policy or practice. *See* Long Aff., Ex. MM, Resp. No. 2; *see* id., Exs. T, U, DD, EE. The video evidence and affidavits of both Sgt. Locastro and Capt. Sweeny—along with the permits attached thereto (*see* Long Aff., Exs. V, BB)—confirm the difference of the permits and their lawful and reasonable enforcement under each officer's disparate circumstances, and, therefore, Plaintiff cannot establish a material fact "probative of the existence of an underlying policy." *Jean-Laurent v. Wilkerson*, 461 Fed Appx 18, 22 (2d Cir 2012). Also, the permits themselves are facially distinct. *See* id., Exs. V, BB. Based on the foregoing, Defendants respectfully request that all causes of action against the Defendants be dismissed.

## V.    PLAINTIFF'S CLAIMS OF OFFICIAL CAPACITY SHOULD BE DISMISSED.

When a § 1983 claim is brought against both a municipality and an officer in his official capacity, "the official capacity claim should be dismissed as duplicative or redundant." *Odom v. Matteo*, 772 F.Supp.2d 377, 392 (DConn 2011); *see Kennedy v. City of Albany*, 2015 WL 6394513, *5 (NDNY 2015). The official capacity claims should be dismissed as duplicative.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court grant its motion for summary judgment, and for other and further relief as the Court deems just and proper.

Dated: June 30, 2017                  JOSEPH E. FAHEY, ESQ.
Syracuse, New York              CORPORATION COUNSEL
                                    OF THE CITY OF SYRACUSE

                                _____s/_____
By:    Todd M. Long, Esq.
        Bar Roll No. 519301
        *Attorney for Defendants*
        300 City Hall
        Syracuse, New York 13202
        Tel: (315) 448-8400
        Fax: (315) 448-8381
        E-Mail:  TLong@syrgov.net

<u>CERTIFICATE OF SERVICE</u>

I declare under the penalty of perjury that I served the foregoing:

1. Notice of Motion;
2. Attorney Declaration of Todd M. Long, Esq., with Exhibits "A" through "NN" attached thereto (pending approval to file under seal "H" and "GG," and to serve by mail DVD containing video exhibits "T," "U," "X," "Y," "Z," "AA," "DD," and "EE");
3. Statement of Material Facts Not In Dispute; and
4. Memorandum of Law in Support of Defendants' Motion for Summary Judgment;

by electronically filing with the Clerk of the Court herein, which is understood to have sent notification of such filing electronically to the following:

Mark A. Mangini, Esq.
Center for Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, Tennessee 38117
Email: mmangini@crelaw.org

Nathan W. Kellum, Esq.
Center for Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, Tennessee 38117
Email: nkellum@crelaw.org

Robert E. Genant, Esq.
Office of Robert E. Genant
P.O. Box 480
3306 Main Street, Suite B
Mexico, New York 13114
Email: bgenant@genantlaw.com

Dated: June 30, 2017
       Syracuse, New York

JOSEPH E. FAHEY, ESQ.
CORPORATION COUNSEL
OF THE CITY OF SYRACUSE

By: _____/s_____
       Todd M. Long, Esq.
       Assistant Corporation Counsel
       Bar Roll No. 519301
       *Attorney for Defendants*
       300 City Hall
       Syracuse, New York 13202
       Tel: (315) 448-8400
       Fax: (315) 448-8381
       E-Mail: tlong@syrgov.net