UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES DEFERIO,

                     Plaintiff,

      -against-                           5:16-CV-361 (LEK/TWD)

CITY OF SYRACUSE, *et al.*,

                     Defendants.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Before the Court in this civil rights action filed by plaintiff James Deferio is his motion for $194,001.89 in attorneys' fees and nontaxable expenses pursuant to 42 U.S.C. § 1988(b) and Federal Rule of Civil Procedure 54(d). Dkt. Nos. 131-7 ("Motion") at 1, 150-1 ("Reply") at 2. Defendants have opposed the Motion. Dkt. No. 147 ("Response"). As detailed below, the Motion is granted in part.

Plaintiff has also moved pursuant to 28 U.S.C. § 1920 for a bill of costs totaling $3,145, to which Defendants have no objection. Dkt. Nos. 133 ("Motion for Bill of Costs"), 146 ("Response to Motion for Bill of Costs"). That motion is granted in full.

## II.    BACKGROUND

Familiarity with the Court's January 31, 2018 memorandum-decision and order is presumed. Dkt. No. 128 ("January 2018 Order").

Plaintiff started this action on March 31, 2016 against the City of Syracuse and three of its police department personnel—Captain Joseph Sweeny, Sergeant Jamey Locastro (collectively, the "Officers"), and Chief of Police Frank Fowler, in his official capacity—pursuant to 42 U.S.C.

§ 1983, alleging violations of his First Amendment and due process rights. Dkt. No. 1 ("Complaint"). Generally, Plaintiff's allegations arise out of his efforts to express his religious beliefs on public sidewalks at the Central New York Pride Parade and Festival in 2014 and 2015. Id. He claimed that his free speech rights were infringed when the Officers, pursuant to a municipal policy, barred Plaintiff from demonstrating immediately adjacent to the festival's entrance, forcing him to move across the street—away from pedestrian traffic into and out of the festival. Id.

In his Complaint, Plaintiff sought declaratory relief, preliminary injunction, a permanent injunction, nominal damages, attorneys' fees, and costs. Compl. at 18–20. Five days after filing his Complaint, Plaintiff moved for a preliminary injunction concerning the then-upcoming 2016 Pride Parade and Festival. Dkt. Nos. 6-1 ("Preliminary Injunction Motion"), 6-15 ("Preliminary Injunction Memorandum"). In a June 8, 2016 memorandum-decision and order, the Court granted Plaintiff's Preliminary Injunction Motion and enjoined Defendants "from excluding Plaintiff from or restricting his ability to demonstrate in the areas surrounding the entrances to the 2016 CNY Pride Event based on the establishment of a buffer zone." Dkt. No. 24 ("June 2016 Order") at 20. Plaintiff attended the Pride Parade and Festival in 2016 and 2017 without incident. Dkt. No. 116-25 ("Plaintiff's Statement of Material Facts") ¶¶ 146–55.

After extensive discovery, Defendants moved for summary judgment on June 30, 2017. Dkt. No. 109 ("Defendants' Motion for Summary Judgment"). Plaintiff cross-moved for summary judgment on July 31, 2017. Dkt. Nos. 116-1 ("Cross-Motion"), 116-26 ("Cross-Memorandum"). In addition to nominal damages, Plaintiff sought permanent injunctive relief and a declaratory judgment. Cross-Mot. at 2; Cross-Mem. at 26–29.

On January 31, 2018, the Court granted Plaintiff's Cross-Motion as to Plaintiff's First Amendment claims against Defendants Locastro and Sweeny, awarding the requested $1 in nominal damages. Jan. 2018 Order at 44. The Court denied Plaintiff's requests for injunctive and declaratory relief. Id. The Court also granted Defendants' Motion for Summary Judgment as to Plaintiff's due process and Monell municipal liability claims, dismissing Syracuse and Chief Fowler as defendants. Jan. 2018 Order at 44. The Court deferred ruling on attorneys' fees and costs until further briefing. Id. at 43. Both parties have since filed notices of the appeal to the Court of Appeals for the Second Circuit. Dkt. Nos. 132 and 134.

With the fees and costs briefing now in hand, the Court turns to that issue.

## III.   DISCUSSION

### A.  Jurisdiction Over Collateral Matters

As a preliminary matter, the Court will address an issue not raised by either party, but is relevant to the procedural posture of the case. While both parties have filed notices of appeal, "a district court retains residual jurisdiction over collateral matters, including claims for attorneys' fees." Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 225 (2d Cir. 2004) (citations omitted). Moreover, when presented with a motion for attorney's fees while an appeal is pending, a district court, in its discretion, may "rule on the claim for fees, . . . defer its ruling on the motion, or . . . deny the motion without prejudice[ ]." Id., at 226. To defer a ruling on the attorneys' fee issue until resolution of the pending cross-appeals, however, could prompt a second appellate challenge and, accordingly, run contrary to the Second Circuit's teaching that Rule 54(d) and its time limit for submitting fee applications are intended to avoid "piecemeal appeals" by consolidating appellate resolution of fee award disputes with other, substantive arguments raised

on appeal. Id. at 227. While additional motion practice to address the issue of additional

attorneys' fees incurred in connection with the pending appeal and any subsequent proceedings in

this court may well be unavoidable, this possible eventuality does not provide a basis to defer

ruling upon the pending fee application.

### B. Prevailing Party

#### 1. Legal Standard

Under § 1988, "a court has discretion to 'allow the prevailing party, other than the United

States, a reasonable attorney's fee' in a civil rights lawsuit filed under 42 U.S.C. § 1983." James

v. City of Boise, Idaho, 136 S.Ct. 685, 686 (2016) (quoting 42 U.S.C. § 1988). "A plaintiff who

has prevailed on a claim under § 1983 should ordinarily recover an attorney's fee unless special

circumstances would render an award unjust." Orchano v. Advanced Recovery, Inc., 107 F.3d

94, 97 (2d Cir. 1997) (citations omitted). "[P]laintiffs may be considered 'prevailing parties' for

attorney's fees purposes if they succeed on any significant issue in litigation which achieves

some of the benefit the parties sought in bringing suit." Farrar v. Hobby, 506 U.S. 103, 109

(1992). The Supreme Court has described this standard as "generous," such that nominal

damages of one dollar are enough to bring the plaintiff across the "prevailing party" threshold.

Id. at 112.

#### 2. Application

As stated in the January 2018 Order, Plaintiff is "clearly the prevailing party in this case."

Jan. 2018 Order at 41. Defendants want to deny him all fees, suggesting that Plaintiff's victory in

this case is purely technical or de minimis. Resp. at 2–3. While the Court declined to grant

permanent injunctive or declaratory relief, and dismissed the City and Police Chief as defendants,

4

the Plaintiff succeeded on a core issue of his case—he proved a violation of his First Amendment rights, albeit only by the Officers. For this constitutional violation, Plaintiff sought only $1 in nominal damages, and has been awarded that $1.

Defendants, relying primarily on Alvarez v. City of New York, No. 11-CV-5464, 2017 WL 6033425, at *2 (S.D.N.Y. Dec. 5, 2017), argue that when there are only nominal damages, a ground-breaking conclusion of law is a necessary condition for awarding attorney's fees. Resp. at 2. This requirement, however, applies only to cases where the Plaintiff initially sought a non-nominal remedy. The defendant in Alvarez sought considerable compensatory and punitive damages, and in fact rejected a settlement offer of $150,001 on the eve of trial. Alvarez, 2017 WL 6033425 at *3. In that context, the $1 awarded to Alvarez could be deemed hollow. Here, however, Deferio largely got what he asked for. And an award of nominal damages "recognizes the importance to organized society that [constitutional] rights be scrupulously observed." Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11 (1986).

True, Plaintiff was denied permanent injunctive and declaratory relief, but he obtained the practical effect of such relief. The January 2018 Order delineates the deficiencies of Defendants' actions in 2014 and 2015 so they will not be repeated again. And there is no need for declaratory relief when the matter was resolved in the context of a claim for damages. Plaintiff's dismissed Monell and due process claims were of import in this action, but not so great as to turn Plaintiff's victory into a pyrrhic one.

Given his degree of success, Plaintiff is a prevailing party entitled to attorneys' fees.

**C. Reasonable Attorneys' Fees**

As to the calculation of the attorneys' fees, "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011). "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010). The Supreme Court has expressed a preference for the lodestar method over the twelve factor test enunciated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Perdue, 559 U.S. at 550.

The burden is on the party seeking attorneys' fees to submit sufficient evidence to support the rates claimed and the hours worked. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Court now turns to assessing the rates and hours sought by Plaintiff.

*1. Reasonable Hourly Rate*

Plaintiff seeks the following hourly rates: $350 for Nathan Kellum, $225 for Robert Genant, and $175 for Tony Mangini. Mot. at 5. Defendants object that these rates are excessive. Resp. at 11–14. Plaintiff supports the rates with a discussion of rates previously awarded in this District, declarations from Plaintiff's attorneys detailing their experience, and a declaration from experienced local attorney Thomas Marcelle detailing the rates he has charged for representing clients. Mot. at 5–7, Dkt. Nos. 131-2 ("Kellum Declaration"), 131-3 ("Mangini Declaration"), Dkt. No. 131-6 ("Genant Declaration"), 145 ("Marcelle Declaration").

a. Legal Standard

6

According to the "forum rule," courts should employ "the hourly rates . . . in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Bergerson v. N.Y. State Office of Mental Health, 652 F.3d 277, 290 (2d Cir. 2011) (citations omitted).

Recent cases in the Northern District have upheld hourly rates between $250 and $350 for partners; between $165 and $200 for associates; and between $80 and $90 for paralegals. Rodriguez v. Berryhill, No. 15-CV-1000, 2017 WL 2929470, at *3 (N.D.N.Y. July 10, 2017) (summarizing rates in recent N.D.N.Y. cases); see Pope v. County of Albany, No. 11-CV-736, 2015 WL 5510944, at *10–11 (N.D.N.Y. Sept. 16, 2015) (awarding $350 per hour for experienced counsel and $90 per hour for paralegals). "Courts in this District consistently deem $300 to be a reasonable hourly rate for an experienced partner." Seidenfuss v. Diversified Adjustment Servs., Inc., No. 15-CV-1210, 2016 WL 1047383, at *2 (N.D.N.Y. Mar. 15, 2016) (finding $300 per hour to be a reasonable hourly rate for an attorney who "has forty-two years of legal experience, along with more than twenty-five years representing clients in [similar matters]"). The Court also takes note of the $250 rate awarded to Kellum in a case four years ago in this District, when he had requested a rate of $275. See Deferio v. Bd. of Tr. of State Univ. of N.Y., No. 11-CV-563, 2014 WL 295842, at *7 (N.D.N.Y. Jan. 27, 2014) ("SUNY").

### b. Application

As detailed in the Kellum Declaration, Kellum has been in practice for almost thirty years, focusing largely on First Amendment civil rights litigation. Kellum Decl. at 1. Given his extensive experience in First Amendment litigation and the benchmark rates in this District, Kellum's requested rate of $350 per hour is an appropriate hourly rate for Kellum's time in this case.

Mangini, as detailed in his Declaration, has been practicing for over three years, though initially only on a part-time basis. Mangini Decl. at 1. Given his level of experience and the benchmark rates in this District, the requested rate of $175 per hour is an appropriate hourly rate for Mangini's time in this case.

Genant attests to his forty years of experience in his Declaration. Genant Decl. at 1. However, as Defendants observe, the invoice for his 2.5 hours assisting on this case reflects work that did not require that level of expertise (appearing in Syracuse for a discovery inspection of Plaintiff's amplification device). Resp. at 14; Dkt. No. 131-6 at 3. Accordingly, a reduced rate of $175 per hour is appropriate for Genant.

While Plaintiff has not submitted any billings for paralegal hours, as discussed later in this opinion, a certain percentage of attorney time billed in this case is better characterized as paralegal time. Given the benchmark rates in this District, $90 per hour is an appropriate hourly rate for paralegal work.

Defendants, in arguing against Plaintiff's rates, rely primarily on Lore v. City of Syracuse, 670 F.3d 127 (2d Cir. 2012). In Lore, the Court of Appeals found no abuse of discretion by a court in this District that awarded $210 per hour for an "experienced" attorney, $120 per hour for an attorney with less than four years of experience, and $80 per hour for a paralegal. Id. at 175. But the rates in Lore are outdated; the decision deals with a fee motion filed in 2009, and justifies the $210 rate with citations to Northern District cases from 2005 to 2011. Id. at 175. And even the Lore court noted that surveys suggested that the hourly rate for civil rights matters was higher than the rates awarded by the trial court, but that the rate of $210 was within a permissible range at that time. Id.

Defendants also cite to three more recent Northern District cases that themselves cite Lore, but these cases are unavailing. In Stevens v. EOS CCA, No. 16-CV-1076, 2017 WL 1423242 (N.D.N.Y. Apr. 21, 2017), the court awarded a rate of $200 to a lawyer with "experience more commensurate with that of a junior associate." Id. at *3 n.1. That rate is in the range of what Plaintiff seeks here for Mangini. In Hines v. City of Albany,  No. 06-CV-1517, 2016 WL 716603 (N.D.N.Y. Mar. 22, 2016), the district court alluded to the rates set in Lore, but declined to award any fees at that stage. Id. at *3. At a later stage of that same litigation, $300 per hour was awarded to the senior partner, considerably higher than the rate in Lore. Hines v. City of Albany, No. 06-CV-1517, slip op. at 16 (N.D.N.Y. Nov. 30, 2017). And in the third case Defendants cite, Azzara v. Nat'l Credit Adjusters, LLC, No. 16-CV-1213, 2017 WL 2628875 (N.D.N.Y. June 19, 2017), the court did relied on the Lore rates, but explicitly stated those rates were appropriate in a straightforward Fair Debt Collection Practices Act case that required only 11.9 hours of lawyer time, id. at *4, unlike the more complex civil rights claims at issue here that were litigated over years.

### 2. Reasonable Number of Hours

Plaintiff seeks compensation for the following attorney hours: 265.6 hours for Kellum; 538.3 hours for Mangini; and 2.5 hours for Genant. Mot. at 2; Reply at 1. These hours already reflect voluntary reductions of roughly twenty-three percent to account for work that Plaintiff's counsel deemed excessive, duplicative, clerical, or dedicated to severable unsuccessful claims, including thirty percent of legal work on the Cross-Motion to reflect Plaintiff's failure to succeed on the Monell claim. Mot. at 3–5; Dkt. Nos. 131-4 ("First Fee Statement"), 137-8 ("Second Fee Statement"), 131-2 at 7. Plaintiff also reduced travel fees by fifty percent, as is the standard in

9

this District. Mot. at 4, <u>Dotson v. City of Syracuse</u>, No. 04-CV-1388, 2011 WL 817499, at *27 (N.D.N.Y. Mar. 2, 2011).

### a. Legal Standard

"[A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." <u>Marion S. Mishkin Law Office v. Lopalo</u>, 767 F.3d 144, 148 (2d Cir. 2014) (citations omitted). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." <u>Hensley</u>, 461 U.S. at 437. A district court has discretion in determining the amount of a fee award. <u>Id.</u> Courts have "recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application, and therefore endorsed percentage cuts as a practical means of trimming fat from a fee application." <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1146 (2d Cir. 1983).

In calculating the reasonable attorney hours of the lodestar, a district court should reduce the number of billable hours on the basis of vagueness of time entries, billable hours reflecting clerical/paralegal work, excessiveness of hours, and the plaintiff's degree of success. See <u>F.H. Krear & Co. v. Nineteen Named Trs.</u>, 810 F.2d 1250, 1265 (2d Cir. 1987) (vagueness); <u>Dotson</u>, 2011 WL 817499, at *26 (clerical/paralegal work); <u>Hensley</u>, 461 U.S. at 434, 436 (excessive hours and degree of success). The Court addresses each of these issues in turn.

### b. Application

#### i. Vagueness

"Where descriptions of work done are vague and ambiguous, the Court cannot assess the

reasonableness of the entries. Thus, the fees for such work can be eliminated or reduced." Dotson v. City of Syracuse, 04-CV-1388, 2012 WL 4491095, at *3 (N.D.N.Y. Sept. 28, 2012) (citing F.H. Krear & Co., 810 F.2d at 1265). Attorneys are not, however, required to "provide the Court with a detailed accounting of each minute spent performing a task in the case. Rather, the records produced should be specific enough to assess the amount of work performed." Douyon v. N.Y. Med. Health Care, P.C., 49 F. Supp. 3d 328, 349 (E.D.N.Y. Sept. 30, 2014) (citing Hensley, 461 U.S. at 437 n.12). Descriptions of work such as "'review of file,' 'review of documents,' and 'review of letters' are vague and do not permit a court to evaluate the reasonableness of the services." Dotson, 2012 WL 4491095, at *6.

Defendants identify an enormous number of time entries that they perceive as unreasonably vague. Dkt. 147-1. Among the entries that Defendants specify as vague are: "Prepare demand letter," "Check local rules of N.D.N.Y.," "Prepare video exhibits," "Draft interrogatories," "Prepare Motion for Preliminary Injunction," "Draft Affidavit of Jim Deferio," and "Review local rules re: motions." Id. Yet the entries so-identified, especially when read in the context of surrounding time entries, provide sufficient detail for the Court to assess the hours worked on each task and the nature of the work completed; these are not vague references to incomprehensible tasks. The Court can identify only a handful of entries that are vague and should have been explained in greater detail. For example, the following entries lack sufficient detail for the Court to assess the nature of the work done: "Analyze case," "Analyze discovery needs," "Conference with N. Kellum re discovery," and "Conference with T. Mangini re: status." Id. at at 8, 31, 38, 42, 47, 51, 55, 62. Based on a careful review of the Plaintiff's attorneys' time

entries, the vague entries make up approximately one percent of all hours billed. The Court will therefore reduce the attorneys' hours requested by Plaintiff by one percent.

### ii. Clerical and Paralegal Work

Clerical and secretarial services are part of overhead and are not generally charged to clients. For example, "organizing case files and preparing documents for mailing are not compensable." Dotson, 2011 WL 817499, at *26; see Bosket v. NCO Fin. Sys., Inc., No. 11-CV-678, 2012 WL 4093023, at *4 (N.D.N.Y. Sept. 17, 2012) (Kahn, J.) (describing clerical work as non-compensable). However, paralegal tasks "such as the selection and redaction of trial exhibits and preparation of trial exhibits and witness binders are compensable." Dotson, 2011 WL 817499, at *26. Although "it is understandable that a small firm . . . might not have the wherewithal to retain a full-time paralegal, their time for such tasks should have been billed at paralegal rates," warranting a percentage reduction in fees. Prince of Peace Enter., Inc. v. Top Quality Food Mkt., LLC, No. 07-CV-349, 2014 WL 793084, at *9 (S.D.N.Y. Feb. 28, 2014).

Defendants identify numerous time entries describing work they perceive as clerical or paralegal in nature. Dkt. No. 147-9. The Court agrees Kellum and Mangini billed for some clerical and paralegal tasks, although to an extent far less than is alleged by Defendants. With certain tasks such as "Edit[ing] Affidavit of Jim Deferio," "Edit[ing] Mediation Memo," and "Edit[ing] revised interrogatories," id. at 4, 13, an hour spent by experienced counsel can be far more efficient and effective than time spent by less experienced paralegal or staff with insufficient guidance; the Court will not reduce the pay rate for such entries. But there are other instances where a paralegal could just as easily accomplish the task that was completed by Mangini or Kellum here, such as "Prepare Pro Hac Vice re: Mark Mangini," "Check local rules

re return date/oral argument," "Edit Notices of Deposition," and "Prepare Rule 30(b)(6) notice." Id. at 5, 23–24, 34. Those entries that Defendants identify as clerical are more in line with paralegal work, such as "Telephone conference with court deputy re form of request for conference," "Prepare Deposition Notices," and "Telephone conference with Harrington re exhibits during deposition." Id. at 40, 42, 47. A deminimis number of entries also entail non-compensable clerical work, such as basic scheduling. See, eg., id. at 35–36 ("E-mail opposing counsel re deposition times," "Telephone conference with opposing counsel re time of inspection/test.").

Based on a careful review of the Plaintiff's attorneys' time entries, work more properly labeled as paralegal in nature makes up approximately two percent of all billable hours requested. The Court will therefore deduct the attorneys' hours requested by Plaintiff by two percent, and will instead treat them as paralegal hours billable at a rate of $90 per hour. See Pope, 2015 WL 5510944, at *16 (deeming $90 per hour a reasonable rate for paralegals in the Northern District).

*iii. Excessive Hours*

The fee applicant must also establish that the hours claimed were reasonably expended, and any hours that were not reasonably expended must be excluded. Hensley, 461 U.S. at 434. In determining what constitutes a reasonable expenditure of hours, the Court need not "scrutinize each action taken or the time spent on it." Aston v. Sec'y of Health & Human Servs., 808 F.2d 9, 11 (2d Cir. 1986). Rather, the Court has discretion to simply apply a reasonable percentage reduction. N.Y. State Ass'n for Retarded Children, 711 F.2d at 1146.

Kellum has considerable experience in similar First Amendment free speech litigation, and has appeared previously on free speech claims in the Second Circuit, and the Northern

13

District of New York specifically. Kellum Decl., ¶¶ 3–10. Defendants suggest Plaintiff's counsel

is not working from scratch with certain motions and pleadings, and in light of that and his

expertise, his hours billed here are excessive. Resp. at 17. Indeed, Kellum has represented

Deferio previously in free speech cases in this District. SUNY, Deferio v. City of Ithaca, No. 08-

CV-1211 (N.D.N.Y. Feb. 12, 2009) ("Ithaca"). As Defendants point out, there are similarities

across some portions of Plaintiff's filings in SUNY, Ithaca, and here. Resp. at 17. But these

similarities are not as significant as Defendants claim, and do not suggest that these filings

consisted of a wholesale regurgitation of argument and/or legal analysis that would have required

minimal hours of work.

For example, the similar language used in the complaints in these three cases is found

mostly in sections addressing formulaic matters like jurisdiction and the general relief sought;

background on Deferio included in the complaints also naturally has some similarities. Compare

Compl. ¶¶ 2–9, 14, 16, 20, 100–106, A–J with Dkt. Nos. 147-2 ("Ithaca Complaint") ¶¶ 2–10,

17–23, 60–63, 64–66, A–E, G; and Dkt. No. 147-5 ("SUNY Complaint")  ¶¶ 2–8, 13–17, 58–61,

A–G. But the vast majority of Plaintiff's Complaint does not show considerable overlap with the

other complaints.

Similarly, Defendants overstate the degree of overlap across the affidavits submitted in

support of the motions for preliminary injunction in each of these three cases. Resp. at 17. Again,

the similarities are primarily limited to the brief background on Deferio at the beginning of each

of these affidavits. Compare Dkt. No. 6-2 ("Deferio Affidavit") ¶¶ 1–15; with Dkt. No. 147-4

("Ithaca Deferio Affidavit") ¶¶ 1–8; Dkt. No. 147-7 ("SUNY Deferio Affidavit") ¶¶ 1–6. The rest

of the Deferio Affidavit in support of the preliminary injunction in this case details the specific

facts at issue here, and bears little resemblance to the related filings in either <u>SUNY</u> or <u>Ithaca</u>.
Deferio Affidavit ¶¶ 16–74.

The overlap across the three Deferio cases is more pronounced in the legal argumentation
in the memoranda of law in support of the preliminary injunction motions, but even so, there are
some distinct legal issues in each case: a ban on speech audible twenty-five feet away on a public
commons (<u>Ithaca</u>), a prior restraint (<u>SUNY</u>), and removal from public sidewalks because of a
festival permit (this action). <u>Compare</u> Prelim. Inj. Mem. at 11–15, 18–19, 23–24; <u>with</u> Dkt.
No. 147-3 ("<u>Ithaca</u> Preliminary Injunction Memorandum") at 8–9, 14 <u>and</u> Dkt. No. 147-6
("<u>SUNY</u> Preliminary Injunction Memorandum of Law") at 9–14, 16–17, 23–24.

Even without overlap as extensive as Defendants claim, certain of the hours claimed by
Plaintiff's attorneys are still excessive. In particular, the Court deems the following requested
hours to be excessive: 32 hours on the Complaint, 42.5 hours preparing the Motion for
Preliminary Injunction, 132 hours on summary judgment motion practice, and 53.4 hours on the
attorneys' fee motion practice. Reply at 6 n.7; Resp. at 17–18; <u>see generally</u> First and Second Fee
Statements. Other courts considering prior fee petitions submitted by Kellum have tended to
award considerably fewer hours for free speech litigation of similar scale, and frequently find
Kellum's requests to be excessive. <u>See SUNY</u>, 2014 WL 295842, at *13 (16.9 hours for the
complaint; 31.3 hours for the preliminary injunction motion; and 21.4 hours for the attorneys'
fee); <u>Henderson v. Crimmins</u>, 147 F. Supp. 3d 780, 789 (N.D. Iowa 2015) (8 hours for
preliminary injunction motion and 6 hours for complaint). <u>Grisham v. City of Fort Worth</u>, No.
15-CV-324, 2016 WL 8606770, at *4 (N.D. Tex. Dec. 16, 2016) (30 hours for complaint and
preliminary injunction combined); <u>Stockstill v. City of Picayune</u>, No. 16-CV-4, 2017 WL

6327578, at *3 (S.D. Miss Dec. 11, 2017) (10 hours for complaint; 12.8 hours for preliminary

injunction; and 10 hours for fee petition); Price v. City of Fayetteville, No. 13-CV-150, 2015 WL

1222168, at *5 (W.D.N.C. Mar. 17, 2015) (80 hours for complaint); Corral v. Montgomery

County, 91 F. Supp. 3d 702, 718 (D. Md. 2015) (29.6 hours for fee petition); Bowman v. White,

No. 03-CV-5225, 2006 WL 2221429, at *3 (W.D. Ark. Aug. 2, 2006) (8 hours for complaint;

42.7 hours for preliminary injunction). As these other decisions suggest, given Kellum's

expertise in this area, he and Mangini should be able to complete these motions and pleadings in

a shorter amount of time than what's requested here. The Court will therefore reduce attorneys'

overall hours by ten percent to account for excessive hours.

### iv. Degree of Success

The "most critical factor" in determining an award of attorney's fees, though, is "the

degree of success obtained." Hensley, 461 U.S. at 436. As the Supreme Court has explained:

> [W]ork on an unsuccessful claim cannot be deemed to have been
> expended in pursuit of the ultimate result achieved. The congressional
> intent to limit awards to prevailing parties requires that these
> unrelated claims be treated as if they had been raised in separate
> lawsuits, and therefore no fee may be awarded for services on the
> unsuccessful claim.

Id. at 435.

In the more unitary cases—those involving a common core of facts or related legal

theories—it is obviously more difficult to divide the hours. In such cases, the district court

"should focus on the significance of the overall relief obtained by the plaintiff in relation to the

hours reasonably expended." Id. at 435–36. Where a lawsuit consists of related claims, a plaintiff

"who has won substantial relief should not have his attorney's fee reduced simply because the

16

district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Id. at 440.

Plaintiff largely succeeded in obtaining his desired relief: the $1 in nominal damages for a violation of his First Amendment rights. Jan. 2018 Order at 44. While he was denied permanent injunctive and declaratory relief, he obtained the practical effect of such relief, and obtained a preliminary injunction earlier in the litigation when the relief was necessary. Id. at 43; June 2016 Order.

More meaningfully, Plaintiff's Monell and due process claims were dismissed. Jan. 2018 Order at 44. Under Monell, a municipality is liable under § 1983 when the exercise of its policy acts as a "moving force" behind a constitutional violation. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978). However, since Monell claims "typically involve, in part, extrapolations from the narrowed claims at issue, it is difficult to view them as wholly severable. Moreover, whatever severability might exist in theory, it is almost impossible in practice for a district court to determine from time sheets what portion of, say, a large document request related solely to the Monell claims." Green v. Torres, 290 F. Supp. 2d 427, 429 (S.D.N.Y. 2003). Plaintiff's due process claim is similarly intertwined, since the basis for that claim is the vagueness of Syracuse's alleged municipal policy. Cross-Mem. at 19. "To ask district courts to make a meaningful evaluation of severability in such circumstances is to ask them to conduct elaborate evidentiary hearings on fee awards, which hardly seems a prudent use of judicial resources." Green, 290 F. Supp. 2d at 429.

17

Plaintiff's <u>Monell</u> claim against Syracuse and Frank Fowler in his capacity as Police Chief formed an important part of Plaintiff's case. For example, in the Cross-Memorandum, Plaintiff states that the case "boils down to" six "critical undisputed facts."  Cross-Mem. at 2–3. The first fact is that Syracuse "maintains a policy of granting private permittees upon request proprietary control over geographic areas outside of an event that can include public sidewalks." <u>Id.</u> at 2. The five other "critical" facts are each framed as actions taken pursuant to this municipal policy. <u>Id.</u> at 2–3. Plaintiff devotes roughly one and a half of his four argument sections of his Cross-Memorandum to the <u>Monell</u> claim, <u>id.</u> at 4–6, 18–22, and the remaining argument sections repeatedly frame the municipal policy as the moving force behind the constitutional violations, <u>see, e.g.</u>, <u>id.</u> at 6 ("Syracuse's policy and resultant ban are unconstitutional."), 9 ("Syracuse's policy enables CNY Pride to impose a viewpoint-based heckler's veto."), 9 ("Through its policy giving CNY Pride proprietary control of public sidewalks . . . Syracuse supplies them with unchecked discretion."), 10 (arguing that the Syracuse policy "empower[s] a private party to censor speech"), 16 ("Syracuse's policy also fails to leave open ample alternatives for Deferio's expression."), 17 ("Syracuse's policy is unconstitutionally vague.").

Clearly, a priority of Plaintiff's litigation was to secure municipal liability pursuant to <u>Monell</u>.

While Plaintiff has voluntarily reduced a limited number of billings for work on the Cross-Motion to reflect his failure to succeed on the <u>Monell</u> claim, this does not fully account for Plaintiff's measure of success and the time devoted at other stages of the litigation to secure municipal liability. Therefore to account for Plaintiff's lack of success as to his <u>Monell</u> claims,

the Court will reduce the fee award by an additional twenty-five percent. See Green, 290 F. Supp.

2d at 431 (reducing fee award by twenty percent in light of failed Monell claim).

### 3. *Court Calculation of Attorneys' Fees*

Based on the hourly rates and reductions in time determined above, the Court finds that

Plaintiff is entitled to the following attorneys' fees: $57,645 for Kellum's time (consisting of

164.7 hours at $350 per hour); $58,397.50 for Mangini's time (consisting of 333.7 hours at $175

per hour); $280 for Genant's time (consisting of 1.6 hours at $175 per hour); and $1,467 for

paralegal work previously miscategorized as attorney work (consisting of 16.3 hours at $90 per

hour). Therefore, Plaintiff is entitled to a total of $117,789.50 in attorneys' fees.

### D. Nontaxable Expenses

Plaintiff's counsel also seeks $6,312.39 for out-of-pocket litigation nontaxable expenses,

consisting primarily of travel and postage costs as well as Westlaw expenses. Mot. at 3, First Fee

Statement at 67–68; Dkt. No. 150-3 ("Receipts"). Defendants argued for denial of the expenses

on the basis that Plaintiff did not document the expenses with receipts. Resp. at 29–30. While

receipts are not necessary for awarding expenses, Plaintiff has since submitted receipts. Receipts.

See Abel v. Town Sports Int'l, No. 09-CV-103888, 2012 WL 6720919, at *34 (S.D.N.Y.

Dec. 18, 2012) (finding that statement of costs incurred, made under penalty of perjury in

declaration, constitutes adequate documentation). Defendants also object to the Westlaw

expenses as non-recoverable office overhead costs. Resp. at 29–30.

It is well-settled that "attorneys' fees awards include those reasonable out-of-pocket

expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v.

Fletcher, 143 F.3d 748, 763. In LeBlanc-Sternberg, the Second Circuit included a non-exhaustive

list of expenses that are recoverable, including photocopying, travel, telephone costs, and postage. Id. While a Northern District court in the past has declined to award online legal research expenses incurred in representing a client in a fee-shifting case, Doe v. Kaiser, No. 06-CV-1045, 2007 WL 2027824, at *10 (N.D.N.Y. July 9, 2007), the Court of Appeals for the Second Circuit has said that "in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award," Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004).

As Plaintiff's expenses are in line with the reasonable out-of-pocket expenses detailed in LeBlanc-Sternberg, and the Court of Appeals has approved awarding online research expenses, the Court awards $6,312.39 for out-of-pocket litigation nontaxable expenses.

### E. Bill of Costs

Plaintiff has also moved for a taxable Bill of Costs totaling $3,145 pursuant to 28 U.S.C. § 1920, for statutorily enumerated items such as court filing fees. Mot. For Bill of Costs. Defendants have no objection to that request. Resp. To Mot. for Bill of Costs. The Motion for Bill of Costs is therefore granted.

## IV.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for Attorneys' Fees (Dkt. No. 131) is **GRANTED IN PART** and that Defendants shall pay Plaintiff attorneys' fees in the amount of $117,789.50, and nontaxable expenses in the amount of $6,312.39; and it is further

**ORDERED**, that Plaintiff's Motion for Bill of Costs (Dkt. No. 133) is **GRANTED** and Defendant shall pay Plaintiff for the Bill of Costs in the amount of $3,145; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon the parties in this action.

**IT IS SO ORDERED.**

DATED:      June 21, 2018
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

21